**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | |
|---|---|
| In re: : | **Chapter 7** |
| : | |
| **THEMA T. NORTON,** : | **Case No. 17-42199 (ESS)** |
| : | |
| Debtor. : | |
| : | |

---------------------------------------------------------------X

| | |
|---|---|
| : | |
| **THEMA T. NORTON,** : | **Adv. Pr. No. 20-01113** |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **ECP PROPERTY II LLC, et al.,** : | |
| : | |
| Defendants. : | |
| : | |

---------------------------------------------------------------X

## DEFENDANTS' MOTION TO DISMISS AMENDED ADVERSARY COMPLAINT FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED AND FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendants, ECP Property II LLC ("ECP"), Jeremy Friedberg ("Friedberg"), Gordon Young ("Young"), and Nathan Cann ("Cann"; together with ECP, Friedberg and Young, the "Defendants"), by and through undersigned counsel, and pursuant Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this case by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, move to dismiss the amended *Adversary Complaint Seeking Declaratory Judgment, Punitive Damages, and Permanent Injunction* [Adv. Doc. 19] (the "Amended Complaint") filed by plaintiff/debtor Thema Norton ("Debtor") and state:

## I.   <u>INTRODUCTION</u>

1.      Debtor and her counsel filed the original *Adversary Complaint Seeking Declaratory Judgment, Punitive Damages, and Permanent Injunction* [Adv. Doc. 3] (the "<u>Complaint</u>") in this adversary proceeding for one simple reason: to obtain leverage in settlement negotiations in the RICO Action (defined below), from which ECP voluntarily dismissed Debtor. ECP filed a motion to dismiss the Complaint, which was granted on consent in an *Order* [Adv. Doc. 16] (the "<u>Dismissal Order</u>") dated December 21, 2021.  The issues with the Complaint that led to entry of the Dismissal Order have not been cured, and the Amended Complaint must also be dismissed, this time with prejudice.

2.      Beyond Debtor's obvious attempt to force a settlement on favorable terms, the relief sought by Debtor for violation of the Discharge Order (defined below) is both unnecessary and moot.  Now that ECP voluntarily dismissed Debtor from the RICO Action, the entirety of the Amended Complaint is now moot, and the relief Debtor seeks for the alleged violation is also duplicative because the Discharge Order remains in effect.

3.      Furthermore, the relief Debtor seeks is equitable in nature, and Debtor cannot come to this Court seeking an equitable remedy with unclean hands.  By failing to disclose perhaps millions of dollars in assets in this bankruptcy action – and procuring the Discharge Order through fraud – equity is unavailable to Debtor because of her unclean hands.  Indeed, Debtor's claims are based solely on an alleged violation of the Discharge Order, which would never have been entered if Debtor had been forthright with the Court.  Finally, because ECP alleged that the RICO conspiracy was ongoing, the filing of the RICO Action did not violate the Discharge Order.  Accordingly, Count One of the Amended Complaint must be dismissed for failure to state a claim.

4.     All the factual allegations Debtor has added to the Amended Complaint relate to ECP's filing of the RICO Action against Debtor and the alleged (but inaccurate) similarities between the RICO Action and two other lawsuits filed by ECP.  In fact, the relief sought in the RICO Action and the two earlier actions is completely different, and the RICO Action contemplates post-petition wrongful activity by Debtor.

5.     Debtor's remaining claims all sound in tort and provide no independent basis for subject-matter jurisdiction in this Court.  Once the Court dismisses Count One for failure to state a claim, all the remaining counts must be dismissed, as there is no supplemental jurisdiction for the Court to hear them.

6.     In keeping with a long pattern of harassment and filing frivolous lawsuits, Debtor's counsel baselessly included Friedberg, Young, and Cann (collectively, the "Individual Defendants") as defendants in this action in their individual capacities.  In the case of Cann, this Court lacks personal jurisdiction to continue this case, and he must be dismissed.  The Amended Complaint contains essentially no individualized allegations of any of the Individual Defendants' conduct, and every action described in the Complaint was made in their corporate roles.  If the Court is not inclined to dismiss this adversary proceeding in its entirety, then at least the Individual Defendants should be dismissed as parties.

## II. BACKGROUND

### a. Procedural Summary

7.     Debtor filed a *Voluntary Petition for Bankruptcy* [Doc. 1] (the "Petition") on May 2, 2017 (the "Petition Date").

8.     The Court entered its *Order of Discharge and Final Decree* [Doc. 31] (the "Discharge Order") on December 4, 2017.

9.     Debtor filed an *ex parte Motion to Reopen Case* (the "Motion to Reopen")[1] on October 13, 2020.  This Court required Debtor to file a Notice of Motion, which was filed on October 16, 2020.  Debtor filed this action contemporaneously with the filing of the Motion to Reopen.

10.     ECP filed a *Response in Opposition* [Doc. 36] (the "Response in Opposition") to the Motion to Reopen on November 10, 2020, and a hearing was held on November 17, 2020. The Motion to Reopen was granted in an *Order* [Doc. 43] dated December 16, 2020.

11.     Debtor filed her Complaint contemporaneously with the Motion.  Defendants filed their *Motion to Dismiss* [Adv. Doc. 7] on November 25. 2020, and the Dismissal Order was entered on December 21, 2020.

12.     Debtor filed her Amended Complaint on February 16, 2021.

**b.  The Amended Complaint**

**i.  Factual Allegations Against ECP**

13.     The Complaint includes five causes of action, seeking damages, a declaratory judgment, and two permanent injunctions.  The facts alleged in the Complaint relate to ECP's inclusion of Debtor as a defendant in the case styled ECP Property II LLC v. Joseph S. Norton et al., in the U.S. District Court for the Eastern District of New York, Case No. CV-20-00303 (ILG)(VMS) (the "RICO Action").

14.     ECP filed the RICO Action against 28 Kermit Place, LLC, 31 Kermit Owner, LLC, 35 Kermit Place, LLC, 771 Hopkinson Boyland, LLC (collectively, the "RICO Entities"), and each of the individual owners and officers of those entities, including Debtor.  A copy of the

---

[1] By virtue of filing the Motion to Reopen in a bankruptcy court, it is apparent that Debtor's counsel now believes that bankruptcy courts are constitutional.  See In re Khan, 593 Fed. Appx. 83, 85 (2d Cir. 2015) (affirming award of sanctions against Karamvir Dahiya by U.S. Bankruptcy Court for the Eastern District of New York).

*Amended Complaint* in the RICO Action (the "RICO Amended Complaint") is attached to Debtor's Amended Complaint as Exhibit A. Debtor's role in the RICO Action stems from her ownership and control over the RICO Entities and Riverrock Nehemiah Realty, LLC ("Riverrock"), which is the RICO Enterprise.

15.     Debtor filed her Complaint during a mediation proceeding in the RICO Action. Upon information and belief, the sole purpose of this adversary proceeding is to force ECP to resolve the RICO Action and a related action in the Supreme Court of the State of New York in Kings County styled ECP Property II LLC v. Riverrock Nehemiah Realty LLC, et al., Index Number 3763/12 (the "Foreclosure Action"), on terms favorable to Riverrock and the RICO Entities. Indeed, the de facto owner and controller of Riverrock and the RICO Entities, Joseph Norton (Debtor's father), appears to be attempting to use Debtor's bankruptcy proceedings strategically to apply pressure on ECP.

16.     The allegations that have been added to the Amended Complaint since the filing of the Complaint focus on the similarities between the RICO Action and a 2014 case styled ECP Property II, LLC v. Joseph Norton et al., E.D.N.Y. Case No. 14-cv-07298-FB-PK (the "2014 Federal Action"), filed by ECP against Joseph Norton, to which Debtor was later added as a defendant. A copy of the *Amended Complaint* (the "2014 Amended Complaint") in the 2014 Federal Action is annexed hereto as **Exhibit 1**. [2]

17.     Although there are certain similarities between the RICO Amended Complaint and the 2014 Amended Complaint, even a cursory comparison between the two complaints shows that ECP was pursuing drastically different causes of action and damages against Debtor.

_____

[2] The 2014 Amended Complaint is integral to the allegations contained in Debtor's Amended Complaint. The Court is permitted to consider them in their entirety without converting this motion to one for summary judgment. See, e.g., De Figueroa v. New York, 403 F. Supp.3d 133, 149 (E.D.N.Y. 2019) (citing Littlejohn v. City of New York, 795 F.3d 297, 305 n.3 (2d Cir. 2015)).

As Debtor acknowledges in Paragraph 11 of the Amended Complaint, ECP sought payment from Debtor for rents she unlawfully withheld from ECP. (2014 Am. Comp., ¶ 44-50). As alleged in Debtor's Amended Complaint, ECP sought similar relief in an adversary proceeding (the "2016 Adversary Proceeding") filed during Debtor's 2016 bankruptcy action. (Am. Compl., ¶¶ 13-14). A copy of the *Complaint* (the "2016 Adversary Complaint") in the 2016 Adversary Proceeding is annexed to the Amended Complaint as Exhibit B.

18. In both the 2014 Federal Action and the 2016 adversary proceeding, ECP sought damages of $140,681.02, which was the amount of the rents withheld by Debtor. ECP was unable to collect the unpaid rents from Debtor in either case.

19. The RICO Action alleges that Debtor, in concert with the other RICO Defendants, withheld payment of rents to ECP, as part of a broader RICO conspiracy to prevent ECP and other creditors from collecting their valid debts. (RICO Am. Compl., ¶¶ 28-36). The Rent Check Scheme, as defined in the RICO Amended Complaint, was simply one of the predicate acts ECP alleged to show a RICO conspiracy. ECP did not separately seek damages for the Rent Check Scheme, only for the RICO conspiracy. (Id., Prayer for Relief). Tellingly, ECP never sought the amount of the rents ($140,681.02) withheld by Debtor.

20. ECP also alleged in the RICO Amended Complaint that it believed the RICO conspiracy was ongoing, and that all of the RICO Defendants (including, at the time, Debtor) were actively participating. (Id., ¶ 79). Because the RICO conspiracy is indeed ongoing, then the Discharge Order would not shield Debtor from liability for her post-petition activity.

21. Out of an abundance of caution, on November 10, 2020, ECP filed a voluntary dismissal of Debtor from the RICO Action. A copy of the *Notice of Dismissal* (the "Notice of

Dismissal") is annexed hereto as **Exhibit 2**. The Court in the RICO Action accepted the Notice of Dismissal as "without prejudice."

### ii. Factual Allegations Against the Individual Defendants

22.     The factual allegations in the Amended Complaint, taken as true, show that the Individual Defendants acted in their corporate capacities and roles as counsel. Each of the factual allegations relates to the conduct of the "defendants," and the Complaint fails to describe any action taken by any of the Individual Defendants in their individual capacities. Each of the allegations against Friedberg and Young relate to the filing of valid cases and motions against Debtor in their capacities as counsel for ECP. (Am. Compl., ¶¶ 11, 13-14, 22, 27-29). Debtor appears to be confused about who is responsible for certain filings against Debtor, as shown in Paragraph 28 of the Amended Complaint. That paragraph alleges that Friedberg filed a motion for attachment of Debtor's assets; as shown in the RICO Amended Complaint, Friedberg was not a party to the action, and would have had no standing to file such a motion.

23.     The allegations against Cann are even more spurious. Cann is alleged to have directed the filing of the RICO Action (id., ¶ 23), effectuated service on Debtor, (id., ¶ 25), "support[ed]" the filing of a motion for prejudgment attachment (id., ¶ 28), and simply been aware of Debtor's discharge (id., ¶ 29). Not one of these actions is alleged to have been undertaken by Cann in any capacity other than as an agent for ECP.

24.     Count Five of the Complaint asserts "Concert of Action" between the Individual Defendants and ECP in ECP's attempt to collect the *Judgment* (the "Judgment") that was entered in the Foreclosure Action. (Id., ¶¶ 72-79). The only facts directly attributed to the Individual Defendants in Count Five are that Cann engaged Friedberg and Young to collect the Judgment, and that Friedberg and Young were employed on a contingent basis. (Id., ¶¶ 52, 54).

25.     The Complaint is riddled with untrue hyperbole and other factual inaccuracies, including the manner of Friedberg and Young's engagement in the case (id., ¶¶ 10, 75), ECP's purchase of the debt underlying the RICO Action (id., ¶ 6.), and Cann's role with ECP (Id., ¶ 7).

26.     The allegations of Paragraph 29 are among the most convoluted and dishonest of the entire Amended Complaint.  Debtor alleges that Cann perjured himself with the assistance of Friedberg and Young in stating that ECP "objected to [Debtor]'s discharge."  Debtor freely admits that ECP filed an objection – i.e., "objected to" – Debtor's discharge in the 2016 Adversary Proceeding.  Simply because judgment was not entered against Debtor in the 2016 Adversary Proceeding does not mean that ECP did not object to the discharge.

27.     Debtor alleges that the Individual Defendants were aware of the Discharge Order when the RICO Action was filed – which is true.  (Id., ¶ 29).  Debtor chooses to ignore the fact that ECP also alleged in the RICO Amended Complaint that the RICO conspiracy, including Debtor, was "continuing," which renders the Defendants' awareness of the Discharge Order irrelevant.  (RICO Am. Compl., ¶ 79).

28.     In support of this Court's jurisdiction to hear the Adversary Proceeding, Debtor cites "28 U.S.C. §§ 157, 1334 and Fed R. Bankr. P. 7001 ('a proceeding to obtain an injunction or other equitable relief')."  (Compl., ¶ 5).  Debtor also cites 28 U.S.C. § 2201(a) "for grant of a declarative judgment relief" and 28 U.S.C. § 1367 for supplemental jurisdiction for Debtor's remaining tort claims.  (Id.)  The Amended Complaint is bereft of allegations that Cann is subject to this Court's jurisdiction in this action.

29.     The first count of the Complaint is for Violation of Discharge Injunction.  (Id., ¶¶ 16-22).  The remaining counts of the Complaint are for various torts related to the filing of the RICO Action.  (Id., ¶¶ 17-58).  In her Prayer for Relief, Debtor requests a declaration that

"Defendant violated 11 U.S.C. § 524 by instituting the civil RICO Action in the district court." Debtor also seeks an injunction to permanently enjoin and restrain "Defendants from improperly initiating, maintaining and or collecting against Ms. Norton the discharge debts or any claims emanating from the complained of transactions." (Am. Compl., Prayer for Relief).

### c. <u>The Individual Defendants' Roles</u>

30.     Although the allegations of the Amended Complaint are utterly insufficient to state a claim against the Individual Defendants, there are certain allegations that must be addressed at this early stage of the litigation.

31.     Cann's only role with ECP is as an Authorized Person. (<u>See</u> Affidavit of Nathan Cann (the "<u>Cann Aff.</u>"), ¶ 1; a copy of the Cann Aff. is annexed hereto as **Exhibit 3**). Cann's role in collecting the debt, now reflected in the Judgment, was strictly as an agent of ECP, and without malice toward Debtor. (<u>Id.</u>, ¶ 5-7). Indeed, if Cann had not taken every action in pursuing the debt, he would have failed in his fiduciary duties to ECP. (<u>Id.</u>) Although ECP has conducted business in New York since at least 2014, Cann has not conducted business in New York in his individual capacity at any time. (<u>Id.</u>, ¶ 5, 9).

32.     Similarly, Friedberg and Young acted appropriately in their roles as counsel to ECP. In an apparent attempt to paint Friedberg and Young as greedy and complicit with ECP in collecting a valid debt, the Amended Complaint alleges that Friedberg and Young are "employed on a contingent basis." (Compl., ¶ 74). As a preliminary matter, Friedberg PC was engaged by ECP to collect the debt, not Friedberg and Young in their individual capacities. (<u>See</u> Affidavit of Jeremy S. Friedberg (the "<u>Friedberg Aff.</u>"), ¶ 3; a copy of the Friedberg Aff. is annexed hereto as **Exhibit 4**; <u>see</u> <u>also</u> Affidavit of Gordon S. Young (the "<u>Young Aff.</u>"; together with the Cann

Aff. and the Friedberg Aff., the "Affidavits), ¶ 3; a copy of the Young Aff. is annexed hereto as **Exhibit 5**).

33.     Although the matter of Friedberg PC's compensation for collecting the debt is utterly irrelevant to this case, ECP engaged Friedberg PC on an hourly basis.  (Friedberg Aff., ¶ 3; Young Aff., ¶ 3).  Every action taken by Friedberg and Young in pursuing the debt was made in their roles as counsel to ECP and as employees of Friedberg PC.  (Friedberg Aff., ¶¶ 5-7; Young Aff., ¶¶ 5-7).  Furthermore, every action was made in ECP's best interest and at the request of ECP.  (Id.)  At no point did either Friedberg or Young act with any malice toward Debtor.  (Friedberg Aff., ¶ 7; Young Aff., ¶ 7).

### d.   Debtor's Concealed Assets

34.     Debtor filed the Motion to Reopen to pursue this adversary proceeding, and ECP filed its Response in Opposition based on Debtor's actions in concealing significant assets from the U.S. Trustee, ECP, and all of Debtor's other creditors.  (See Response in Opposition, ¶¶ 7-13.)

35.     While attempting to enforce the Judgment, ECP sought to obtain significant records from TD Bank (the "TD Bank Records"), where Riverrock and other related entities held depository accounts.  The defendants in the Foreclosure Action fought for over a year to prevent ECP from obtaining the TD Bank Records by filing numerous motions to quash and other discovery motions, all of which were eventually denied.  Additionally, the defendants in the Foreclosure Action failed to appear for post-judgment depositions, despite proper service and discussions between counsel regarding deposition dates.

36.     The TD Bank Records showed that Debtor was a member, manager, and officer of numerous limited liability companies immediately prior to the Petition Date and/or after the date of the Discharge Order.  A list of Debtor's concealed assets is summarized as follows:

- 29 Kermit Place LLC ("29 Kermit Place") – Debtor is listed as Member on 29 Kermit Place's General Business Resolution, dated September 15, 2015.  Debtor signed Business Account Maintenance forms for 29 Kermit Place on September 21, 2015 and October 20, 2016.  Copies of the General Business Resolution and Business Account Maintenance forms for 29 Kermit Place are annexed hereto as **Exhibit 6**.

- 31 Kermit Owner LLC ("31 Kermit Owner") – Debtor is listed as Member on 31 Kermit Owner's General Business Resolution, dated September 15, 2015.  Debtor signed Business Account Maintenance forms for 31 Kermit Owner on September 21, 2015 and October 20, 2016.  Copies of the General Business Resolution and Business Account Maintenance forms for 31 Kermit Owner are annexed hereto as **Exhibit 7**.

- 35 Kermit Place LLC ("35 Kermit Place") – Debtor is listed as Agent on 35 Kermit Place's General Business Resolution, dated July 3, 2014.  Debtor signed an undated General Business Resolution as Member.  Debtor signed another General Business Resolution, dated April 12, 2018, after entry of the Discharge Order in this action, as President of 35 Kermit Place. Debtor signed a New Business Account form dated July 3, 2014, and Business Account Maintenance forms dated October 20, 2016 and April 12, 2018 for 35 Kermit Place.  Copies of the General Business Resolution, New Business Account form, and Business Account Maintenance forms for 35 Kermit Place are annexed hereto as **Exhibit 8**.

- 771 Hopkinson Boyland LLC ("771 Hopkinson Boyland") – Debtor is listed as Agent on 771 Hopkinson Boyland's General Business Resolution, dated September 21, 2015. Debtor signed an undated General Business Resolution for 771 Hopkinson Boyland as Member. Debtor signed a New Business Account form dated September 21, 2015, and a Business Account Maintenance form dated October 20, 2016 for 771 Hopkinson Boyland. Copies of the General Business Resolutions, New Business Account form, and Business Account Maintenance form for 771 Hopkinson Boyland annexed hereto as **Exhibit 9**.

- Saratoga Livonia LLC ("Saratoga Livonia") – Debtor is listed as Agent on Saratoga Livonia's General Business Resolution, dated September 21, 2015. Debtor signed an undated General Business Resolution for Saratoga Livonia as Member. Debtor signed a New Business Account form dated September 21, 2015, and a Business Account Maintenance form dated October 20, 2016 for Saratoga Livonia. Copies of the General Business Resolutions, New Business Account form, and Business Account Maintenance form for 771 Hopkinson Boyland are annexed hereto as **Exhibit 10**.

37.    28 Kermit Place, 31 Kermit Owner, 35 Kermit Place, 771 Hopkinson Boyland, and Saratoga Livonia are collectively referred to as the "Concealed Entities."

38.    TD Bank did not provide documentation indicating that Debtor was no longer either a member, manager, or officer for any of the Concealed Entities. ECP only discovered Debtor's interests in the Concealed Entities because each of the Concealed Entities made numerous fraudulent transfers to Guyana in concert with the judgment debtors in the Foreclosure Action. Debtor may have concealed even more assets than currently known.

39. ECP obtained the TD Bank Records long after entry of the Discharge Order in this action, in part due to the dilatory actions of the judgment debtors in the Foreclosure Action. The timing of Debtor's signatures on the TD Bank Records attached as Exhibits 7-11 shows that her ownership of the Concealed Entities continued throughout the pendency of this bankruptcy case.

40. The Concealed Entities own significant real estate assets, and Debtor's interest in the Concealed Entities would have been more than sufficient to pay all the claims in this case. If the Concealed Entities had been disclosed, then the administration of this case would have been handled drastically differently, and the Discharge Order would never have been entered.

### III. ARGUMENT

#### a. Count One of the Complaint Fails to State A Claim Upon Which Relief Can Be Granted

##### i. Legal Standard

41. The legal standard for reviewing a motion to dismiss for failure to state a claim upon which relief may be granted is well established. This Court has followed the United States Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." In re Brizinova, 592 B.R. 442, 458 (Bankr. E.D.N.Y. 2018) (quoting Twombly and Iqbal) (internal quotations omitted). Furthermore, this Court must decide whether the facts as pleaded "plausibly give rise to an entitlement of relief." Id. (internal quotations omitted). When the facts alleged in a complaint are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted).

42.     Here, the injunctive and declaratory relief sought for the alleged violation of the Discharge Order is either impossible or unnecessary; accordingly, the Complaint fails to meet the pleading standards established by Twombly and Iqbal and must be dismissed in its entirety. Even taking the facts alleged in the Complaint as true, this Court cannot grant the relief sought, so there is no "plausible entitlement to relief." Brizinova, 592 B.R. at 458.

### ii. Count One Is Unnecessary and Moot

43.     Debtor has not made a separate claim for a permanent injunction in the Complaint and has not alleged a cause of action for a declaratory judgment. The injunction Debtor seeks would enjoin ECP and the Individual Defendants from collecting any discharged debts. (See Compl., Prayer for Relief). The Court does not need to issue a new injunction to that effect because the injunction already exists because of the Discharge Order. There is simply no need for a new injunction.

44.     The declaratory judgment Debtor seeks would state that ECP and the Individual Defendants "violated 11 USC § 524 by instituting the RICO action." (Id.) Again, there is no separate cause of action seeking this declaratory judgment. Even if the Court were to issue a declaratory judgment to this effect, it would not alter the rights or duties of any of the parties to this adversary proceeding, especially in light of the filing of the Notice of Dismissal.

45.     By filing the Notice of Dismissal, ECP rendered the allegations of the Complaint moot. Where a party voluntary ceases to engage in the conduct alleged in a complaint, the claims become moot where it is clear "that the allegedly wrongful behavior could not reasonably be expected to recur." Amin v. Colvin, 301 F. Supp.3d 392, 400 (E.D.N.Y. 2018). Voluntary cessation of the complained behavior renders a case moot where "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely

and irrevocably eradicated the effects of the alleged violation." <u>Mhany Mgmt., Inc. v. County of Nassau</u>, 819 F.3d 581, 603 (2d Cir. 2016).

46.     Debtor's miscarriage, as alleged in the Amended Complaint, is a personal tragedy, and Defendants sent their condolences to Debtor through her counsel. The Amended Complaint does not provide any causal link between the miscarriage, or any other damages allegedly suffered by Debtor, and the supposed violation of the Discharge Order. Debtor was not served with a summons and Complaint personally. (Friedberg Aff., ¶ 11). Debtor did not file an answer in the RICO Action. (<u>Id.</u>, ¶ 11). Debtor did not attend any hearings in the RICO Action. (<u>Id.</u>, ¶ 11). Debtor did not attend the two-day mediation in the RICO Action. (<u>Id.</u>, ¶ 11). Debtor has not been deposed in the RICO Action nor served with any discovery in the RICO Action. (<u>Id.</u>, ¶ 11). To their knowledge, neither ECP nor Friedberg PC have ever had any contact with Debtor other than through counsel. (<u>Id.</u>, ¶ 11, Cann Aff., ¶ 7).

47.     Tellingly, counsel for Debtor, who also represented Debtor in the RICO Action, never contacted ECP or counsel to request Debtor's dismissal from the RICO Action. Counsel could have done this at any time during the pendency of the RICO Action. Surely, Debtor informed her counsel of her dangerous condition prior to suing the Defendants.

48.     ECP moved quickly to dismiss Debtor from the RICO Action. (<u>See</u> Ex. 2). There is no reasonable expectation that this alleged violation of the Discharge Order would ever recur.

49.     Furthermore, the Notice of Dismissal has eradicated the sole action of the Complaint that even possibly violated the Discharge Order, which was the filing of the RICO Action against Debtor. Upon filing of the Notice of Dismissal, there are no other possible violations of the Discharge Order alleged in the Amended Complaint. Accordingly, Count One

of the Amended Complaint is moot, and the remaining causes of action must be dismissed for lack of subject matter jurisdiction, as discussed above.

50.     In short, Count One of the Amended Complaint does not plausibly entitle Debtor to any of the relief sought.  In accordance with the decisions in Twombly and Iqbal, Count One must be dismissed for failure to state a claim.

### iii.  Debtor Has Unclean Hands and Cannot Pursue Count One

51.     Count One is brought under Section 105 of the Bankruptcy Code, which permits Bankruptcy Courts to enter "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Supreme Court has held that actions brought under Section 105 are in effect equitable in nature, subject to other provisions of the Bankruptcy Code. See Law v. Siegel, 571 U.S. 415, 421 (2014) (holding that Section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code," but allowing bankruptcy courts to equitable powers "within the confines of the Bankruptcy Code") (internal quotations and citations omitted); see also In re Sanchez, 941 F.3d 625, 627 (2d Cir. 2019) (affirming bankruptcy court's inherent power to sanction) (internal quotations and citations omitted).

52.     Debtor's unclean hands in hiding the Concealed Entities from this Court, ECP, the U.S. Trustee, and Debtor's creditors means that Debtor does not have the required clean hands to bring this contempt action.

53.     The defense of unclean hands requires a defendant to "demonstrate that the plaintiff engaged in fraudulent, deceitful, or bad faith behavior, and that 'the bad faith related to the matter at issue in th[e] litigation.'"  Med. Soc'y of the State of New York v. UnitedHealth Group Inc., 332 F.R.D. 138, 150 (S.D.N.Y. 2019) (quoting Gidatex, S.r.L. v. Campaniello

Imports, Ltd., 82 F. Supp.2d 126, 131 (S.D.N.Y. 1999)).  The doctrine of unclean hands applies only "where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation.'"  Kossoff v. Felberbaum, 281 F. Supp.3d 454, 469 (S.D.N.Y. 2017) (quoting Specialty Minerals, Inc. v. Pluess–Staufer AG, 395 F. Supp.2d 109, 112 (S.D.N.Y. 2005)).

54.     "Application of the 'unclean hands' doctrine rests with the discretion of the court, which is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Kossof, 281 F. Supp.3d at 469 (quoting Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc., 792 F. Supp. 969, 969–70 (S.D.N.Y. 1992)).

55.     Here, there is ample evidence of Debtor's fraudulent and deceitful behavior, as shown by the TD Bank Records,[3] which document in detail Debtor's assets that were never disclosed to this Court.  Debtor's misconduct in hiding the Concealed Entities from the Court directly relates to the equitable relief Debtor seeks.  If she had not concealed assets, then the Discharge Order would never have been entered.  Debtor's claims all relate to violations of the Discharge Order.  Allowing Debtor to maintain this action in equity based on an alleged violation of the Discharge Order, when Debtor's own misconduct led to entry of the Discharge Order, would be manifestly unjust. Count One, therefore, must be dismissed.

### iv.  Defendants Did Not Violate the Discharge Order

56.     The RICO Amended Complaint alleges ECP believed that the RICO conspiracy was "continuing," including ongoing conduct by Debtor.  (RICO Am. Compl., ¶ 79).  Although the predicate acts establishing the existence of the RICO conspiracy occurred pre-petition,

---

[3] Defendants are aware that by attaching the TD Bank Records, the Court may treat this motion as one for summary judgment.  There is no amount of discovery that will bring to light any additional relevant facts related to Debtor's ownership of the Concealed Entities.

Debtor's continued participation in the conspiracy would not be covered by the Discharge Order. Simply filing the RICO Action, and believing that Debtor's participation in the conspiracy continued after her discharge, is enough to show that Defendants did not violate the Discharge Order. Once this action was filed, out of an abundance of caution, ECP filed the Notice of Dismissal, without prejudice. (Ex. 3.)

### b. Debtor's Remaining Claims Must Be Dismissed for Lack of Subject-Matter Jurisdiction

57. The Amended Complaint asserts that this Court has subject-matter jurisdiction to hear the case on three primary grounds: (1) Debtor is seeking injunctive relief (Fed R. Bankr. P. 7001), (2) a declaratory judgment (28 U.S.C. § 2201), and (3) supplemental jurisdiction for the remaining tort claims (28 U.S.C. § 1367). (Am. Compl., ¶ 1). Each of these purported grounds for jurisdiction fails.

58. Once Debtor's requests for injunctive and declaratory relief are dismissed for failure to state a claim, as argued above, the Court is required to dismiss Debtor's remaining tort claims, which were based only on supplemental jurisdiction. See Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) (holding that a federal district court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction") (internal citations omitted).

### c. The Individual Defendants Must Be Dismissed from the Case

#### i. This Court Lacks Personal Jurisdiction Over Cann

59. Determination of whether a federal court has personal jurisdiction over a nonresident defendant requires a two-step analysis: "[f]irst, a district court must determine whether, under the laws of the forum state (New York in this case), there is jurisdiction over the defendant. Second, it must determine whether an exercise of jurisdiction under these laws is

consistent with federal due process requirements." <u>Krisko v. Marvel Entm't, LLC</u>, 473 F. Supp. 3d 288, 298 (S.D.N.Y. 2020) (internal citations omitted).

60.     C.P.L.R. § 302(a), New York's long-arm statute permits personal jurisdiction only if the individual:

> "1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state."

61.     The Amended Complaint makes no allegation regarding Cann's residence, but he is a resident of Colorado.  (Cann Aff., ¶ 9).  The allegations against Cann describe nothing more than routine business transactions that he undertook as ECP's Authorized Person.  Although ECP admits and acknowledges that it is subject to this Court's jurisdiction, extending such jurisdiction to its individual agents is not within the contemplation of C.P.L.R. § 302(a).  Once personal jurisdiction fails under on the long-arm statute, there is no need to consider the due process implications, and Cann should be dismissed with prejudice.

### ii. The Individual Defendants Were Acting in Their Corporate Capacities

62.     If the Court allows this adversary proceeding to continue, then the Individual Defendants must be dismissed at this early stage of the litigation.  The factual allegations against

the Individual Defendants are extremely sparse.  As described in Section II.b.ii above, each of the Individual Defendants was acting on behalf of ECP and in ECP's best interests.

63.     Count Five of the Amended Complaint asserts "Concert of Action" between the Individual Defendants and ECP in ECP's attempt to collect Judgment.  (Id., at ¶¶ 72-78).  The only facts directly attributed to the Individual Defendants in Count Five are that Cann engaged Friedberg and Young to collect the Judgment, and that Friedberg and Young were employed on a contingent basis.  (Id., at ¶¶ 73, 75).  Neither of these actions provide any plausible basis for relief to Debtor.

64.     The elements of a valid claim for concerted action are "(1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort.  Abraham v. Am. Home Mortg. Servicing, Inc., 947 F. Supp.2d 222, 237 (E.D.N.Y. 2013) (internal citations omitted).  The Complaint lacks any allegation of tortious conduct by each Individual Defendant, such that the theory of concerted action as against the Individual Defendants must fail.

65.     In the case of Cann, Debtor must pierce the corporate veil to impose liability.  See NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168 (2d Cir. 2008).  In NetJets, the Second Circuit made clear that a plaintiff may only pierce the corporate veil of an LLC where there is either fraud or where the LLC is a "mere instrumentality or alter ego of its owner."  Id. at 176.  Here, there are no allegations of fraud and no allegations regarding whether ECP is an alter ego of ECP.  Accordingly, Cann must be dismissed.

66.     The remaining allegations of the Amended Complaint show nothing more than the Defendants asserting their rights as against the RICO Entities, and their owners and

operators.  The Affidavits[4] further show that the Individual Defendants acted entirely appropriately and without malice toward Debtor.  The facts of the Amended Complaint and the Affidavits both show that the Individual Defendants' roles in filing the RICO Action were taken strictly in their corporate capacities and in their roles as counsel.

## IV. **CONCLUSION**

67.    The Amended Complaint fails to identify any legally viable cause of action.  An alleged violation of the Discharge Order does not give rise to a private cause of action, and the relief sought for the alleged violation is either impossible for this Court to grant or unnecessarily duplicative.  The Court lacks subject-matter jurisdiction to hear the remaining claims asserted in the Amended Complaint.  Even if the Court had subject-matter jurisdiction over this dispute, the allegations of the Amended Complaint were rendered moot by the filing of the Notice of Dismissal.  Finally, the Individual Defendants cannot be held liable for any of the causes of action asserted in the Amended Complaint because every action alleged in the Amended Complaint was taken in their corporate roles or roles as counsel.  The Amended Complaint must be dismissed in its entirety, with prejudice.

**WHEREFORE**, defendants ECP Property II LLC, Jeremy Friedberg, Gordon Young, and Nathan Cann respectfully request that the Court enter an Order:

a)    Granting this Motion;

b)    Dismissing Debtor's *Amended Adversary Complaint Seeking Declaratory Judgment, Punitive Damages, and Permanent Injunction* [Adv. Doc. 19] in its entirety with prejudice;

---

[4] The Individual Defendants are aware that by attaching the Affidavits, should the Court reach this argument without dismissing the Complaint in its entirety, as argued above, their motion will be taken as one for summary judgment. There is no amount of discovery that will bring to light any relevant facts related to the Individual Defendants' roles in this action.

c)     In the alternative, dismissing Debtor's *Amended Adversary Complaint Seeking Declaratory Judgment, Punitive Damages, and Permanent Injunction* [Adv. Doc. 19] with prejudice as against Cann for lack of personal jurisdiction;

d)     In the alternative, dismissing Debtor's *Amended Adversary Complaint Seeking Declaratory Judgment, Punitive Damages, and Permanent Injunction* [Adv. Doc. 19] with prejudice as against the Individual Defendants and dismissing the Individual Defendants from the case;

e)     Prohibiting any further action against the Defendants in this Court; and

f)     Providing such other and further relief as is just and equitable.

Dated: March 1, 2021                              **Friedberg PC**

                                              _____/s/ Gordon S. Young_____
                                              Jeremy S. Friedberg (JF-3772), *pro hac vice*
                                              Gordon S. Young (GY-8331)
                                              10045 Red Run Boulevard, Suite 160
                                              Baltimore, Maryland 21117
                                              (410) 581-7400
                                              (410) 581-7410 (facsimile)
                                              jeremy@friedberg.legal
                                              gordon.young@friedberg.legal

                                              *Attorneys for Defendants*