# EXHIBIT
# 3

# BUILDING LOAN NOTE EXTENSION
# AND MODIFICATION AGREEMENT

THIS BUILDING LOAN NOTE EXTENSION AND MODIFICATION AGREEMENT (this "Agreement") made as of this 8th day of December, 2010, and made effective as of the 30th day of September, 2010, is entered into between **RIVERROCK NEHEMIAH REALTY LLC**, a New York limited liability company, having its principal office at 771 Thomas S. Boyland Street, Brooklyn, New York 11212 (the "Borrower") and **BANCO POPULAR NORTH AMERICA**, its successors and assigns, having an address at 120 Broadway, 16th Floor, New York, New York 10271 (the "Bank").

## BACKGROUND

WHEREAS, Bank made a mortgage loan in the amount of up to $2,262,010 (the "Loan");

WHEREAS, the Loan is evidenced by a certain (i) building loan note in the amount of $1,912,341 (the "Note"), and (ii) project loan note in the amount of $349,669, in each case executed by Borrower in favor of Bank and each dated as of August 20, 2008;

WHEREAS, the Loan is secured, *inter alia*, by a certain (i) building loan mortgage, assignment of leases and rents and security agreement (the "Mortgage"),and (ii) project loan mortgage, assignment of leases and rents and security agreement, each made by Borrower in favor of Bank and each dated August 20, 2008, encumbering the mortgaged property more particularly described therein; and

WHEREAS, Borrower and Bank executed a building loan agreement (the "Building Loan Agreement"), and Borrower and Bank executed a project loan agreement, each dated August 20, 2008, and each containing certain terms and conditions regarding advances of the Loan.

NOW, THEREFORE, in consideration of the covenants, conditions and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are all hereby acknowledged, Borrower and Bank covenant and agree as follows:

1. DEFINITIONS. All capitalized terms herein shall have the meaning set forth in the Building Loan Agreement, unless otherwise defined herein.

2. MODIFICATION OF NOTE. (a) The definition of Libor Margin, as defined on page 4 of the Note is hereby deleted in its entirety and is replaced with the following: ""Libor Margin" means seven hundred fifty (750) basis points," and the following language shall be added to the definition of "Interest Rate" at the top of page 1 of the Note, prior to the period: "but in no event shall the Interest Rate be less than eight percent (8%) per annum." (b) The amount of "$1,912,341" is hereby deleted in its entirety from the definition of "Amount of Note" on page 1 of the Note, and the following is substituted in its place and stead: "$1,887,583.56."

3. <u>EXTENSION OF MATURITY DATE</u>. The maturity date of the Note is hereby extended to March 31, 2011 (the "**Extended Maturity Date**"), on which date the unpaid principal balance of the Note, together with all accrued and unpaid interest thereon and all other amounts payable under the Loan Documents (as defined below), shall be due and payable. Borrower hereby renews, but does not extinguish, the Note and the liens, security interests and assignments created and evidenced by the Mortgage are hereby renewed by extending the maturity date thereof as set forth above.

4. <u>PRINCIPAL BALANCE</u>. By its execution and delivery hereof, Borrower acknowledges and agrees that as of the date hereof, the outstanding principal balance on the Note is $1,787,372.30.

5. <u>RATIFICATION OF LOAN DOCUMENTS</u>. Each of the documents evidencing and/or securing the Loan (all of such documents, as amended, are collectively referred to herein as the "**Loan Documents**"), as modified by this Agreement, are hereby ratified and confirmed by Borrower. Without limiting the generality of the foregoing, Borrower hereby acknowledges, agrees, ratifies and confirms the Note and the other Loan Documents, and the liens and security evidenced thereby, as security for the Note as extended hereby.

6. <u>NO OFF-SETS</u>. Borrower hereby represents, warrants, acknowledges and agrees that it has no off-sets, defenses or counterclaims with respect to any of its obligations under the Note or the other Loan Documents and that Bank is not in default of any of its obligations under the Loan Documents.

7. <u>EXECUTION IN COUNTERPARTS</u>. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

8. <u>HEADINGS</u>. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

9. <u>ADDITIONAL TERMS AND CONDITIONS</u>. The Borrower and Bank agree to the Extended Maturity Date, subject to the following additional terms and conditions:

(a)    simultaneously with its execution and delivery of this Agreement, Borrower shall pay all of Bank's counsel's fees and expenses in connection with the extension of the maturity date of the Note to the Extended Maturity Date;

(b)    simultaneously with its execution and delivery of this Agreement Bank receives evidence satisfactory to Bank in its sole discretion that the budget for the Loan is sufficient to pay the costs, taxes, insurance and other fees and expenses (other than interest due on the Loan) incurred by the Borrower, in each case during the period of time prior to the Extended Maturity Date, or that other funds are available for this purpose;

- 2 -

(c)     as required in the definition of "Financial Statements" in the Building Loan Agreement, Borrower shall provide to Bank monthly status reports reflecting leasing activity for the Premises, but in addition, such report shall also contain a status report reflecting any sales activity with respect to the Premises, to be delivered no later than ten (10) days after the end of each calendar month through the Extended Maturity Date;

(d)     commencing with the calendar month December, 2010, and during each calendar month thereafter, Borrower shall provide Bank with evidence plans, and/or strategy to lease, and/or sell the property, provided, however, that in no event shall Borrower enter into an agreement to lease or sell the Premises without Bank's prior written consent;

(e)     Borrower hereby certifies, acknowledges and confirms to Bank that Bank is not in default under the Loan Documents, and Borrower, on behalf of itself and its past or present parents, affiliates, subsidiaries, successors, assigns, representatives, licensees, principals, shareholders, officers, members, managers, employees, directors, agents, attorneys, heirs, executors, and administrators (collectively the "**Borrower Releasors**"), does hereby, now and forever, fully and finally, GENERALLY RELEASE, acquit and discharge Bank, including without limitation, its past or present successors, assigns, representatives, employees, officers, directors, agents, attorneys, affiliates, parent and subsidiary corporations, insurers, divisions and participants (collectively the "**Bank Releasees**") from any and all claims, responsibility, covenants, suits, judgments, demands, indebtedness, promises, agreements, actions, causes of action, obligations, damages, costs, expenses, compensation or liabilities of any type or nature whatsoever which the Borrower Releasors have, might have, or might claim to have, against the Bank Releasees, whether or not known, suspected, developed or undeveloped, anticipated or unanticipated, in law, in equity or under the Loan Documents, from the beginning of the world to the date hereof; and

(f)     Borrower shall, upon demand of Bank, reimburse Bank for any appraisal ordered by Bank prior to the Extended Maturity Date.

10. BORROWER ACKNOWLEDGEMENT.   Borrower acknowledges that although Bank is extending the maturity date of the Loan, certain other defaults by Borrower under the Loan Documents are continuing and Bank is not waiving such defaults by entering into this Agreement, and as a result of such continuing defaults Bank shall not be required to make future advances of the Loan except in its sole and absolute discretion. In connection with such continuing defaults, Borrower and Guarantor are delivering to Bank a forbearance agreement (the "**Forbearance Agreement**") simultaneously with the execution hereof, and the terms of this Agreement and the extension of the maturity date of the Note to the Extended Maturity Date shall be subject to the terms and conditions set forth in the Forbearance Agreement, and Borrower's and Guarantor's compliance therewith.

11. INTEREST DEFERRAL.   Interest on the Loan shall be deferred through the Extended Maturity Date and such interest shall be paid at or prior to the Extended Maturity Date.

- 3 -

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

BORROWER:

**RIVERROCK NEHEMIAH REALTY LLC,**
a New York limited liability company

By:   Guytech Management Services, Inc.

By: _____
     Joseph Norton
     President

Having an office at:
771 Thomas S. Boyland Street
Brooklyn, New York 11212

**BANK:**

**BANCO POPULAR NORTH AMERICA**

By: _____
     Lawrence G. Hammond
     Vice President

Having an office at:
120 Broadway, 16th Floor
New York, New York 10271

# EXHIBIT 4

# PROJECT LOAN AGREEMENT
# (RETAIL)

THIS AGREEMENT (this "**Agreement**"), dated as of August 20, 2008 between **BANCO POPULAR NORTH AMERICA** having an address at 120 Broadway, 16th Floor, New York, New York 10271 ("**Lender**") and **RIVERROCK NEHEMIAH REALTY LLC**, a New York limited liability company, having an address at 771 Thomas S. Boyland Street, Brooklyn, New York 11212 ("**Borrower**").

## PRELIMINARY STATEMENT

Borrower is the owner of certain real property situated in the County of Kings, State of New York, and more particularly described in <u>Schedule A</u> to the mortgages described below, together with all structures and improvements now or hereafter located thereon (the "**Premises**"). Borrower has applied to Lender for a loan to be secured by a project loan mortgage, assignment of leases and rents and security agreement covering Borrower's interest in the Premises, and Lender is willing to make said loan upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the mutual promises and agreement herein contained, Lender and Borrower agree as follows:

      1.    <u>Definitions.</u>

All capitalized terms and phrases used in this Agreement but not defined in this Agreement shall have the meanings ascribed thereto in the BLA (hereinafter defined).

      2.    <u>Loan.</u>

On the basis of the representations, warranties and covenants made by Borrower herein and in the Project Mortgage (hereinafter defined) to and subject to satisfaction of the conditions herein set forth, Lender agrees to make, and Borrower agrees to accept, a loan of up to the amount of $349,669 (the "**Loan**") to be evidenced by Borrower's project loan note (the "**Project Note**") to Lender in that aggregate amount and secured by that certain project loan mortgage, assignment of leases and rents, and security agreement (the "**Project Mortgage**") from Borrower to Lender on the Premises. The Loan shall mature, bear interest, be payable as to principal and interest and be subject to prepayment as provided in the Project Note. All Loan payments due hereunder and under the Project Note and the Project Mortgage shall be made by Borrower in lawful money of the United States of America in immediately available funds. The Loan shall be advanced from time to time as provided herein for the payment of costs in connection with the acquisition of the Premises, transfer taxes, application fees, toxic waste reports, warranties, title premiums, management fees, marketing and advertising expenses, permits and fees and other approved costs incurred by Borrower in connection with the "Improvements", as that term is defined in that certain building loan agreement between Borrower and Lender dated the date hereof (the "**BLA**") which costs are not "costs of the

improvement" under the Lien Law of the State of New York and interest on the Note (all of such costs being hereinafter collectively called "**Costs**").

3.   Loan Advances.

(a)   Advances will be made in respect of the categories of costs and expenses (each of which shall be Costs) set forth in a statement (the "**Project Cost Statement**") in a form approved by Lender, which statement sets forth, by category, the loan budget amounts in respect of all Costs. Advances in the aggregate shall not exceed the maximum amount set forth with respect to each such category in the Project Cost Statement as may be amended pursuant to paragraph 3(f) herein;

(b)   The proceeds of the Loan shall be advanced only if the conditions set forth in paragraph 5 continue to be satisfied and no advance shall be made more frequently than hereof once a month in amounts which, at the election of Lender shall be 100% of Costs actually incurred or to be incurred as to Costs with respect to the items listed in the Project Cost Statement, in each case as evidenced by receipted bills for work performed or other evidence satisfactory to Lender, in its sole discretion;

(c)   Advances shall be made by Lender, at Lender's principal office or at such other place as Lender may designate, periodically upon not less than ten (10) Business Days prior written notice to Lender;

(d)   Each request for an advance shall be in form and substance reasonably satisfactory to Lender and shall be accompanied by (i) a certificate of Borrower, signed by an officer of the managing member of the Borrower, to the effect that Borrower has paid or actually incurred costs in the amount of the requested advance, that such Costs have not been made the basis for any other request for an advance of Loan proceeds under this Agreement or any other agreement between Borrower and Lender, that all representations and warranties of Borrower herein are true as of the time of such request, and that no material adverse change in Borrower's financial condition has occurred since the immediately preceding advance, (ii) a Requisition under the BLA and (iii) a notice of title continuation or an endorsement to the title policy referred to in paragraph 5 below indicating that, since the date of the last preceding advance, there has been no change in the state of title not approved by Lender and no survey exception not theretofore approved by Lender, which endorsement shall have the effect of increasing the coverage of the policy by the amount of the advance then being made. Borrower shall only be entitled to payment in the amount and for such items as are approved by Lender as set forth in the Project Cost Statement in respect of each request for advance;

(e)   If at the time of an advance there are incurred Costs which shall be paid by Borrower from such advance or any prior advance and have not been paid by Borrower then, prior to and as a condition to the next advance, Borrower shall submit to Lender proof satisfactory to Lender that such incurred Costs have been paid in full;

(f)   If at any time the undisbursed balance of the Loan for any category of Cost shown on the Project Cost Statement is, in Lender's judgment, excessive, the excess may be reallocated by Borrower to any other Cost approved by Lender, except that in no event shall the interest category be reduced;

(g)     Lender shall be entitled, but not obligated, and is hereby irrevocably authorized to advance directly to itself such sums as are necessary to pay accrued and unpaid interest on the Note, to the extent the same is due and payable; and

(h)     Lender shall not be obligated to make any advance hereunder unless all conditions to the making of an advance under the BLA have been and continue to be satisfied.

4.     Covenants of Borrower.

Borrower hereby covenants and agrees with Lender that Borrower will (a) pay promptly when due all claims for labor and materials and prevent the filing of liens therefor against the Premises, provided that Borrower need not pay such claims so long as the validity thereof is being contested in good faith and provision for the payment thereof is made by Borrower by bonding or other method satisfactory to Lender, or otherwise in form and manner reasonably satisfactory to Lender, (b) use the Loan proceeds solely for the payment of costs and expenses which constitute Costs, (c) permit the duly authorized agents of Lender at any reasonable time to enter upon and inspect the Premises and the Improvements for purposes of assisting Lender in determining whether or not any particular advance of Loan proceeds should be made or otherwise, (d) comply with all laws, ordinances or other governmental regulations affecting the Premises or the construction of the Improvements, and (e) furnish to Lender such financial information of Borrower or the Guarantor as Lender may from time to time require as set forth in the BLA.

5.     Conditions Precedent.

Lender's obligations under this Agreement shall be conditioned upon, and no portion of the Loan shall be advanced until, the satisfaction of the following conditions:

(i)     There shall be no default beyond applicable periods of notice and grace under this Agreement, the Project Note, the Project Mortgage, or the BLA, or any other Loan Document; and

(ii)     Lender shall have received: (a) executed originals of each of the Loan Documents which must be satisfactory to Lender in all respects, (b) insurance policies or certificates of insurers evidencing the insurance required by the Project Mortgage, (c) a paid title insurance policy in ALTA 2006 form, as required by the BLA, or such other form reasonably acceptable to Lender, in the amount of the Project Note, insuring the Project Mortgage to be a valid lien on the Premises free and clear of all defects and encumbrances not previously approved by Lender or its counsel, which shall contain no survey exceptions other than those previously approved by Lender, full coverage against mechanics' and materialmen's liens, an undertaking by the issuer thereof to provide the notice of title continuation or endorsement referred to in paragraph 3(d) above and a pending disbursements clause in the form of Exhibit D to the BLA, (d) an opinion of counsel for Borrower and the Guarantor in form and substance  satisfactory to Lender, (e) the Project Cost Statement, (f) all conditions to receiving an advance under the BLA have been met and (g) such other documents, instruments, opinions or assurances as Lender or its counsel may request.

6.    Insufficient Loan Funds.

If at any time Lender notifies Borrower that, in Lender's sole judgment, the undisbursed balance of the Loan is insufficient to pay the remaining Costs, Borrower shall either (i) deposit with Lender an amount equal to such deficiency which Lender may from time to time apply, or allow Borrower to apply, to such Costs or (ii) pay for such Costs next incurred in the amount of such deficiency so that the amount of the Loan which remains to be disbursed shall be sufficient to pay for the then remaining Costs (after Borrower makes such payment), and Borrower shall furnish Lender with such evidence thereof as Lender shall require.  Borrower hereby agrees that Lender automatically, and without further documentation, shall have a lien on and security interest in any sums deposited pursuant to clause (i) above and that Borrower shall have no right to withdraw any such sums except for the payment of the aforesaid Costs as approved by Lender. Any such sums not used as provided in said clause (i) shall be released to Borrower when and to the extent that Lender determines that the amount thereof is more than the excess, if any, of the total remaining Costs over the undisbursed balance of the Loan, provided, however, that should an Event of Default occur under the Project Mortgage, Lender may, at its option, apply such amounts either to the Costs or to the immediate reduction of outstanding principal and/or interest under the Project Note or any other sum owed by Borrower to Lender.

7.    Documents, etc. to be Satisfactory.

All instruments and documents required hereby or affecting the Premises, or relating to Borrower's capacity and authority to borrow the Loan and to execute the Loan Documents and such other documents, instruments, opinions and assurances as Lender may request and all procedures in connection herewith shall be subject to the approval, as to form and substance, of Lender and its counsel, Edwards Angell Palmer & Dodge LLP, 750 Lexington Avenue, New York, New York 10022.  All persons or entities responsible for the preparation and/or execution of the instruments specifically required hereby and all obligors thereunder shall be reasonably satisfactory to Lender.

8.    Factual Matters.

Any condition of this Agreement which requires the submission of evidence of the existence or non-existence of a specified fact or facts implies as a condition of the existence or non-existence, as the case may be, of such fact or facts and Lender shall, at all times, be free independently to establish to its satisfaction and in its absolute discretion such existence or nonexistence.

9.    Waiver.

No failure or delay by Lender in exercising any right or privilege hereunder or under any other instrument contemplated hereby shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

10.     Amendments.

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

11.     Notices.

Any notices, requests or other communications hereunder shall be in writing and shall be deemed given on the date of delivery when presented either personally against signed receipt, or sent by Federal Express, or three (3) Business Days after being sent by United States Registered or Certified Mail, return receipt requested, postage prepaid, if to Borrower, addressed to it at its office stated above, Attention: Joseph Norton, with a copy sent in the same manner to, Goldstein Hall, PLLC, 44 Wall Street, New York, New York 10005, Attention: Matthew Hall, Esq. and if to Lender, addressed to it at its office stated above, Attention: Lawrence G. Hammond, Vice President, with a copy sent in the same manner to its counsel, Edwards Angell Palmer & Dodge LLP, 750 Lexington Avenue, New York, New York 10022, Kevin C. George, Esq., or to such other address within the United States of America as any such party shall, by notice to the other party, specify.

12.     Successors.

'       This Agreement shall bind and inure to the benefit of the parties hereto, and their respective successors and assigns.

13.     Lender's Obligation.

All conditions to the obligation of Lender to make advances hereunder are imposed solely and exclusively for the benefit of Lender and its successors and/or assigns and no other person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make advances in the absence of strict compliance with any or all thereof and no other person shall, under any circumstances, be deemed to be beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Lender at any time if in its sole discretion it deems it advisable to do so.

14.     Brokers.

Borrower shall indemnify Lender from claims of those brokers who have had any communication with Borrower and whose claims arise by reason of the indemnifying party's actions in connection with the execution of this Agreement, or any other Loan Document or the consummation of the transactions contemplated hereby, and from expenses incurred by the Lender in connection with any such claims (including, but not limited to, reasonable attorneys' fees and appellate attorneys' fees).

15.     Loan Participation.

Lender shall have the unrestricted right at any time and from time to time, and without the consent of or notice to Borrower or any Guarantor, to grant to one or more banks or other financial institutions (each, a "**Participant**") participating interests in Lender's obligation to lend hereunder and/or any or all of the Loan held by Lender hereunder. In the event of any such grant

- 5 -

by Lender of a participating interest to a Participant, whether or not upon notice to Borrower, Lender shall remain responsible for the performance of its obligations hereunder and Borrower shall continue to deal solely and directly with Lender in connection with Lender's rights and obligations hereunder. Lender may furnish any information concerning Borrower, Guarantor, the Loan, the Improvements and/or the Premises, in its possession from time to time to prospective Participants.

16.   Counterparts.

This Agreement may be executed in any number of counterparts, and each such counterpart shall for all purposes be deemed to be an original, and all such counterparts together constitute but one and the same agreement.

17.   Right of Setoff.

Borrower hereby grants to Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Lender whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Lender or any entity under the control of, controlled by or affiliated with Lender and its successors and/or assigns or in transit to any of them. At any time, without demand or notice (any such notice being expressly waived by Borrower), Lender may setoff the same or any part thereof and apply the same to any liability or obligation of Borrower or any Guarantor even though unmatured and regardless of the adequacy of any other collateral security for the Loan. **ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.**

18.   Waiver of Jury Trial.

**BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF LENDER RELATING TO THE ADMINISTRATION OF THE LOAN OR ENFORCEMENT OF THE LOAN DOCUMENTS EVIDENCING AND/OR SECURING THE LOAN, AND AGREE THAT NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER**

- 6 -

**CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS AGREEMENT AND MAKE THE LOAN.**

19.     Loan Assignment.

Lender shall have the unrestricted right at any time or from time to time, and without Borrower's or anyone else's consent, to assign all or any portion of its rights and obligations hereunder to one or more banks or other financial institutions (each, an "**Assignee**"), and Borrower agrees that it shall execute or cause to be executed, such documents, including without limitation, amendments to this Agreement and to any other documents, instruments and agreements executed in connection herewith as Lender shall deem necessary to effect the foregoing. In addition, at the request of Lender and any such Assignee, Borrower shall issue one or more new promissory notes, as applicable, to any such Assignee, and if Lender has retained any of its rights and obligations hereunder following such assignment, to Lender, which new promissory notes shall be issued in replacement of, but not in discharge of, the liability evidenced by the promissory note held by Lender prior to such assignment and shall reflect the amount of the respective commitments and loans held by such Assignee and Lender after giving effect to such assignment. Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by Lender in connection with such assignment, and the payment by Assignee of the purchase price agreed to by Lender and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and obligations of Lender hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by Lender pursuant to the assignment documentation between Lender and such Assignee, and Lender shall be released from its obligations hereunder and thereunder to a corresponding extent. Lender may furnish any information concerning Borrower in its possession from time to time to prospective Assignees, provided that Lender shall require any such prospective Assignees to agree in writing to maintain the confidentiality of such information.

20.     Choice Of Law.

**BORROWER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK OR ANY FEDERAL COURT SITTING THEREIN AND CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURT. BORROWER HEREBY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT FORUM.**

21.     Governing Law; Jurisdiction.

This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court

sitting in the City of New York (or any county in New York State where any portion of the "Mortgaged Property," as such noted term is defined in the Mortgage, is located) over any suit, action or proceeding arising out of or relating to this Agreement, and Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York State or Federal court sitting in the City of New York (or such other county in New York State) may be made by certified or registered mail, return receipt requested, directed to Borrower at the address for Borrower set forth in this Agreement, and service so made shall be completed five (5) days after the same shall have been so mailed.

22.    Exit Fee.    If Borrower does not elect to have Lender provide the Lender's Permanent Loan, then Borrower shall pay to Lender a fee equal to one percent (1%) of the maximum principal amount of the Loan (whether or not it is fully advanced) prior to release of the Project Mortgage.

[THE BALANCE OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

- 8 -

**IN WITNESS WHEREOF**, Lender, Borrower and Nominee have caused this Agreement to be executed the day and year first above written.

**RIVERROCK NEHEMIAH REALTY LLC,**
a New York limited liability company

By:     Guytech Management Services, Inc.

By:_____
        Joseph Norton
        President

**BANCO POPULAR NORTH AMERICA**

By:_____
        Lawrence G. Hammond
        Vice President

# EXHIBIT
# 5

## PROJECT LOAN NOTE

Date of Note: As of August 20, 2008

Amount of Note:      $349,669

Maturity Date:       September 30, 2010

Interest Rate:       Base Rate or the Libor Rate, as set forth below, unless the Involuntary
                     Rate (as herein defined) is applicable.

**FOR VALUE RECEIVED**, the undersigned, having an address as indicated under its name below (herein called the "**Borrower**"), **HEREBY PROMISES TO PAY ON THE MATURITY DATE**, to the order of **BANCO POPULAR NORTH AMERICA**, a New York banking corporation, its successors and/or assigns ("**Lender**") at its offices at 120 Broadway, 16th Floor, New York, New York 10271, or at such other place as the holder hereof may from time to time designate in writing, in lawful money of the United States, in immediately available New York funds, without counterclaim or setoff and free and clear of, and without deduction or withholding for, any taxes or other payments, the Amount of Note, or so much thereof as may be advanced by Lender, pursuant to that certain project loan agreement dated of even date herewith (the "**Project Loan Agreement**") between Borrower and Lender (the "**Principal Amount**"), together with interest on the Principal Amount or on so much thereof as may from time to time remain unpaid at the Interest Rate, or the Involuntary Rate (hereinafter defined), if applicable, which shall be computed on an actual 360-day basis (i.e., all computations of interest under this Note shall be made on the basis of a three hundred sixty (360) day year and the actual number of days elapsed). Interest shall be payable monthly on the first day of the first month following the first advance under the Project Loan Agreement and on the first day of each month thereafter until this Note is paid in full.

Interest Rates. The Principal Amount from day to day outstanding which is not past due shall bear interest at a rate per annum equal to the following (computed as provided below) as applicable:

        (a)    On Base Rate Principal, on any day, the Base Rate; and

        (b)    On LIBOR Rate Principal, for the applicable Interest Period, the applicable LIBOR Rate.

Interest Rate Elections.

        (a)    Subject to the conditions and limitations in this Note, Borrower shall be deemed to (a "Rate Election Notice"):

        (i)    Elect, for a new advance of funds, that such Principal Amount will be LIBOR Rate Principal unless it is not commercially feasible for Lender to provide the LIBOR Rate, as hereinafter provided;

(ii)     Elect to convert, on a LIBOR Business Day, all or part of Base Rate Principal into LIBOR Rate Principal; or

(iii)     Elect to continue, commencing on the last day of the Interest Period applicable thereto, any LIBOR Rate Principal.

If, for any reason, an effective election is not made in accordance with the terms and conditions of this Note for any principal advance or for any LIBOR Rate Principal for which the corresponding Interest Period is expiring, or to convert Base Rate Principal to LIBOR Rate Principal, then the sums in question will be deemed to bear interest at the LIBOR Rate.

(b)     Each Rate Election Notice must be received by Lender not later than 10:00 a.m. on the applicable date as follows:

(i)     three (3) LIBOR Days prior to the proposed date of advance.

Unless otherwise specified herein, no conversion from LIBOR Rate Principal may be made other than at the end of the corresponding Interest Period. All such notices shall be irrevocable once given, and shall be deemed to have been given only when actually received by Lender in writing in a form specified by Lender.

2.     General Conditions Precedent to LIBOR Rate Election. In addition to any other conditions herein, a LIBOR Rate Election shall not be permitted if:

(a)     After giving effect to the requested LIBOR Rate Election, the sum of all LIBOR Rate Principal plus all Base Rate Principal would exceed the principal face amount of this Note; or

(b)     Any of the circumstances referred to in the Section of this Note with a heading "Unavailability of Rate" below shall apply with respect to the requested LIBOR Rate Election or the requested LIBOR Rate Principal.

3.     Determinations. Lender shall determine each interest rate applicable to the Principal Amount in accordance with this Note and its determination thereof shall be conclusive in the absence of manifest error. The books and records of Lender shall be conclusive evidence, in the absence of manifest error, of all sums owing to Lender from time to time under this Note, but the failure to record any such information shall not limit or affect the obligations of Borrower under the Loan Documents.

4.     Unavailability of Rate. If, with respect to any LIBOR Rate Election, or any LIBOR Rate Principal outstanding hereunder, Lender determines that no adequate basis exists for determining the LIBOR Rate or that the LIBOR Rate will not adequately and fairly reflect the cost to Lender of funding or maintaining the applicable LIBOR Rate Principal for such Interest Period, or that any applicable Law (hereinafter defined), or any request or directive (whether or not having the force of law) of any Tribunal (hereinafter defined), or compliance therewith by Lender, prohibits or restricts or makes impossible the making or maintaining of such LIBOR Rate Election or LIBOR Rate Principal or the charging of interest on such LIBOR Rate Principal, and Lender so notifies Borrower, then until Lender notifies Borrower that the

2

circumstances giving rise to such suspension no longer exist, (a) the obligation of Lender to permit such LIBOR Rate Election shall be suspended and (b) all existing affected LIBOR Rate Principal shall automatically become Base Rate Principal, either (i) on the last day of the corresponding Interest Period (if Lender determines that it may lawfully continue to fund and maintain the affected LIBOR Rate Principal to such day); or (ii) immediately (if Lender determines that it may not lawfully continue to fund and maintain the affected LIBOR Rate Principal to such day) and in such case Borrower shall pay to Lender the Consequential Loss, if any, pursuant to the Section of this Note with a heading "Prepayment" below.

5.      Increased Cost and Reduced Return.  If at any time after the date hereof, Lender (which shall include, for purposes of this paragraph, any corporation controlling Lender) determines that the adoption or modification of any applicable Law regarding taxation, Lender's required levels of reserves, deposits, insurance or capital (including any allocation of capital requirements or conditions), or similar requirements, or any interpretation or administration thereof by any Tribunal or compliance by Lender with any of such requirements, has or would have the effect of (a) increasing Lender's costs related to the Indebtedness, or (b) reducing the yield or rate of return of Lender on the Indebtedness, to a level below that which Lender could have achieved but for the adoption or modification of such requirements, Borrower shall, within fifteen (15) days of any request by Lender, pay to Lender such additional amounts as (in Lender's sole judgment, after good faith and reasonable computation) will compensate Lender for such increase in costs or reduction in yield or rate of return of Lender.  No failure by Lender to immediately demand payment of any additional amounts payable hereunder shall constitute a waiver of Lender's right to demand payment of any such amounts at any subsequent time. Nothing herein contained shall be construed or shall so operate as to require Borrower to pay any interest, fees, costs or charges greater than is permitted by applicable Law.

6.      Involuntary Rate.  If any amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at the Involuntary Rate (as defined below) to the fullest extent permitted by applicable Law.  Accrued and unpaid interest or past due amounts (including interest on past due interest) shall be due and payable on demand, at a fluctuating rate per annum (the "**Involuntary Rate**") equal to the higher of (a) the Prime Rate plus five hundred (500) basis points, or (b) the Adjusted LIBOR Rate plus five hundred (500) basis points.

7.      Additional Defined Terms.  In addition to other terms defined herein, as used herein the following terms shall have the meanings indicated, unless the context otherwise requires:

"Adjusted LIBOR Rate" means the quotient obtained by dividing (a) the applicable London Interbank Offered Rate by (b) 1.00 minus the LIBOR Reserve Percentage.

"Base Rate" means, on any day, a simple rate per annum equal to the sum of the Prime Rate for that day plus the Base Rate Margin.  Without notice to Borrower or anyone else, the Base Rate shall automatically fluctuate upward and downward as and in the amount by which the Prime Rate fluctuates.

"Base Rate Margin" means five hundred (500) basis points.

3

"Base Rate Principal" means, at any time, the Principal Amount minus the portion, if any, of such Principal Amount which is LIBOR Rate Principal.

"Indebtedness" means any and all of the indebtedness to Lender evidenced, governed or secured by or arising under this Note or any other Loan Document.

"Interest Period" means with respect to any LIBOR Rate Principal, the period commencing on the date such LIBOR Rate Principal is disbursed or on the date on which the Principal Amount or any portion thereof is converted into or continued as such LIBOR Rate Principal, and ending on the date one (1) month thereafter; provided that:

        (i)     Each Interest Period must commence on a LIBOR Business Day;

        (ii)    In the case of the continuation of LIBOR Rate Principal, the Interest Period applicable after the continuation of such LIBOR Rate Principal shall commence on the last day of the preceding Interest Period;

        (iii)   The last day of each Interest Period and the actual number of days during the Interest Period shall be determined by Lender using the practices of the London Interbank market; and

        (iv)   No Interest Period shall extend beyond the Maturity Date, and any Interest Period which begins before the Maturity Date and would otherwise end after the Maturity Date shall instead end on the Maturity Date.

"Laws" means all constitutions, treaties, statutes, laws, ordinances, regulations, rules, orders, writs, injunctions, or decrees of the United States of America, any state or commonwealth, any municipality, any foreign country, any territory or possession, or any Tribunal.

"LIBOR Business Day" means a Business Day which is also a London Banking Day.

"LIBOR Margin" means two hundred fifteen (215) basis points.

"LIBOR Rate" means for any applicable Interest Period for any LIBOR Rate Principal, a simple rate per annum equal to the sum of the LIBOR Margin plus the Adjusted LIBOR Rate.

"LIBOR Rate Election" means an election or deemed election by Borrower of LIBOR Rate in accordance with this Note.

"LIBOR Rate Principal" means any portion of the Principal Amount which bears interest at an applicable LIBOR Rate at the time in question.

"LIBOR Reserve Percentage" means, with respect to any applicable Interest Period, for any day that percentage (expressed as a decimal) which is in effect on such day, as prescribed by the Board of Governors of the Federal Reserve System (or any successor) for determining the maximum reserve requirement (including basic, supplemental, emergency, special and marginal reserves) generally applicable to financial institutions regulated by the Federal Reserve Board

4

comparable in size and type to Lender, in respect of "Eurocurrency liabilities" (or in respect of any other category of liabilities which includes deposits by reference to which the interest rate on LIBOR Rate Principal is determined), whether or not Lender has any Eurocurrency liabilities or such requirement otherwise in fact applies to Lender. The LIBOR Rate shall be adjusted automatically as of the effective date of each change in the LIBOR Reserve Percentage.

"London Banking Day" means a day on which banks in London are open for business and dealing in offshore dollars.

"London Interbank Offered Rate" means, with respect to any applicable Interest Period, the rate per annum equal to the British Bankers Association LIBOR Rate ("BBA LIBOR"), as published by Reuters (or other commercially available source providing quotations of BBA LIBOR as selected by Lender from time to time) at approximately 11:00 a.m. London time two (2) London Banking Days before the commencement of the Interest Period, for deposits in U.S. Dollars (for delivery on the first day of such Interest Period) with a term equivalent to such Interest Period. If such rate is not available at such time for any reason, then the rate for that Interest Period will be determined by such alternate method as reasonably selected by Lender.

"Note" means this promissory note, and any renewals, extensions, amendments or supplements hereof.

"Potential Default" means any condition or event which with the giving of notice or lapse of time or both would, unless cured or waived, become an Event of Default.

"Prime Rate" means, on any day, the rate of interest per annum then most recently established by Lender as its "prime rate," it being understood and agreed that such rate is set by Lender as a general reference rate of interest, taking into account such factors as Lender may deem appropriate, that it is not necessarily the lowest or best rate actually charged to any customer or a favored rate, that it may not correspond with future increases or decreases in interest rates charged by other lenders or market rates in general, and that Lender may make various business or other loans at rates of interest having no relationship to such rate. If Lender (including any subsequent holder of this Note) ceases to exist or to establish or publish a prime rate from which the Prime Rate is then determined, the applicable variable rate from which the Prime Rate is determined thereafter shall be instead the prime rate reported in The Wall Street Journal (or the average prime rate if a high and a low prime rate are therein reported), and the Prime Rate shall change without notice with each change in such prime rate as of the date such change is reported.

"Tribunal" means any state, commonwealth, federal, foreign, territorial or other court or governmental department, commission, board, bureau, district, authority, agency, central bank, or instrumentality, or any arbitration authority.

8.    Prepayment.

(a)    Borrower may prepay the principal balance of this Note, in full at any time or in part from time to time, provided that: (i) no prepayment may be made which in Lender's judgment would contravene or prejudice funding under any applicable permanent loan commitment or tri-party agreement or the like; (ii) Lender shall have actually received from

5

Borrower prior irrevocable written notice (the "Prepayment Notice") of Borrower's intent to prepay, the amount of principal which will be prepaid (the "Prepaid Principal"), and the date on which the prepayment will be made; (iii) each prepayment shall be in the amount of $1,000 or larger; and (iv) each prepayment shall be in the amount of 100% of the Prepaid Principal, plus accrued unpaid interest thereon to the date of prepayment, plus any other sums which have become due to Lender under the Loan Documents on or before the date of prepayment but have not been paid; and (v) no portion of LIBOR Rate Principal may be prepaid except on the last day of the Interest Period applicable thereto, unless (X) the prior written consent of Lender is obtained which consent, if given, shall provide, without limitation, the manner and order in which the prepayment is to be applied to the Indebtedness, and (Y) Borrower pays to Lender any Consequential Loss as a result thereof, in accordance with Section 4(b) below. If this Note is prepaid in full, any commitment of Lender for further advances shall automatically terminate. No Prepaid Principal may be reborrowed.

(b)     Within fifteen (15) days after request by Lender (or at the time of any prepayment), Borrower shall pay to Lender such amount or amounts as will compensate Lender for any loss, cost, expense, penalty, claim or liability, including any loss incurred in obtaining, prepaying, liquidating or employing deposits or other funds from third parties and any loss of revenue, profit or yield, as determined by Lender in its judgment reasonably exercised (together, "Consequential Loss") incurred by Lender with respect to any LIBOR Rate, including any LIBOR Rate Election or LIBOR Rate Principal as a result of: (i) the failure of Borrower to make any payment on the date or in the amount specified in any Prepayment Notice from Borrower to Lender; (ii) the failure of Borrower to borrow, continue or convert into LIBOR Rate Principal on the date or in the amount specified in any Rate Election Notice or other notice given by Borrower to Lender; (iii) the early termination of any Interest Period for any reason; or (iv) the payment or prepayment of any amount on a date other than the date such amount is required or permitted to be paid or prepaid. Borrower agrees to pay all Consequential Loss upon any prepayment of LIBOR Rate Principal, whether voluntary or involuntary, whether effected by a credit bid at foreclosure, or whether by reason of acceleration upon an Event of Default or upon any transfer or conveyance of any right, title or interest in the Property giving Lender the right to accelerate the maturity of this Note as provided in the Mortgage. Notwithstanding the foregoing, the amount of the Consequential Loss shall never be less than zero or greater than is permitted by applicable Law. Lender shall provide a notice to Borrower setting forth Lender's determination of any Consequential Loss, which notice shall be conclusive and binding in the absence of manifest error. Lender reserves the right to provide interim calculations of such Consequential Loss in any notice of default or notice of sale for information purposes, but the exact amount of such Consequential Loss shall be calculated only upon the actual prepayment of LIBOR Rate Principal as described herein. The Consequential Loss shall be included in the total indebtedness secured by the Mortgage for all purposes, including in connection with a foreclosure sale. Lender may include the amount of the Consequential Loss in any credit bid Lender may make at a foreclosure sale. Lender shall have no obligation to purchase, sell and/or match funds in connection with the funding or maintaining of the Loan or any portion thereof. The obligations of Borrower under this Section shall survive any termination of the Loan Documents and payment of this Note and shall not be waived by any delay by Lender in seeking such compensation.

6

This Note is secured by, *inter alia*, and the parties hereto are entitled to the benefits of that certain project loan mortgage, assignment of leases and rents and security agreement of even date herewith (which, as now exists, and as the same may hereafter, from time to time, be amended, modified, extended, consolidated, increased, supplemented, spread or restated is hereinafter referred to as the "**Mortgage**"), made by the Borrower to the Lender, encumbering, among other things, certain real property and improvements now or hereafter located on said real property and such other property and interests as more particularly described in the Mortgage (the "**Mortgaged Property**"), which Mortgage specifies various Events of Default upon the occurrence of any of such Events of Default, all sums due and owing on this Note may, at Lender's option, be declared immediately due and payable. This Note is executed and delivered pursuant to the Project Loan Agreement. All of the covenants, conditions and agreements of the Project Loan Agreement and the Mortgage, being made a part hereof by this reference.

Borrower acknowledges and agrees that Lender has no obligation to fund any advance under the Project Loan Agreement at any time after the Maturity Date.

Any payment made hereunder, whether categorized as a principal payment or otherwise, shall first be applied to the payment of costs and expenses for which Borrower is liable hereunder or under the Mortgage, next to the payment of accrued and unpaid interest, and lastly to a reduction of the Principal Amount.

All agreements between Borrower and Lender are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration or maturity of the indebtedness evidenced hereby or otherwise, shall the amount paid or agreed to be paid to Lender for the use or the forbearance of the indebtedness evidenced hereby exceed the maximum permissible under applicable law. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. In this regard, it is expressly agreed that it is the intent of Borrower and Lender in the execution, delivery and acceptance of this Note to contract in strict compliance with the laws of the State of New York from time to time in effect. If, under or from any circumstances whatsoever, fulfillment of any provision hereof or of any of the loan documents which evidence and/or secure this Note at the time of performance of such provision shall be due, shall involve transcending the limit of such validity prescribed by applicable law, then the obligation to be fulfilled shall automatically be reduced to the limits of such validity, and if under or from any circumstances whatsoever Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. This provision shall control every other provision of all agreements between Borrower and Lender.

Borrower promises to pay all costs, expenses and reasonable attorneys' fees incurred by the holder hereof in the exercise of any remedy (with or without litigation), in any proceeding for the collection of the debt evidenced by this Note, in any trustee's sale or foreclosure of the Mortgage or the realization upon any other security securing this Note, in protecting or sustaining the lien or priority of said Mortgage or said other security, or in any litigation or controversy arising from or connected with this Note, the Project Loan Agreement, or any

7

security for or guaranty of this Note. Said proceedings shall include, without limitation, any probate, bankruptcy, receivership, injunction, arbitration, mediation, or other proceeding, or any appeal from or petition for review of any of the foregoing, in which the holder hereof appears to enforce the Project Loan Agreement, collect the debt evidenced by this Note or protect its security for this Note. Borrower shall also pay all of Lender's costs and reasonable attorneys' fees incurred in connection with any demand, workout, settlement, compromise or other activity in which Lender engages to collect any portion of the debt evidenced by this Note not paid when due or as a result of any default of Borrower. If a judgment is obtained hereon which includes an award of attorneys' fees, such attorneys' fees, costs and expenses shall be in such amount as the court shall deem reasonable, such judgment shall bear interest at the Involuntary Rate from the date it is rendered to and including the date of payment to Lender.

Borrower hereby waives valuation and appraisement, demand, presentment for payment, notice of dishonor, protest and notice of protest of this Note.

Any notice, demand or request relating to any matter set forth herein shall be in writing and shall be deemed effective and given as provided in the Mortgage.

This Note and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in the City of New York (or any county in New York State where any portion of the Mortgaged Property is located) over any suit, action or proceeding arising out of or relating to this Note, and Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York State or Federal court sitting in the City of New York (or such other county in New York State) may be made by notice to Borrower. Borrower hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient forum.

Borrower hereby agrees that it shall be bound by any agreement extending the time or modifying the above terms of payment, made by Lender and the owner or owners of the property affected by the Mortgage, whether with or without notice to Borrower, and Borrower shall continue to pay the amount due hereunder, but with interest at a rate no greater than the Interest Rate (or the Involuntary Rate if otherwise applicable under this Note), according to the terms of any such agreements of extension or modification.

Time is of the essence as to all dates set forth herein, provided, however, that whenever any payment to be made under this Note shall be stated to be due on a Saturday, Sunday or a day which shall be in the State of New York a legal holiday or day on which banking institutions are required or authorized to close (any other day being a "**Business Day**"), such payment may be made on the next succeeding Business Day, and such extension of time shall in such case be included in computing interest and fees in connection with such payment.

Borrower acknowledges that it has no offsets, defenses or counterclaims to the payment of this Note.

8

NYC 301815.2

This Note and all documents executed in connection herewith have been reviewed and negotiated by Borrower and Lender at arms length with the benefit of the assistance of legal counsel and shall not be construed against either party.

This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

Borrower hereby, knowingly, voluntarily, intentionally, expressly and unconditionally waives, in connection with any suit, action or proceeding brought by Lender based upon, arising out of, under or in connection with this Note, or any other documents contemplated to be executed in connection herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party, any and every right it may have to (i) injunctive relief (other than injunctive relief granted in connection with any such suit, action or proceeding brought by Lender on this Note), (ii) interpose any counterclaim therein (other than a counterclaim brought under this Note that cannot be maintained in any separate action) and (iii) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Borrower from instituting or maintaining a separate action against Lender with respect to any asserted claim. Borrower acknowledges that the aforesaid waiver constitutes a material inducement for Lender to accept this Note and make the loan which is evidenced by this Note.

**BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF LENDER RELATING TO THE ADMINISTRATION OF THE LOAN EVIDENCED BY THIS NOTE OR ENFORCEMENT OF THE LOAN DOCUMENTS EVIDENCING AND/OR SECURING THE LOAN, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS NOTE AND MAKE THE LOAN.**

Borrower hereby grants to Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Lender whether now existing or hereafter arising,

9

upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Lender or any entity under the control of Lender, or under common control or affiliated with Lender and its and their respective successors and/or assigns or in transit to any of them.   At any time, without demand or notice (any such notice being expressly waived by Borrower), Lender may setoff the same or any part thereof and apply the same to any liability or obligation of Borrower even though unmatured and regardless of the adequacy of any other collateral security for the loan which is evidenced by this Note.  **ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN WHICH IS EVIDENCED BY THIS NOTE PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF BORROWER, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.**

Lender may at any time pledge or assign all or any portion of its rights under the loan documents which evidence and/or secure the loan evidenced by this Note, including any portion of this Note, to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341.   No such pledge or assignment or enforcement thereof shall release Lender from its obligations under any of the loan documents which evidence and/or secure the loan evidenced by this Note.

Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection upon default, Borrower agrees to pay, in addition to the principal, interest and other sums due and payable hereon, all costs of collecting or attempting to collect this Note, including attorneys' fees and expenses.   After and during the continuance of any default hereunder or an "Event of Default", as that term is defined in the Mortgage, the rate of interest hereunder shall be the Involuntary Rate.

All payments due under this Note shall be made by Borrower to Lender at 120 Broadway, 16th Floor, New York, New York 10271 or such other place as Lender may from time to time specify in writing in lawful currency of the United States of America in immediately available funds, without counterclaim or setoff and free and clear of, and without any deduction or withholding for, any taxes or other payments.

If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof.   No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

Any check, draft, money order or other instrument given in payment of all or any portion of this Note may be accepted by the Lender and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Lender, except to the extent actual cash proceeds of such instruments are unconditionally received by the Lender and applied to the indebtedness in the manner provided in this Note.

NYC 301815.2

Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of this Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of this Note or other security document, Borrower will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

11

**IN WITNESS WHEREOF**, the Borrower has duly executed this Note as of the Date of Note.

**RIVERROCK NEHEMIAH REALTY LLC,**
a New York limited liability company

By:   Guytech Management Services, Inc.

By:_____
        Joseph Norton
        President

Having an address at:
771 Thomas S. Boyland Street
Brooklyn, New York 11212

# EXHIBIT
# 6

## PROJECT LOAN NOTE EXTENSION
## AND MODIFICATION AGREEMENT

THIS PROJECT LOAN NOTE EXTENSION AND MODIFICATION AGREEMENT (this "Agreement") made as of this 8th day of December, 2010, and made effective as of the 30th day of September, 2010, is entered into between RIVERROCK NEHEMIAH REALTY LLC, a New York limited liability company, having its principal office at 771 Thomas S. Boyland Street, Brooklyn, New York 11212 (the "Borrower"), and BANCO POPULAR NORTH AMERICA, its successors and assigns, having an address at 120 Broadway, 16th Floor, New York, New York 10271 (the "Bank").

### BACKGROUND

WHEREAS, Bank made a mortgage loan in the amount of up to $2,262,010 (the "Loan");

WHEREAS, the Loan is evidenced by a certain (i) building loan note in the amount of $1,912,341, and (ii) project loan note in the amount of $349,669 (the "Note") in each case executed by Borrower in favor of Bank and each dated as of August 20, 2008;

WHEREAS, the Loan is secured, *inter alia*, by a certain (i) building loan mortgage, assignment of leases and rents and security agreement, and (ii) project loan mortgage, assignment of leases and rents and security agreement (the "Mortgage") each made by Borrower in favor of Bank and each dated August 20, 2008, encumbering the mortgaged property more particularly described therein; and

WHEREAS, Borrower and Bank executed a building loan agreement (the "Building Loan Agreement"), and Borrower and Bank executed a project loan agreement, each dated August 20, 2008, and each containing certain terms and conditions regarding advances of the Loan.

NOW, THEREFORE, in consideration of the covenants, conditions and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are all hereby acknowledged, Borrower and Bank covenant and agree as follows:

1. DEFINITIONS. All capitalized terms herein shall have the meaning set forth in the Building Loan Agreement, unless otherwise defined herein.

2. MODIFICATION OF NOTE. (a) The definition of Libor Margin, as defined on page 4 of the Note is hereby deleted in its entirety and is replaced with the following: "Libor Margin" means seven hundred fifty (750) basis points," and the following language shall be added to the definition of "Interest Rate" at the top of page 1 of the Note, prior to the period: "but in no event shall the Interest Rate be less than eight percent (8%) per annum." (b) The

NYC 365998.1

amount of "$349,669" is hereby deleted in its entirety from the definition of "Amount of Note" on page 1 of the Note, and the following is substituted in its place and stead: "$97,327.83."

3. EXTENSION OF MATURITY DATE.   The maturity date of the Note is hereby extended to March 31, 2011 (the "Extended Maturity Date"), on which date the unpaid principal balance of the Note, together with all accrued and unpaid interest thereon and all other amounts payable under the Loan Documents (as defined below), shall be due and payable. Borrower hereby renews, but does not extinguish, the Note and the liens, security interests and assignments created and evidenced by the Mortgage are hereby renewed by extending the maturity date thereof as set forth above.

4. PRINCIPAL BALANCE.   By its execution and delivery hereof, Borrower acknowledges and agrees that as of the date hereof, the outstanding principal balance on the Note is $97,327.83.

5. RATIFICATION OF LOAN DOCUMENTS.   Each of the documents evidencing and/or securing the Loan (all of such documents, as amended, are collectively referred to herein as the "Loan Documents"), as modified by this Agreement, are hereby ratified and confirmed by Borrower.  Without limiting the generality of the foregoing, Borrower hereby acknowledges, agrees, ratifies and confirms the Note and the other Loan Documents, and the liens and security evidenced thereby, as security for the Note as extended hereby.

6. NO OFF-SETS.   Borrower hereby represents, warrants, acknowledges and agrees that it has no off-sets, defenses or counterclaims with respect to any of its obligations under the Note or the other Loan Documents and that Bank is not in default of any of its obligations under the Loan Documents.

7. EXECUTION IN COUNTERPARTS.   This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.

8. HEADINGS.   Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

9. ADDITIONAL TERMS AND CONDITIONS.   The Borrower and Bank agree to the Extended Maturity Date, subject to the following additional terms and conditions:

(a)   simultaneously with its execution and delivery of this Agreement, Borrower shall pay all of Bank's counsel's fees and expenses in connection with the extension of the maturity date of the Note to the Extended Maturity Date;

(b)   simultaneously with its execution and delivery of this Agreement Bank receives evidence satisfactory to Bank in its sole discretion that the budget for the Loan is sufficient to pay the costs, taxes, insurance and other fees and expenses (other than interest due on the Loan) incurred by the Borrower, in each

case during the period of time prior to the Extended Maturity Date, or that other funds are available for this purpose;

(c)     as required in the definition of "Financial Statements" in the Building Loan Agreement, Borrower shall provide to Bank monthly status reports reflecting leasing activity for the Premises, but in addition, such report shall also contain a status report reflecting any sales activity with respect to the Premises, to be delivered no later than ten (10) days after the end of each calendar month through the Extended Maturity Date;

(d)     commencing with the calendar month December, 2010, and during each calendar month thereafter, Borrower shall provide Bank with evidence plans, and/or strategy to lease, and/or sell the property, provided, however, that in no event shall Borrower enter into an agreement to lease or sell the Premises without Bank's prior written consent;

(e)     Borrower hereby certifies, acknowledges and confirms to Bank that Bank is not in default under the Loan Documents, and Borrower, on behalf of itself and its past or present parents, affiliates, subsidiaries, successors, assigns, representatives, licensees, principals, shareholders, officers, members, managers, employees, directors, agents, attorneys, heirs, executors, and administrators (collectively the "**Borrower Releasors**"), does hereby, now and forever, fully and finally, GENERALLY RELEASE, acquit and discharge Bank, including without limitation, its past or present successors, assigns, representatives, employees, officers, directors, agents, attorneys, affiliates, parent and subsidiary corporations, insurers, divisions and participants (collectively the "**Bank Releasees**") from any and all claims, responsibility, covenants, suits, judgments, demands, indebtedness, promises, agreements, actions, causes of action, obligations, damages, costs, expenses, compensation or liabilities of any type or nature whatsoever which the Borrower Releasors have, might have, or might claim to have, against the Bank Releasees, whether or not known, suspected, developed or undeveloped, anticipated or unanticipated, in law, in equity or under the Loan Documents, from the beginning of the world to the date hereof; and

(f)     Borrower shall, upon demand of Bank, reimburse Bank for any appraisal ordered by Bank prior to the Extended Maturity Date.

10. BORROWER ACKNOWLEDGEMENT.   Borrower acknowledges that although Bank is extending the maturity date of the Loan, certain other defaults by Borrower under the Loan Documents are continuing and Bank is not waiving such defaults by entering into this Agreement, and as a result of such continuing defaults Bank shall not be required to make future advances of the Loan except in its sole and absolute discretion. In connection with such continuing defaults, Borrower and Guarantor are delivering to Bank a forbearance agreement (the "Forbearance Agreement") simultaneously with the execution hereof, and the terms of this Agreement and the extension of the maturity date of the Note to the Extended Maturity Date

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

BORROWER:

RIVERROCK NEHEMIAH REALTY LLC,
a New York limited liability company

By:   Guytech Management Services, Inc.

By: _____
Joseph Norton
President

Having an office at:
771 Thomas S. Boyland Street
Brooklyn, New York 11212

BANK:

BANCO POPULAR NORTH AMERICA

By: _____
Lawrence G. Hammond
Vice President

Having an office at:
120 Broadway, 16th Floor
New York, New York 10271

NYC 365598.1

# EXHIBIT
# 7

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008101000539004001E3A08

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 15 |
|---|---|

**Document ID: 2008101000539004**   Document Date: 08-20-2008   Preparation Date: 10-10-2008
Document Type: ASSIGNMENT OF LEASES AND RENTS
Document Page Count: 13

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST NATIONWIDE OF NEW YORK, INC. | EDWARDS ANGELL PALMER & DODGE LLP |
| PICK UP BRS, 1261 BROADWAY | 750 LEXINGTON AVENUE |
| AS AGENT FOR OLD REPUBLIC TITLE INSURANCE | ATTN KEVIN C. GEORGE, ESQ. |
| CO. | NEW YORK, NY 10022 |
| NEW YORK, NY 10001 | |
| 212-685-9700 | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 3602 | 1002 | Entire Lot | COMM | 774 ROCKAWAY AVENUE |
| | | Property Type: COMMERCIAL CONDO UNIT(S) | | | |

**CROSS REFERENCE DATA**

**Document ID:** 2008101000539002
x   Additional  Cross References on Continuation Page

**PARTIES**

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| RIVERROCK NEHEMIAH REALTY LLC | BANCO POPULAR NORTH AMERICA |
| 771 THOMAS S. BOYLAND STREET | 120 BROADWAY, 16TH FLOOR |
| BROOKLYN, NY 11212 | NEW YORK, NY 10271 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 2,262,010.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | 10-21-2008 11:34 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2008000413122** | | |
| Recording Fee: | $ | 102.00 | | | |
| Affidavit Fee: | $ | 8.00 | *City Register Official Signature* | | |

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

</td><td>



2008101000539004001C3888

</td></tr>
</table>

| **RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** | **PAGE 2 OF 15** |
|---|---|

**Document ID:** 2008101000539004     Document Date: 08-20-2008     Preparation Date: 10-10-2008
Document Type: ASSIGNMENT OF LEASES AND RENTS

**CROSS REFERENCE DATA**
**Document ID:** 2008101000539003

FN0-15339-K
B 3602
L 1002

Recording Requested By
And When Recorded Mail To:

EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
Attention: Kevin C. George, Esq.

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS (the "**Assignment**") is made as of August 20, 2008 by **RIVERROCK NEHEMIAH REALTY LLC**, a New York limited liability company having an address at 771 Thomas S. Boyland Street, Brooklyn, New York 11212 (the "**Borrower**"), the Borrower is referred to in this Assignment as "**Assignor**" in favor of **BANCO POPULAR NORTH AMERICA**, its successors and assigns having an address at 120 Broadway, 16th Floor, New York, New York 10271 (collectively, the "**Assignee**").

## RECITALS

A.    Assignor is the owner of a fee simple interest in and to the real property described in Schedule A attached hereto, and the owner of all of the fixtures and improvements now or hereafter located thereon or attached thereto now existing or to be constructed thereon. Said real property, personalty, fixtures and the improvements are herein referred to collectively as the "**Premises**."

B.    Assignee has agreed to make a loan to Assignor in the original principal amount of $2,262,010 (the "**Loan**"), as evidenced by that certain Building Loan Note and Project Loan Note (collectively, the "**Note**"), each of even date herewith, executed by Assignor in favor of Assignee; the Loan is secured by that certain Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement and Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement (collectively, the "**Mortgage**"), each of even date herewith, from Assignor to Assignee; a certain portion of the Loan shall be disbursed pursuant to that certain Building Loan Agreement between Assignor and Assignee of even date herewith, and a certain portion of the Loan shall be disbursed pursuant to that certain Project Loan Agreement of even date herewith between Assignor and Assignee (collectively, the "**Loan Agreement**").

C.    In order to induce Assignee to make the Loan to Assignor, Assignor has agreed to execute this Assignment.

NOW, THEREFORE, with reference to the foregoing and in reliance thereon and for good and valuable consideration, the receipt of which is hereby acknowledged, Assignor agrees as follows:

AGREEMENT

1.     All initially capitalized terms used herein, unless otherwise defined or required by context, shall have the meaning ascribed to them in the Loan Agreement.

2.     Assignor hereby absolutely grants, sells, assigns, transfers and sets over to Assignee, by this Assignment, all of Assignor's interests, whether now existing or hereafter acquired, in all leases, including commercial leases, any lettings, occupancies, subleases and other occupancy agreements of any nature, now or hereafter entered into relating to the Premises or any part thereof, together with all extensions, renewals, modifications or replacements of said leases and occupancy agreements, and together with any and all guarantees of the obligations of the lessees and occupants thereunder (the tenant, occupant or subtenant under any lease is herein referred to individually as "**Lessee**" and collectively under all leases as "**Lessees**", whether now existing or hereafter executed, and all extensions and renewals of said guarantees. (Said leases and occupancy agreements, together with any and all guarantees, modifications, extensions and renewals thereof, are hereinafter referred to collectively as the "**Leases**" and individually as a "**Lease**.")

3.     Assignor's purpose in making this Assignment is to relinquish to Assignee its right to collect and enjoy the rents, additional rents, escalation payments, accounts, royalties, issues, profits, income, revenues and other benefits at any time accruing by virtue of the Leases (hereinafter collectively referred to as "**Rents, Accounts and Profits**").

4.     The parties intend that this Assignment shall be a present, absolute, irrevocable and unconditional assignment and shall, immediately upon execution, give the Assignee the right to enforce, terminate, enter into or modify the Leases, and to collect the Rents, Accounts and Profits and to apply them in payment of the principal and interest and all other sums payable by Assignor on the Indebtedness and other Obligations under the Note and other loan documents, as well as all other sums payable under the Mortgage or any other instrument given as security for the Indebtedness. However, the Assignee hereby grants to Assignor a license to collect and use, subject to the provisions set forth below, the Rents, Accounts and Profits as they respectively become due and to enforce the Leases, so long as there is no Event of Default (as defined in the Mortgage) by Assignor in performance of the terms, covenants or provisions of the Mortgage, the Note, or the Loan Agreement, this Assignment or any other Loan Documents executed in connection with the Loan, subject to any applicable notice and cure provisions in the Loan Documents. Nothing contained herein, nor any collection of Rents, Accounts and Profits by Assignee or by a receiver or agent of Assignee, shall be construed to make Assignee a "mortgagee in possession" of the Premises so long as Assignee has not entered into actual possession of the Premises.

5.     Upon the occurrence of any Event of Default, under the terms and conditions of this Assignment, the Note, the Mortgage, the Loan Agreement or any other loan document, this Assignment shall constitute a direction and full authority to each Lessee under any Lease and each guarantor of any Lease to pay all Rents, Accounts and Profits to Assignee without proof of the Default relied upon. Assignor hereby irrevocably authorizes each Lessee and guarantor under any Lease to rely upon and comply with any notice or demand by Assignee for the payment to Assignee of any Rents, Accounts and Profits due or to become due.

NYC 301908

6.     Assignor represents and warrants as to each Lease now or hereafter covering all or any portion of the Premises:

(a)     that it is in full force and effect;

(b)     that no material default exists on the part of any Lessee or Assignor under any Lease;

(c)     that no Rents, Accounts and Profits in excess of one month's Rents, Accounts and Profits have been collected in advance;

(d)     that no Lease or any interest therein has been previously assigned or pledged;

(e)     that, to the best of its knowledge, no Lessee under any Lease has any defense, setoff or counterclaim against Assignor; and

(f)     that all Rents, Accounts and Profits due to date under each Lease have been collected and no concession has been granted to any Lessee in the form of a waiver, release, reduction, discount or other alteration of Rents, Accounts and Profits due or to become due.

7.     Assignor agrees with respect to each Lease:

(i)     If any Lease provides for a security deposit or other security to be paid or given by the Lessee to Assignor, this Assignment transfers to Assignee all of Assignor's right, title and interest in and to each such security deposit or other security given; provided, however, that Assignor shall have the right to retain said security deposit or other security given so long as no Event of Default occurs under this Assignment, the Mortgage, the Note, the Loan Agreement or any other Loan Document; and provided further that Assignee shall have no obligation to the Lessee with respect to such security deposit or any interest due thereon or other security given unless and until Assignee comes into actual possession and control of said security deposit or interest or other security given.

(ii)     If any Lease for commercial space provides for the abatement of Rents, Accounts and Profits during repair of the leased premises by reason of fire or other casualty, Assignor shall furnish rental insurance to Assignee, the policies to be with companies and in form, content, policy limits and terms as are customary in the case of entities owning similar property or assets similarly situated, or as otherwise required by Assignee.

(iii)     Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any Lessee thereunder. Assignor shall not terminate, or attempt to terminate, any Lease, or materially modify or amend any Lease or any of the terms thereof, or grant any concessions in connection therewith or accept a surrender thereof, without the prior written consent of Assignee, which consent shall not be unreasonably withheld, except for the eviction of the Lessee's existing in the Premises as of the date hereof.

NYC 301908

(iv)     Assignor shall not hereafter execute or consent to any Lease, the terms and conditions of which have not been previously approved in writing by Assignee, which approval shall not be unreasonably withheld or delayed.

(v)     Assignor shall not collect any Rents, Accounts and Profits more than thirty (30) days in advance of the date on which they become due under the terms of any Lease.

(vi)     Assignor shall not discount any future accruing Rents, Accounts and Profits.

(vii)     Assignor shall not consent to any assignment of any Lease, or any subletting thereunder, whether or not in accordance with its terms, on any terms less favorable than those which would reflect an arm's length transaction in light of prevailing market conditions (subject to the rent restrictions, if any, applicable to the Premises), without the prior written consent of Assignee, except as otherwise required by such Lease.

(viii)     Assignor shall not execute any further assignment or pledge of any of the Leases or the Rents, Accounts and Profits or any interest therein or suffer or permit any such assignment or pledge to occur by operation of law.

(ix)     Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any mortgage, deed of trust or other encumbrance, or any other Lease, now or hereafter affecting the Premises or any part thereof, or suffer or permit conversion of any Lease to a sublease, without Assignee's prior written consent.

(x)     Assignor shall fully and faithfully perform and discharge all obligations of the lessor under each Lease, and shall give prompt written notice to Assignee of any notice of Assignor's default received from any Lessee or any other person and furnish Assignee with a complete copy of said notice.  Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under or in any manner connected with any Lease.  Assignor shall use prudent effort to enforce each Lease and all remedies available to Assignor against the Lessee in the case of default under the Lease by the Lessee, except for termination of any Lease (which shall require the prior written consent of Assignee), except as aforesaid.

(xi)     Assignor shall give Assignee written notice immediately upon entering into a Lease of any part of the Premises and shall promptly provide to Assignee a true and correct copy of each fully executed Lease and any guarantee thereof.  Upon written notice from Assignee to Assignor, such Lease shall be deemed included in this Assignment as though originally listed herein.

(xii)     At Assignee's option, Assignor shall not hire, retain or contract with any third party for property management services with respect to the Premises without Assignee's prior written approval of such party and the terms of its contract for management services.

(xiii)     Nothing herein shall be construed to impose any liability or obligation on Assignee under or with respect to any Lease.  Assignor shall indemnify, defend and hold Assignee, its officers, directors, agents, employees, attorneys, participants and representatives and each of their respective successors, heirs and assigns (collectively, the "**Indemnitees**")

- 4 -

harmless from and against any and all liabilities, losses and damages which any Indemnitee may incur under any Lease or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against any Indemnitee by reason of any alleged obligations to be performed or discharged by Assignee under any Lease or this Agreement, unless any of the foregoing arises from or results from the gross negligence or willful misconduct of any Indemnitee. Should any Indemnitee incur any liability, loss or damage under any Lease or by reason of this Assignment and such liability, loss or damage falls within the foregoing indemnification, Assignor shall immediately upon demand reimburse such Indemnitee for the amount thereof together with all costs, expenses, attorneys' fees (based on itemized invoices for time and charges) and court costs incurred by such Indemnitee. All of the foregoing sums shall bear interest at the Involuntary Rate (as defined in the Note) from the date of demand by any such Indemnitee until paid. Any Rents, Accounts and Profits collected by Assignee may be applied by Assignee, in its discretion, in satisfaction of any such liability, loss, damage, claim, demand, cost, expense or fees, in addition to the Indebtedness.

       8.    Assignor hereby grants to Assignee the following rights:

       (i)    Upon an Event of Default as defined in the Mortgage or the Loan Agreement, Assignee shall be deemed to be the creditor of each Lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor relief proceedings affecting such Lessee, without obligation on the part of Assignee, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein.

       (ii)    Assignee shall have the right to assign Assignor's right, title and interest in the Leases to any subsequent holder of the Mortgage or any participating interest therein or to any person acquiring title to all or any part of the Premises through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Assignee.

       (iii)    Assignee shall have the right (but not the obligation), upon any Event of Default under the Mortgage or the Loan Agreement, to take any action as Assignee may deem necessary or appropriate to protect its security, including but not limited to appearing in any action or proceeding and performing any obligations of the lessor under any Lease; and Assignor agrees to pay, on demand, all costs and expenses, including without limitation reasonable attorneys' fees and court costs incurred by Assignee in connection therewith, together with interest thereon at the Involuntary Rate.

       (iv)    Upon any Event of Default under this Assignment, the Mortgage, the Note, the Loan Agreement, or any other Loan Documents, subject to any applicable notice and cure provisions therein, and without notice to or consent of Assignor, Assignee shall have the following rights (none of which shall be construed to be obligations of Assignee):

       (i)    Assignee shall have the right under this Assignment to use and possess, without rental or charge, the Fixtures, Equipment and Personal Property of the Assignor located in or on the Premises and/or used in the operation or occupancy thereof. Assignee shall have the right to apply any of the Rents, Accounts and Profits to pay installments due for Personal Property rented or purchased on credit, insurance premiums on Personal

Property, or other charges relating to Personal Property in or on the Premises. However, this Assignment shall not make Assignee responsible for the control, care, management or repair of the Premises or any Personal Property or for the carrying out of any of the terms or provisions of any Lease.

(ii)     Assignee shall have the right to apply the Rents, Accounts and Profits and any sums recovered by Assignee hereunder to the outstanding Indebtedness, as well as to charges for taxes, insurance, improvements, maintenance and other items relating to the operation of the Premises.

(iii)    Assignee shall have the right to take possession of the Premises, manage and operate the Premises and Assignor's business thereon, and to take possession of and use all books of account and financial records of Assignor and its property managers or representatives relating to the Premises.

(iv)    Assignee shall have the right to execute new Leases of any part of the Premises, including Leases that extend beyond the term of the Mortgage.

(v)     To the extent permitted in any existing Leases, Assignee shall have the right to cancel or alter any existing Leases.

(vi)    Assignee shall have the authority, as Assignor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Assignor and to bind Assignor on all papers and documents relating to the operation, leasing and maintenance of the Premises.

(v)     All of the foregoing rights and remedies of Assignee are cumulative, and Assignee shall also have upon the occurrence of any such Event of Default all other rights and remedies provided under the Note, the Loan Agreement, the Mortgage, or any other loan document executed in connection with the Loan evidenced by the Note or other agreement between Assignor and Assignee, or otherwise available at law or in equity or by statute subject to the nonrecourse clause set forth in the Note.

9.     Failure of Assignee to avail itself of any terms, covenants or conditions of this Assignment for any period of time or for any reason shall not constitute a waiver thereof.

10.    Notwithstanding any future modification of the terms of the Note, the Mortgage, the Loan Agreement or any other loan document executed in connection with the Loan evidenced by the Note, this Assignment and the rights and benefits hereby assigned and granted shall continue in favor of Assignee in accordance with the terms of this Assignment, and without affecting the priority of this Assignment.

11.    This Assignment shall be binding upon and inure to the benefit of the respective heirs, legal representatives, successors and assigns of the parties hereto (including without limitation in the case of Assignee, any third parties now or hereafter acquiring any interest in the Indebtedness or other obligations of Assignor under the Note, or Mortgage, the Loan Agreement or any other loan document executed in connection with the Loan evidenced by the Note, or a part thereof, whether by virtue of assignment, participation or otherwise). The words

NYC 301908

"Assignor," "Assignee," and "Lessee," wherever used herein, shall include the persons and entities named herein or in any Lease and designated as such and their respective heirs, legal representatives, successors and assigns, provided that any action taken by the named Assignee or any successor, designated as such by an instrument recorded in the Official Records of Kings County, New York, referring to this Assignment, shall be sufficient for all purposes notwithstanding that Assignee may have theretofore assigned or participated any interest in the obligation to a third party. All words and phrases shall be taken to include the singular or plural number, and the masculine, feminine or neuter gender, as may be appropriate under the circumstances.

12.     Any change, amendment, modification, abridgment, cancellation, discharge or termination of this Assignment or any term or provision hereof shall be invalid without the written consent of Assignee.

13.     Upon payment to Assignee of the full amount of the Indebtedness and other obligations secured hereby and by the Note and Mortgage, as evidenced by a recorded satisfaction or release of the Mortgage, this Assignment shall be void and of no further effect.

14.     All notices, demands, approvals and other communications provided for in the Loan Documents shall be in writing and be delivered by telegraph, cable, overnight air courier, personal delivery or registered or certified U.S. mail, postage prepaid with return receipt requested to the appropriate party at its address as follows:

If to Assignor:

RiverRock Nehemiah Realty LLC
c/o Guytech Management Services, Inc.
771 Thomas S. Boyland Street
Brooklyn, New York 11212

with a copy to:

Goldstein Hall, PLLC
44 Wall Street
New York, New York 10005
Attention: Matthew Hall, Esq.

If to Assignee:

Banco Popular North America
120 Broadway
16th Floor
New York, New York 10271
Attention: Lawrence G. Hammond

with a copy to:

Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, New York 10022
Attention: Kevin C. George, Esq.

NYC 301908

Addresses for notice may be changed from time to time by written notice to all other parties. Any communications given by telegram, or cable must be confirmed within forty-eight (48) hours by overnight air courier or mail in the manner hereinbefore described. If any communication is given by mail in the manner hereinabove described, it will be effective upon the earlier of: (a) three (3) days after deposit in a post office or other official depository under the care and custody of the United States Postal Service, or (b) actual receipt, as indicated by the return receipt; if given by telegraph or cable, when delivered to the telegraph company with charges prepaid; and if given by personal delivery, or by overnight air courier, when delivered to the appropriate address set forth above.

15.     This Assignment may be recorded in the Official Records of Kings County, New York and Assignor shall pay all fees, charges, costs and expenses of such recording, and cause to be prepared, executed and delivered any and all affidavits necessary to record the same.

16.     If any provision of this Assignment is determined to be illegal or unenforceable for any reason, the remaining provisions hereof shall not be affected thereby.

17.     This Assignment shall be governed by and construed in accordance with the laws of the State of New York.

18.     If Assignee should bring any action to enforce its rights hereunder at law or at equity, Assignor shall reimburse Assignee for all attorneys' fees and court costs incurred by Assignee in connection therewith.

19.     Assignor hereby, knowingly, voluntarily, intentionally, expressly and unconditionally waives, in connection with any suit, action or proceeding brought by Assignee based upon, arising out of, under or in connection with this Assignment, or any other documents contemplated to be executed in connection herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party, any and every right it may have to (i) injunctive relief (other than injunctive relief granted in connection with any such suit, action or proceeding brought by Assignee this Assignment), (ii) **A TRIAL BY JURY**, (iii) interpose any counterclaim therein (other than a counterclaim brought by Assignee under this Assignment that cannot be maintained in any separate action) and (iv) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Assignor from instituting or maintaining a separate action against Assignee with respect to any asserted claim. Assignor acknowledges that the aforesaid waiver constitutes a material inducement for Assignee to accept this Assignment and make the loan which is evidenced by this Assignment.

20.     Assignor hereby grants to Assignee, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Assignee whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Assignee or any entity under the control of, controlled by or affiliated with Assignee, its successors and/or assigns or in transit to any of them. At any time, without demand or notice (any such notice being expressly waived by Assignor), Assignee may setoff the same or any part thereof and apply the same to any liability or obligation of Assignor even though unmatured and regardless of the adequacy of any other

- 8 -

collateral security for the Loan.  **ANY AND ALL RIGHTS TO REQUIRE ASSIGNEE TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN WHICH IS EVIDENCED BY THE NOTE PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE ASSIGNOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.**

NYC 301908

**IN WITNESS WHEREOF**, the undersigned Assignor has executed this Assignment as of the date first above written.

**RIVERROCK NEHEMIAH REALTY LLC**
a New York limited liability company

By:  Guytech Management Services, Inc.

By: _____
           Joseph Norton
           President

Each having an address at:
771 Thomas S. Boyland Street
Brooklyn, New York 11212

STATE OF NEW YORK )
                            ) ss.:

COUNTY OF NEW YORK )

On the 20th day of August, in the year 2008, before me, the undersigned, personally appeared **Joseph Norton** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

Notary Public

Commission expires:

SEAL

MICHAEL SCHWARTZ
Notary Public, State of New York
No. 01SC6096514
Qualified in Kings County
Commission Expires July 25, 2011

## SCHEDULE A

Legal Description of the Premises



# EXHIBIT
# 8

10/10/2008 12:05 FAX                    FIRRT NATIONWIDE OF NY                    ☑002/011

228557

2008 OCT 10  PM 3:00

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS ((front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, New York 10022
Attn: Kevin C. George, Esq.
⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RIVERROCK NEHEMIAH REALTY LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 771 Thomas S. Boyland Street | Brooklyn | NY | 11212 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | LLC | New York | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Banco Popular North America | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 120 Broadway, 16th Floor | New York | NY | 10271 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Schedule A and Rider to UCC-1 attached.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS   Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

River Rock (Retail)- State 51328.0025                    Obf5162

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## FILING NUMBER: 200810100693968

228557                    2008 OCT 10  PM 3: 00

## RIDER TO UCC-1 FINANCING STATEMENT

### COLLATERAL DESCRIPTION

This Rider is attached to and incorporated in a financing statement pertaining to RIVERROCK NEHEMIAH REALTY LLC, a New York limited liability company ("**Debtor**") as debtor, and BANCO POPULAR NORTH AMERICA, a New York banking corporation ("**Secured Party**") as secured party, parties to that certain Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement and Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement (collectively, the "**Security Instrument**"), each dated as of August 20, 2008 made by Debtor, as mortgagor, in favor of Secured Party, as mortgagee, in connection with the financing of the real property described on Schedule A hereto (the "**Land**").

For purposes of this Rider, "UCC" shall mean the Uniform Commercial Code as adopted and in effect from time to time in the state or states where any of the Property (as hereinafter defined) is located. Debtor agrees to execute any and all documents, including financing statements, which may be required to perfect the security interest granted hereby. Debtor hereby authorizes Secured Party at any time and from time to time, without Debtor's further signature or authorization, to file financing statements, continuation statements and amendments thereto that describe the Property and which contain any other information required by Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Debtor is an organization, the type of organization and any organization identification number issued to Debtor. Debtor agrees to furnish any such information to Secured Party promptly upon request.

The attached financing statement covers all right, interest and estate of Debtor now owned, or hereafter acquired, in and to the following property, rights, interests and estates in the Land and the Improvements (as defined below) (collectively, the "**Property**"):

1. Land. The real property described in Schedule A attached hereto and made a part hereof and all additional lands, estates and development rights hereafter acquired by Debtor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise, be expressly made subject to the lien of the Security Instrument (collectively, the "**Land**");

2. Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

3. Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now

or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions and reminders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Debtor of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

4.    <u>Equipment</u>. All "equipment," as such term is defined in Article 9 of the UCC, of every type and description now owned or hereafter acquired by Debtor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Debtor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the **"Equipment"**). Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under Leases (hereafter defined) except to the extent that Debtor shall have any right or interest therein;

5.    <u>Fixtures</u>. All Equipment and fixtures (as defined in the UCC) now owned, or the ownership of which is hereafter acquired, by Debtor which is so related to the Land and Improvements forming part of the real property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Land or in the Improvements, construction equipment, appliances, machinery, plant equipment, fitting, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators, ranges, stoves, ovens, sinks, countertops, cupboards, fans and other kitchen appliances, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Debtor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the **"Fixtures"**).

- 2 -

Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to Leases, except to the extent that Debtor shall have any right or interest therein;

6.   Personal Property.  All furniture, furnishings, objects of art, machinery, goods (as defined in the UCC), tools, supplies, inventory (as defined in the UCC), appliances, general intangibles (as defined in the UCC), tangible chattel paper (as defined in the UCC), contract rights, rights as a lien creditor (as defined in the UCC), Debtor's right and interest in any mortgage (as defined in the UCC) other than the Security Instrument, or promissory note (as defined in the UCC) other than the promissory note secured by the Security Instrument, accounts, accounts receivable, chattel paper, (as defined in the UCC), commercial tort claims (as defined in the UCC), franchises, electronic chattel paper (as defined in the UCC), instruments (as defined in the UCC), licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the UCC, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Debtor and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Debtor in and to any of the Personal Property which  may be subject to any security interests, as defined in the UCC superior in lien to the lien of the Security Instrument and all proceeds and products of the above;

7.   Leases and Rents.  All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any person is granted a possessory interest in, or right to use or occupy all or any portion of the Land or the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Debtor of any petition for relief under 11 U.S.C. § 101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") and all right, title and interest of Debtor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Debtor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to

- 3 -

receive and apply the Rents to the payment of any indebtedness of Debtor to Secured Party;

8.  **Condemnation Awards.** All awards which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

9.  **Insurance Proceeds.** All insurance proceeds in respect of the Property under any insurance policies covering the Property or any portion thereof, including, without limitation, the right to receive and apply the proceeds of any such policies, judgments, or settlements made in lieu thereof, in connection with a casualty to the Property or any portion thereof;

10. **Tax Certiorari.** All refunds, rebates or credits in connection with reduction in real estate taxes or assessments or other charges charged against or a lien on the Property;

11. **Conversion.** All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, insurance proceeds and condemnation or eminent domain awards, into cash, noncash proceeds (as defined in the UCC), proceeds (as defined in the UCC) or liquidation claims;

12. **Rights.** The right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Property or any portion thereof and to commence any action or proceeding to protect the interest of Secured Party in the Property;

13. **Agreements.** All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications, documents (as defined in the UCC) and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Debtor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Debtor thereunder;

14. **Trademarks.** All tradenames, trademarks, servicemarks, logos, copyrights, all royalties, issues, profits, revenue and income due Debtor in connection therewith, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

15. **Accounts.** All reserves, escrows and deposit accounts (as defined in the UCC) maintained by Debtor with respect to the Property, including, without limitation, all deposit accounts established or maintained pursuant to

- 4 -

Security Instrument, together with all deposits or wire transfers made to such accounts and all cash, checks (as defined in the UCC), drafts, certificates, securities, letter-of-credit rights (as defined in the UCC), investment property (as defined in the UCC), financial assets, instruments, accounts (as defined in the UCC), accounts receivable, cash proceeds (as defined in the UCC) and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

16.   Other Rights.  Any and all other rights of Debtor in and to the items set forth in Subsections (1) through (15) above.

- 5 -

# FIRST NATIONWIDE OF NY, INC.

### as Agent for
### Old Republic National Title Insurance Company

## LOAN POLICY
## SCHEDULE A DESCRIPTION

Title Number:  **FNO-15339-KF**                    Policy Number: **LX380166**

ALL that certain piece or parcel or real property, with the improvements therein contained, situate and being a part of a condominium in the Borough of Brooklyn, County of Kings, City and State of New York, known and designated as Residential Unit No. 1001 together with an undivided 5 % interest in the Common Elements of the condominium hereinafter described as the same is defined in the Declaration of Condominium hereinafter referred to.

The real property above described is a Unit shown on the plans of a condominium prepared and certified by Danios Architects, P.C. , and filed in the Office of the Register of the City of New York, Kings County, on 9/26/08, as Map No. 2262, as defined in the Declaration of Condominium entitled The River Rock Condominium, made by River Rock Housing Development Fund Company, Inc under Article 9-B of the New York Real Property Law dated 8/20/08, and recorded in the Office of the Register of the City of New York, Kings County, on the 26th day of September 2008, in File #2008000383142, covering the property therein described.

Premises designated as Block 3602 Lot 1002.

NOTE: Lot and Block shown for informational purposes only.

**743071**        **2013 May 10 AM06:06**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Gisella Melendez 800-331-3282

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

⌐CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071, USA
efiling@wolterskluwer.com
(Fax)818-662-4141

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #  20081010069368 Filedate: 10-OCT-08 | 1b.  ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
| --- | --- |

2. ☐ **TERMINATION:**  Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial):  Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

| ADD'L INFO RE  ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |
| --- | --- | --- | --- |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  **BANCO POPULAR NORTH AMERICA** | | | |
| --- | --- | --- | --- |
| OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA  **NY-0-38079320-47409162**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Filing Number-201305105507770**

# EXHIBIT
# 9

**GUARANTY OF PAYMENT**
**(RETAIL)**

Dated as of:  August 20, 2008

Banco Popular North America
120 Broadway, 16th Floor
New York, New York  10271
Attention: Lawrence G. Hammond,
          Vice President

>          Re:    Up to $2,262,010 Construction Mortgage Loan (the "**Loan**") from
>                 Banco Popular North America (the "**Lender**") to RiverRock
>                 Nehemiah Realty LLC, a New York limited liability company (the
>                 "**Borrower**")

Ladies and Gentlemen:

        To induce Lender to consummate the captioned transaction and to lend the indicated amount to Borrower in accordance with that certain building loan agreement (the "**Building Loan Agreement**") dated the date hereof by and among the Borrower and Lender (all capitalized terms not defined herein shall have the meanings ascribed thereto in the Building Loan Agreement), the undersigned (hereinafter, and if there are two or more signers, each of them individually and collectively, "**Guarantor**") hereby jointly and severally (except in the case of paragraphs 7 through 12 which are made severally by each Guarantor) represents, warrants and covenants to you and your successors and assigns as follows:

        1.      Authorization and Enforceability of Loan Documents.  The Building Loan Agreement, Note, Mortgage and all other documents executed and delivered by Borrower to Lender in connection with the Loan (the Building Loan Agreement, the Note, Mortgage and such other documents hereinafter, sometimes, the "**Loan Documents**") have been duly authorized and executed by the signatories thereto (other than Lender) and are legal, valid and binding instruments, enforceable against such parties in accordance with their respective terms. Capitalized terms used herein without definition shall have the respective meanings ascribed thereto in the Building Loan Agreement.

        2.      Obligations Guaranteed.  The Guarantor unconditionally guarantees the due performance and prompt payment, whether at maturity or by acceleration or otherwise, of (i) all of the Borrower's obligations under the Note, the Mortgage, the Building Loan Agreement and all of the other Loan Documents, together with interest on such obligations to the extent provided for in said documents, and (ii) all reasonable legal and other costs or expenses paid or incurred by you in the enforcement thereof against the Borrower or the enforcement of this Guaranty of Payment against any Guarantor and further unconditionally guarantees that the

representations and warranties made by the Borrower in the Building Loan Agreement and the Loan Documents are true as of the date hereof.

3.   Liability Unimpaired.  The Guarantor's liability hereunder shall in no way be limited or impaired by, and Guarantor hereby consents to and agrees to be bound by any amendment or modification of the provisions of the Loan Documents or any other instrument made to or with Lender by the Borrower or any person who succeeds the Borrower as owner of all or part of the property covered by the Mortgage, provided however, that the Guarantor shall not be bound by any such amendment or modification which increases our liability hereunder without the specific written consent of the Guarantor but the Guarantor shall be bound by any modification or amendment which extends the maturity date of the Note.   In addition, Guarantor's liability hereunder shall in no way be limited or impaired by (i) any extensions of time for performance required by any of said documents, including, but not limited to, any extension of any of the dates set forth in the Building Loan Agreement and/or any one or more of the Loan Documents, (ii) any sale, assignment or foreclosure of the Mortgage or any sale or transfer of all or part of the property covered by the Mortgage, (iii) any exculpatory provision in any of said instruments limiting Lender's recourse to property encumbered by the Mortgage or to any other security, or limiting Lender's rights to a deficiency judgment against the Borrower, (iv) the release of the Borrower or any other person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of said instruments by operation of law or otherwise, (v) the release or substitution in whole or in part of any security for the Note, (vi) the failure to record the Mortgage or file any UCC financing statements (or the improper recording or filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Note, (vii) the exercise of any rights or remedies by any party under the Building Loan Agreement and/or any one or more of the Loan Documents, (viii) the invalidity, irregularity or unenforceability, in whole or in part, of the Building Loan Agreement, and/or any one or more of the other Loan Documents or any other instrument or agreement executed or delivered to you in connection with the Loan, including, without limitation, any other guaranty (ix) any other action or circumstance whatsoever which constitutes, or might be construed to constitute, a legal or equitable discharge or defense of Borrower for its obligations under any of the Loan Documents or of Guarantor under this Guaranty or (x) any representations and warranties made to or for the benefit of Lender in the Loan Documents, by whomsoever made, not being true and correct as of the date hereof or as of the date each Requisition or request for advance under the Building Loan Agreement is submitted to Lender; and, in any such case, whether with or without notice to Guarantor and with or without consideration. As used above in this paragraph, and elsewhere in this Guaranty, the term "person" shall mean any individual, company, firm, association, partnership, corporation, limited liability company, trust or other legal entity of any kind whatsoever; and, in any such case, whether with or without notice to us and with or without consideration.

4.   Preservation of Loan Documents.  The Guarantor will cause the Borrower to maintain and preserve the enforceability of the Building Loan Agreement and each of the Loan Documents, as the same may be modified and will not permit the Borrower to take or to fail to take actions of any kind (other than payment of the Notes and Mortgages), the taking of which or the failure to take which might be the basis for a claim that any of us has a defense to our obligations hereunder.

-2-

5. **Indemnification; Payments; Certain Waivers.** The Guarantor hereby agrees to indemnify Lender against loss, cost or expense incurred by Lender caused by the Borrower asserting any defense to its obligations under the Building Loan Agreement and/or any one or more of the Loan Documents or the assertion by any Guarantor of any defense to Guarantor's obligations hereunder. The Guarantor (i) waives any right or claim of right to cause a marshalling of the Borrower's assets or to cause Lender to proceed against any of the security for the Note or for the obligations guaranteed hereby before proceeding against Guarantor or to proceed against Guarantor in any particular order; (ii) the Guarantor agrees that any payments required to be made by us hereunder shall become due on demand in accordance with the terms hereof and in the Building Loan Agreement, the Note, and/or the Mortgage immediately upon the happening of any default under the Loan Documents and without presentment of the Note to the Borrower, demand for payment or protest thereof, or notice of non-payment or protest thereof; and (iii) the Guarantor expressly waives and relinquishes all rights and remedies afforded by applicable law to guarantors except any rights of subrogation which the Guarantor may have, provided, that the guaranty provided for hereunder shall neither be contingent upon the existence of any such rights of subrogation nor subject to any claims or defenses whatsoever which may be asserted in connection with the enforcement or attempted enforcement of such subrogation rights including, without limitation, any claim that such subrogation rights were abrogated by any acts of you. The Guarantor hereby agrees to postpone the exercise of any and all rights of subrogation to your rights against Borrower or the Guarantor hereunder and any rights of subrogation to any collateral securing the Loan and/or the obligations under the Building Loan Agreement and/or any one or more of the Loan Documents until the Loan shall have been paid in full.

6. **Reinstatement.** This Guaranty shall continue to be effective, or be reinstated automatically, as the case may be, if at any time payment, in whole or in part, of any of the obligations guaranteed hereby are rescinded or otherwise must be restored or returned by Lender (whether as a preference, fraudulent conveyance or otherwise) upon or in connection with the insolvency, bankruptcy, dissolution, liquidation or reorganization of Borrower, Guarantor or any other person, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, Borrower, Guarantor or any other person or for a substantial part of Borrower's, Guarantor's or any of such other person's property, as the case may be, or otherwise, all as though such payment had not been made. Guarantor further agrees that in the event any such payment is rescinded or must be restored or returned, all costs and expenses (including, without limitation, legal fees and expenses) incurred by or on behalf of Lender in defending or enforcing such continuance or reinstatement, as the case may be, shall constitute costs of enforcement, the payment of which is guaranteed by Guarantor pursuant to paragraph 2 above and, covered by Guarantor's indemnity pursuant to paragraph 5 above.

7. **Formation and Existence; Power and Authority.** If Guarantor is a corporation, partnership, venture, trust or limited liability company, it is duly organized, validly existing and in good standing under the laws of the state of its formation and has full power and authority to execute, deliver and perform this Guaranty and any Loan Document to which it is a party. Guarantor will preserve and maintain such legal existence and good standing.

8.    Litigation; Compliance with Judgments.  There are no actions, suits or proceedings pending or threatened against or affecting Guarantor, at law, in equity or before or by any governmental authorities except actions, suits or proceedings which are fully covered by insurance or would, if adversely determined, not be likely to have a material adverse effect on Guarantor's business or financial condition. Guarantor is not in material default with respect to any order, writ, injunction, decree or demand of any court or governmental authorities.

9.    No Conflicts.  The consummation of the transactions contemplated hereby and the performance of this Guaranty and the other Loan Documents to which Guarantor is a party have not resulted and will not result in any breach of, or constitute a default under, any mortgage, deed of trust, lease, bank loan or building loan agreement, corporate charter, by-laws, operating agreement, partnership agreement or other instrument to which Guarantor is a party or by which Guarantor may be bound or affected.

10.    Compliance with Laws.  Guarantor is in compliance with, and the transactions contemplated by the Loan Documents and this Guaranty do not and will not violate any provision of, or require any filing, registration, consent or approval under, any federal, state or local law, rule, regulation, ordinance, order, writ, judgment, injunction, decree, determination or award (hereinafter, "**Laws**") presently in effect having applicability to Guarantor. Guarantor will comply promptly with all Laws now or hereafter in effect having applicability to it.

11.    Accuracy of Information; Full Disclosure.  Neither this Guaranty nor any documents, financial statements, reports, notices, schedules, certificates, statements or other writings furnished by or on behalf of Guarantor to Lender in connection with the negotiation of the Loan Documents or the consummation of the transactions contemplated thereby, or required herein or by the other Loan Documents to be furnished by or on behalf of Guarantor, contains any untrue or misleading statement of a material fact or omits a material fact necessary to make the statements herein or in the other Loan Documents not misleading; there is no fact which Guarantor has not disclosed to Lender in writing which materially affects adversely nor, so far as Guarantor can now foresee, will materially affect adversely any of the property covered by the Mortgage or the business affairs or financial condition of Guarantor, or the ability of Guarantor to perform this Guaranty and the other Loan Documents to which Guarantor is a party.

12.    Financial Statements.  The most recent financial statements heretofore delivered by Guarantor to Lender are true, correct and complete in all respects and have been prepared in accordance with generally accepted accounting practice and fairly present Guarantor's respective financial condition as of the respective dates thereof; no material adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.

13.    Transfers of Interests in Loan.  The Guarantor recognizes that Lender may sell and transfer interests in the Loan, the Building Loan Agreement and/or any other Loan Document to one or more participants and/or assignees and that all documentation, financial statements, appraisals and other data, or copies thereof, relevant to any Guarantor, the Borrower or the Loan, and to any advances thereunder, may be exhibited to and retained by any such participant or assignee or prospective participant or assignee.

-4-

14.     <u>Assignment</u>. Lender may assign this Guaranty or any of Lender's rights and powers hereunder, with all or any of the obligations hereby guaranteed.

15.     <u>Non-Waiver; Remedies Cumulative</u>. No failure or delay on Lender's part in exercising any right, power or privilege under the Building Loan Agreement or any of the Loan Documents, this Guaranty or any other document made to or with Lender in connection with the Loan shall operate as a waiver of any such privilege, power or right or shall be deemed to constitute Lender's acquiescence in any default by Borrower or Guarantor under any of said documents. A waiver by Lender of any right or remedy under any of the Loan Documents, this Guaranty or any other document made to or with Lender in connection with the Loan on any one occasion shall not be construed as a bar to any right or remedy which Lender otherwise would have on any future occasion. The rights and remedies provided in said documents are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

16.     <u>Separate Indemnity</u>. The Guarantor acknowledges and agrees that your rights (and Guarantor's obligations) under this Guaranty shall be in addition to all of Lender's rights (and all of Guarantor's obligations) under any indemnity agreement or other guaranty executed and delivered to Lender by the Borrower and/or any Guarantor and payments by any of us under this Guaranty shall not reduce any of our obligations and liabilities under any such indemnity agreement or other guaranty. The obligations hereunder shall terminate upon the full repayment of all sums due under the Building Loan Agreement, the Note and the Mortgage.

17.     <u>Governing Law; Submission to Jurisdiction</u>. This Guaranty and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). The Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in The City of New York (or any county in New York State where any portion of the "Mortgaged Property", as such quoted term is defined in the Mortgage, is located) over any suit, action or proceeding arising out of or relating to this Guaranty, and the Guarantor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York State or Federal court sitting in The City of New York (or such other county in New York State where any portion of the property covered by the Mortgage is located) over any suit, action or proceeding arising out of or relating to this Guaranty, and the Guarantor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable laws, all service of process in any such suit, action or proceeding in any New York State or federal court sitting in The City of New York (or such other county in New York State) may be made by certified or registered mail, return receipt requested, directed to the Guarantor at the address indicated below, with a copy sent to Goldstein Hall PLLC, 44 Wall Street, 12th Floor, New York, New York 10005, Attention: Matthew Hall, Esq. and service so made shall be complete three (3) days after the same shall have been so mailed.

18.     **ADDITIONAL WAIVERS IN THE EVENT OF ENFORCEMENT.** **GUARANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES, IN**

**CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY OR ON BEHALF OF LENDER ON THIS GUARANTY, ANY AND EVERY RIGHT GUARANTOR MAY HAVE TO (I) INJUNCTIVE RELIEF, (II) INTERPOSE ANY COUNTERCLAIM THEREIN, OTHER THAN A COMPULSORY COUNTERCLAIM AND (III) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING. NOTHING HEREIN CONTAINED SHALL PREVENT OR PROHIBIT GUARANTOR FROM INSTITUTING OR MAINTAINING A SEPARATE ACTION AGAINST LENDER WITH RESPECT TO ANY ASSERTED CLAIM.**

19.     <u>Severability</u>.  Any provision of this Guaranty, or the application thereof to any person or circumstance, which, for any reason, in whole or in part, is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Guaranty (or the remaining portions of such provision) or the application thereof to any other person or circumstance, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision (or portion thereof) or the application thereof to any person or circumstance in any other jurisdiction.

20.     <u>Entire Agreement; Amendments</u>.  This Guaranty contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior oral or written agreements or statements relating to such subject matter, and none of the terms and provisions hereof may be waived, amended or terminated except by a written instrument signed by the party against whom enforcement of the waiver, amendment or termination is sought.

21.     <u>Successors and Assigns</u>.  This Guaranty shall be binding upon and shall inure to the benefit of Lender and Guarantor and their respective heirs, personal representatives, successors and assigns. This Guaranty may be assigned by Lender with respect to all or any portion of the obligations guaranteed hereby, and when so assigned Guarantor shall be liable under this Guaranty to the assignees of the portion(s) of the obligations guaranteed hereby so assigned without in any manner affecting the liability of Guarantor hereunder to Lender with respect to any portion of the obligations guaranteed hereby retained by Lender.

22.     <u>Waiver of Jury Trial</u>.  **GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE NOTE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF LENDER RELATING TO THE ADMINISTRATION OF THE LOAN OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS**

**PROHIBITED BY LAW, GUARANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. GUARANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THE NOTE AND MAKE THE LOAN.**

23. <u>Right of Setoff</u>. Guarantor hereby grants to Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Lender whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Lender or any entity under the control of, controlled by, or affiliated with Lender, its successors and/or assigns or in transit to any of them. At any time after an Event of Default, without demand or notice (any such notice being expressly waived by Guarantor), Lender may setoff the same or any part thereof and apply the same to any liability or obligation of Guarantor even though unmatured and regardless of the adequacy of any other collateral security for the Loan. **ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.**

24. <u>Paragraph Headings</u>. Any paragraph headings and captions in this Guaranty are for convenience only and shall not affect the interpretation or construction hereof.

25. <u>Notices</u>. All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when sent by registered or certified mail, if to the Guarantor at their respective addresses stated on the signature page hereof, with a copy sent simultaneously and in the same manner to Goldstein Hall PLLC, 44 Wall Street, 12th Floor, New York, New York 10005, Attention: Matthew Hall, Esq. and if to you, to the attention of Lawrence G. Hammond, Vice President, Banco Popular North America, 120 Broadway, 16th Floor, New York, New York 10271, with a copy sent simultaneously and in the same manner to Edwards Angell Palmer & Dodge LLP, 750 Lexington Avenue, New York, New York 10022, Attention: Kevin C. George, Esq. or at such other address of which a party shall have notified the party giving such notice in writing in accordance with the foregoing requirements.

26. <u>Counterparts</u>. This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original. Said counterparts shall constitute but one and the same instrument and, if more than one Guarantor, shall be binding upon each of them individually as fully and completely as if all had signed but one instrument so that the joint and several liability of each Guarantor under this Guaranty shall be unaffected by the failure of any other Guarantor to execute any or all of said counterparts.

27.   <u>Building Loan Agreement</u>.   The Guarantor acknowledges and agrees that during the term of this Guaranty it shall be an event of default under the Mortgage if the Guarantor fails to comply with the financial covenants applicable to any Guarantor in the Building Loan Agreement, which is hereby incorporated by reference.

28.   <u>CPLR § 3213</u>.   This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of New York without regard to principles of conflicts of laws.   Guarantor acknowledges and agrees that this Guaranty is, and is intended to be, an instrument for the payment of money only, as such phrase is used in §3213 of the Civil Practice Law and Rules of the State of New York, and Guarantor has been fully advised by its counsel of Lender's rights and remedies pursuant to said §3213.

29.   <u>Financial Statements</u>.   The Guarantor hereby covenants and agrees to deliver to Lender the Financial Statements required to be delivered by Guarantor in the Building Loan Agreement.

**[THE BALANCE OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

NYC 301830.2

Very truly yours,

_____
**JOSEPH NORTON**, individually,
a New York resident

Having an address at:
771 Thomas S. Boyland Street
Brooklyn, New York 11212

# EXHIBIT 10

## REAFFIRMATION OF
## GUARANTY OF PAYMENT

Dated: As of December 8, 2010

Banco Popular North America
120 Broadway, 16th Floor
New York, New York 10271
Attention: Lawrence G. Hammond, Vice President

Re: Guaranty of Payment (**"Guaranty"**) by **JOSEPH NORTON** (the **"Guarantor"**) in favor of Banco Popular North America (the **"Bank"**) dated as of August 20, 2008.

Dear Sir:

The Guarantor hereby reaffirms and ratifies all the terms, conditions, representations and covenants contained in the Guaranty, certifies that the Guaranty is in full force and effect, certifies that there are no defenses, off-sets or counterclaims thereto as of the date hereof and represents, warrants and covenants that its most recent financial statement heretofore delivered to Bank is true and correct in all respects, fairly presents the financial condition of the Guarantor as of the date thereof and no material adverse change has occurred in the financial condition reflected therein since the date thereof.

The Guarantor acknowledges that the maturity date of the Building Loan Note and the Project Loan Note, each dated August 20, 2008, from Riverrock Nehemiah Realty LLC ("**Borrower**") in favor of Bank, has been further extended until March 31, 2011 pursuant to that certain that certain Building Loan Note Extension and Modification Agreement, and that certain Project Loan Note Extension and Modification Agreement each dated as of the date hereof between Borrower and the Bank.

Very truly yours,

**JOSEPH NORTON**, individually,
a New York resident

Having an address at:
771 Thomas S. Boyland Street
Brooklyn, New York 11212

NYC 366221.1

# EXHIBIT
# 11

JOHN A. NOCERA*
RANDY G. ROSNER*
PETER A. RAGONE*

GERALD M. JACOBS*
ELIOT L. GREENBERG*
JOHN P. FOUDY
ANTHONY L. COTRONEO *
ELAINE LAU

* ADMITTED IN N.Y. AND N.J.
* ADMITTED IN N.Y., N.J. AND CT

**ROSNER NOCERA & RAGONE, LL.**

ATTORNEYS AT LAW
110 WALL STREET
23RD FLOOR
NEW YORK, N.Y. 10005-3801

PHONE:  212-635-2244
FACSIMILE:  212-635-0533

NEW JERSEY OFFICE
4105 U.S. HIGHWAY 1
SUITE 16
MONMOUTH JUNCTION, N.J. 08852-2157
PHONE:  609-520-9060
FACSIMILE:  609-520-9407
EMAIL: INFO@RNRLAWGROUP.COM

December 1, 2011

**Certified Mail Return Receipt Requested**
**and First Class Mail**
Riverrock Nehemiah Realty LLC
771 Thomas S. Boyland Street
Brooklyn, New York 11212

       Re:    **Note and Mortgage dated August 20, 2008**
            Borrower:   Riverrock Nehemiah Realty LLC
            Guarantor:  Joseph Norton
            Original Principal Amount: $1,912,341.00

### NOTICE OF DEFAULT AND ACCELERATION
### AND DEMAND FOR PAYMENT

Dear Sir/Madam:

     This firm is counsel for Banco Popular North America ("Banco Popular") with respect to the obligations of Riverrock Nehemiah Realty LLC (hereinafter the "Borrower").

     Specifically, a Building Loan Note (the "Note") dated August 20, 2008 in the total amount of $1,912,341.00, was made and executed by the Borrower by and through its Member, Guytech Management Services, Inc. ("Guytech") and Guytech's President, Joseph Norton, and delivered to Banco Popular to evidence a loan and/or extension of credit by Banco Popular to the Borrower.

     In order to partially secure the obligations of the Borrower to Banco Popular, including those under the Note, Borrower, by and through its Member, Guytech and Guytech's President, Joseph Norton, further executed and delivered to Banco Popular a

1

Building Loan Mortgage, Assignment of Leases And Rents And Security Agreement (the "Mortgage") dated August 20, 2008, along with other agreements and documents in connection with the above Note (collectively the "Loan Documents").

Payment and performance of the Borrower's obligations under the Note and Mortgage have been personally and unconditionally guaranteed by Joseph Norton pursuant to his Guaranty Of Payment dated August 20, 2008 (hereinafter collectively the "Guarantor" and "Guaranty").

The Note provides, in pertinent part, as follows:

\* \* \*

This Note is secured by, inter alia, and the parties hereto are entitled to the benefits of that certain building loan mortgage, assignment of leases and rents and security agreement of even date herewith (which, as now exists, and as the same may hereafter, from time to time, be amended, modified, extended, consolidated, increased, supplemented, spread or restated is hereinafter referred to as the "Mortgage"), made by the Borrower to the Lender, encumbering, among other things, certain real property and improvements now or hereafter located on said real property and such other property and interests as more particularly described in the Mortgage (the "Mortgaged Property"), which Mortgage specifies various Events of Default upon the occurrence of any of such Events of Default, all sums due and owing on this Note may, at Lender's option, be declared immediately due and payable...

\* \* \*

The Mortgage provides, among other things, as follows:

## ARTICLE II
### EVENTS OF DEFAULT AND REMEDIES

Section 2.01.  If one or more of the following Events of Default shall happen, that is to say:

(1) if (i) default shall be made in the payment of any interest due under the Note, or in the payment of any installment of principal due under the Note, in either such case, when and as the same shall become due and payable, and such default shall have continued for a period of ten (10) days, or (ii) default shall be made in any other payment of the principal of the Note or under this Mortgage, when

2

and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise, in each case, as in the Note and this Mortgage provided. . .

\* \* \*

then and in every such case:

After the occurrence of any such Event of Default the Mortgagee, by written notice given to the Mortgagor, may declare the entire principal of the Note then outstanding (if not then due and payable), and all accrued and unpaid interest thereon together with all other Indebtedness, to be due and payable immediately, and upon any such declaration the principal of the Note, said accrued and unpaid interest thereon and all other Indebtedness shall become and be immediately due and payable, anything in the Note, in this Mortgage, or in the Building Loan Agreement or in any other Loan Documents to the contrary notwithstanding;

After the occurrence of any such Event of Default, the Mortgagee personally, or by its agents or attorneys, may enter into and upon all or any part of the Premises, and each and every part thereof, and may exclude Mortgagor, its agents and servants wholly therefrom . . .

The Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may:

sell the Mortgaged Property to the extent permitted in this Mortgage and pursuant to the procedures provided by law . . . ; or

institute proceedings for the complete or partial foreclosure of this Mortgage; or

take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in the Building Loan Agreement, this Mortgage or in any of the other Loan Documents, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as the Mortgagee shall elect . . .

\* \* \*

PLEASE TAKE NOTICE that the Borrower is in default under the Note and Mortgage by virtue of the Borrower's failure to, among other things, make the required payments due.

Banco Popular hereby declares that all sums due under the Note and Mortgage

3

are accelerated and payment in full is hereby demanded under the Note.

As of November 30, 2011, the total amount due to Banco Popular under the Note and Mortgage was $1,967,641.08 consisting of unpaid principal, interest and late charges plus interest thereafter which continues to accrue at the default rate set forth in the Note.

As a result, we have been retained by Banco Popular to commence proceedings against you to recover the amounts due under the Note as set forth above, plus interest that continues to accrue at the default rate of interest set forth in the Note, along with Banco Popular's collection costs and expenses, including, without limitation, Banco Popular's reasonable attorneys' fees. Unless immediate arrangements are made for payment upon your receipt of this demand letter, these proceedings may include, among other remedies, without limitation and at Banco Popular's option: (1) foreclosure of the Mortgage; (2) the appointment of a receiver; (3) the institution of suit to recover the amounts due under the Note; and (4) and/or other appropriate actions to protect Banco Popular.

**PLEASE TAKE FURTHER NOTICE** that, unless all sums due and owing under the Note, Mortgage and Guaranty are paid in full within ten (10) days of the date of this letter, we will proceed, at Banco Popular's option and sole discretion, to take all steps necessary to collect the sums due and owing under the Note, Mortgage and Guaranty and/or otherwise take appropriate actions to protect Banco Popular's interests.

This letter is not intended, nor should it be construed, as a waiver of any of Banco Popular's rights, remedies, or causes of action under the Note, Mortgage, Guaranty or other Loan Documents, or as otherwise available under applicable law whether or not stated herein. All of Banco Popular's rights and remedies are, and shall remain, expressly reserved.

Very truly yours,

ROSNER NOCERA & RAGONE, LLP

By:

Gerald M. Jacobs

GMJ/cs

cc:   Joseph Norton (**Certified Mail Return Receipt Requested & First Class Mail**)

cs:riverrock.ltr
12/11

4

U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7007 0220 0000 7314 8801

Sent To *Riverrock Nehemiah Realty LLC*
Street, Apt. No.; or PO Box No. *771 Thomas S. Boyland Street*
City, State, ZIP+4 *Brooklyn, NY 11212*

PS Form 3800, August 2006         See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Riverrock Nehemiah
Realty LLC
771 Thomas S. Boyland
Brooklyn, NY 11212*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7007 0220 0000 7314 8801

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-1540

ROSNER NOCERA & RAGONE, LL.

JOHN A. NOCERA*
RANDY G. ROSNER*
PETER A. RAGONE*
_____
GERALD M. JACOBS*
ELIOT L. GREENBERG*
JOHN P. FOUDY
ANTHONY L. COTRONEO •
ELAINE LAU

* ADMITTED IN N.Y. AND N.J.
• ADMITTED IN N.Y., N.J. AND CT

ATTORNEYS AT LAW
110 WALL STREET
23RD FLOOR
NEW YORK, N.Y. 10005-3801

PHONE: 212-635-2244
FACSIMILE: 212-635-0533

NEW JERSEY OFFICE
4105 U.S. HIGHWAY 1
SUITE 16
MONMOUTH JUNCTION, N.J. 08852-2157
PHONE: 609-520-9060
FACSIMILE: 609-520-9407
EMAIL: INFO@RNRLAWGROUP.COM

December 1, 2011

**Certified Mail Return Receipt Requested**
**and First Class Mail**
Riverrock Nehemiah Realty LLC
771 Thomas S. Boyland Street
Brooklyn, New York 11212

Re:   Note and Mortgage dated August 20, 2008
      Borrower:   Riverrock Nehemiah Realty LLC
      Guarantor:  Joseph Norton
      Original Principal Amount: $349,669.00

NOTICE OF DEFAULT AND ACCELERATION
AND DEMAND FOR PAYMENT

Dear Sir/Madam:

This firm is counsel for Banco Popular North America ("Banco Popular") with respect to the obligations of Riverrock Nehemiah Realty LLC (hereinafter the "Borrower").

Specifically, a Project Loan Note (the "Note") dated August 20, 2008 in the total amount of $349,669.00, was made and executed by the Borrower by and through its Member, Guytech Management Services, Inc. ("Guytech') and Guytech's President, Joseph Norton, and delivered to Banco Popular to evidence a loan and/or extension of credit by Banco Popular to the Borrower.

In order to partially secure the obligations of the Borrower to Banco Popular, including those under the Note, Borrower, by and through its Member, Guytech and Guytech's President, Joseph Norton, further executed and delivered to Banco Popular a Project Loan Mortgage, Assignment of Leases And Rents And Security Agreement (the "Mortgage") dated August 20, 2008, along with other agreements and documents in connection with the above Note (collectively the "Loan Documents").

1

Payment and performance of the Borrower's obligations under the Note and Mortgage have been personally and unconditionally guaranteed by Joseph Norton pursuant to his Guaranty Of Payment dated August 20, 2008 (hereinafter collectively the "Guarantor" and "Guaranty").

The Note provides, in pertinent part, as follows:

\* \* \*

This Note is secured by, <u>inter alia</u>, and the parties hereto are entitled to the benefits of that certain project loan mortgage, assignment of leases and rents and security agreement of even date herewith (which, as now exists, and as the same may hereafter, from time to time, be amended, modified, extended, consolidated, increased, supplemented, spread or restated is hereinafter referred to as the "Mortgage"), made by the Borrower to the Lender, encumbering, among other things, certain real property and improvements now or hereafter located on said real property and such other property and interests as more particularly described in the Mortgage (the "Mortgaged Property"), which Mortgage specifies various Events of Default upon the occurrence of any of such Events of Default, all sums due and owing on this Note may, at Lender's option, be declared immediately due and payable...

\* \* \*

The Mortgage provides, among other things, as follows:

ARTICLE II
EVENTS OF DEFAULT AND REMEDIES

Section 2.01. If one or more of the following Events of Default shall happen, that is to say:

(1) if (i) default shall be made in the payment of any interest due under the Note, or in the payment of any installment of principal due under the Note, in either such case, when and as the same shall become due and payable, and such default shall have continued for a period of ten (10) days, or (ii) default shall be made in any other payment of the principal of the Note or under this Mortgage, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise, in each case, as in the Note and this Mortgage provided. . .

2

* * *

then and in every such case:

After the occurrence of any such Event of Default the Mortgagee, by written notice given to the Mortgagor, may declare the entire principal of the Note then outstanding (if not then due and payable), and all accrued and unpaid interest thereon together with all other Indebtedness, to be due and payable immediately, and upon any such declaration the principal of the Note, said accrued and unpaid interest thereon and all other Indebtedness shall become and be immediately due and payable, anything in the Note, in this Mortgage, in the Building Loan Agreement, in the Project Loan Agreement or in any other Loan Documents to the contrary notwithstanding;

After the occurrence of any such Event of Default, the Mortgagee personally, or by its agents or attorneys, may enter into and upon all or any part of the Premises, and each and every part thereof, and may exclude Mortgagor, its agents and servants wholly therefrom . . .

The Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may:

sell the Mortgaged Property to the extent permitted in this Mortgage and pursuant to the procedures provided by law . . . ; or

institute proceedings for the complete or partial foreclosure of this Mortgage; or

take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in the Building Loan Agreement, the Project Loan Agreement, this Mortgage or in any of the other Loan Documents, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as the Mortgagee shall elect . . .

* * *

**PLEASE TAKE NOTICE** that the Borrower is in default under the Note and Mortgage by virtue of the Borrower's failure to, among other things, make the required payments due.

Banco Popular hereby declares that all sums due under the Note and Mortgage are accelerated and payment in full is hereby demanded under the Note.

As of November 30, 2011, the total amount due to Banco Popular under the Note

3

and Mortgage was $107,144.75 consisting of unpaid principal, interest and late charges plus interest thereafter which continues to accrue at the default rate set forth in the Note.

As a result, we have been retained by Banco Popular to commence proceedings against you to recover the amounts due under the Note as set forth above, plus interest that continues to accrue at the default rate of interest set forth in the Note, along with Banco Popular's collection costs and expenses, including, without limitation, Banco Popular's reasonable attorneys' fees. Unless immediate arrangements are made for payment upon your receipt of this demand letter, these proceedings may include, among other remedies, without limitation and at Banco Popular's option: (1) foreclosure of the Mortgage; (2) the appointment of a receiver; (3) the institution of suit to recover the amounts due under the Note; and (4) and/or other appropriate actions to protect Banco Popular.

**PLEASE TAKE FURTHER NOTICE** that, unless all sums due and owing under the Note, Mortgage and Guaranty are paid in full within ten (10) days of the date of this letter, we will proceed, at Banco Popular's option and sole discretion, to take all steps necessary to collect the sums due and owing under the Note, Mortgage and Guaranty and/or otherwise take appropriate actions to protect Banco Popular's interests.

This letter is not intended, nor should it be construed, as a waiver of any of Banco Popular's rights, remedies, or causes of action under the Note, Mortgage, Guaranty or other Loan Documents, or as otherwise available under applicable law whether or not stated herein. All of Banco Popular's rights and remedies are, and shall remain, expressly reserved.

Very truly yours,

ROSNER NOCERA & RAGONE, LLP

By: _____
Gerald M. Jacobs

GMJ/cs

cc:   Joseph Norton (<u>**Certified Mail Return Receipt Requested & First Class Mail**</u>)

cs:riverrook.ltr(1)
12/11

4

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
Riverrock Nehemiah Realty LLC
Street, Apt. No.; or PO Box No. 771 Thomas S. Boyland Street
City, State, ZIP+4 Brooklyn NY 11212

PS Form 3800, August 2006          See Reverse for Instructions

7007 0220 0000 7314 8832

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Riverrocke Nehemiah
Realty LLC
771 Thomas S.Boyland
Street
Brooklyn, NY 11212

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )         C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
   (Transfer from service label)    7007 0220 0000 7314 8832

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# EXHIBIT
# 12

### ALLONGE TO PROJECT LOAN NOTE

This Allonge is made to that certain Project Loan Note, dated August 20, 2008, from Riverrock Nehemiah Realty, LLC, a New York limited liability company ("Borrower"), in the original principal amount of $349,669.00 (the "Note"), to BANCO POPULAR NORTH AMERICA, a New York state chartered commercial bank.

FOR VALUE RECEIVED, WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES EXCEPT AS SET FORTH IN THE LOAN PURCHASE AND SALE AGREEMENT DATED SEPTEMBER 3, 2014, THE UNDERSIGNED, HEREBY ASSIGNS ALL ITS RIGHT, TITLE AND INTEREST IN AND TO THE NOTE TO: ECP PROPERTY II LLC, A DELAWARE LIMITED LIABILITY COMPANY.

Dated the 22nd day of September, 2014.

**BANCO POPULAR NORTH AMERICA,**
a New York state chartered commercial bank

By: _____
Name: Gary Walker
Title: Vice President

## ALLONGE TO BUILDING LOAN NOTE

This Allonge is made to that certain Building Loan Note, dated August 20, 2008, from Riverrock Nehemiah Realty, LLC, a New York limited liability company ("Borrower"), in the original principal amount of $1,912,341.00 (the "Note"), to BANCO POPULAR NORTH AMERICA, a New York state chartered commercial bank.

FOR VALUE RECEIVED, WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES EXCEPT AS SET FORTH IN THE LOAN PURCHASE AND SALE AGREEMENT DATED SEPTEMBER 3, 2014, THE UNDERSIGNED, HEREBY ASSIGNS ALL ITS RIGHT, TITLE AND INTEREST IN AND TO THE NOTE TO: ECP PROPERTY II LLC, A DELAWARE LIMITED LIABILITY COMPANY.

Dated the 22nd day of September, 2014.

**BANCO POPULAR NORTH AMERICA,**
a New York state chartered commercial bank

By:_____
Name: Gary Walker
Title: Vice President

#32752993_v1

# EXHIBIT
# 13



November 18, 2014

LEITESS FRIEDBERG PC
10451 MILL RUN CIRCLE, SUITE 1000
BALTIMORE, MD 21117

**RE: Submitted Transaction Successfully Recorded**

Dear LEITESS FRIEDBERG PC:

Document Identification Number 2014100300379001 which was submitted for Recording on 11/10/2014, was successfully recorded on 11/18/2014 at 8:40 AM.

Below summarizes the status of these documents.

Documents and Recording & Endorsement Cover Pages Enclosed Herewith

   2014100300379001

If you have any questions or require further information, please send an email to acrishelp@finance.nyc.gov and someone will get back to you.

Thank you very much.

Sincerely,

City Register



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2014100300379001001E1887

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:** 2014100300379001   **Document Date:** 09-22-2014   **Preparation Date:** 10-03-2014
**Document Type:** ASGN OF ASGN OF L&R
**Document Page Count:** 4

| PRESENTER: | RETURN TO: |
|---|---|
| LEITESS FRIEDBERG PC<br>10451 MILL RUN CIRCLE, SUITE 1000<br>BALTIMORE, MD 21117<br>443-471-2620<br>DAPO.LAWAL@LF-PC.COM | LEITESS FRIEDBERG PC<br>10451 MILL RUN CIRCLE, SUITE 1000<br>BALTIMORE, MD 21117<br>443-471-2620<br>DAPO.LAWAL@LF-PC.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 3602 | 1002 | Entire Lot COMM | 774 ROCKAWAY AVENUE |

**Property Type:** COMMERCIAL CONDO UNIT(S)

**CROSS REFERENCE DATA**

**CRFN:** 2008000413122

**PARTIES**

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| BANCO POPULAR NORTH AMERICA<br>7900 MIAMI LAKES DRIVE WEST<br>MIAMI LAKES, FL 33016 | ECP PROPERTY II LLC<br>4695 MACARTHUR COURT, SUITE 370<br>NEWPORT BEACH, CA 92660 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      11-18-2014 08:40 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 57.00 | **2014000381710** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2014100300379001001E1887

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:** 2014100300379001  **Document Date:** 09-22-2014  **Preparation Date:** 10-03-2014
**Document Type:** ASGN OF ASGN OF L&R
**Document Page Count:** 4

| PRESENTER: | RETURN TO: |
|---|---|
| LEITESS FRIEDBERG PC | LEITESS FRIEDBERG PC |
| 10451 MILL RUN CIRCLE, SUITE 1000 | 10451 MILL RUN CIRCLE, SUITE 1000 |
| BALTIMORE, MD 21117 | BALTIMORE, MD 21117 |
| 443-471-2620 | 443-471-2620 |
| DAPO.LAWAL@LF-PC.COM | DAPO.LAWAL@LF-PC.COM |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 3602 | 1002 | Entire Lot | COMM | 774 ROCKAWAY AVENUE |

**Property Type:** COMMERCIAL CONDO UNIT(S)

**CROSS REFERENCE DATA**

**CRFN:** 2008000413122

**PARTIES**

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| BANCO POPULAR NORTH AMERICA | ECP PROPERTY II LLC |
| 7900 MIAMI LAKES DRIVE WEST | 4695 MACARTHUR COURT, SUITE 370 |
| MIAMI LAKES, FL 33016 | NEWPORT BEACH, CA 92660 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**This Instrument Prepared By:**

Vivian de las Cuevas-Diaz, Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

**When Recorded Return To:**

Leitess Friedberg PC
10451 Mill Run Circle, Suite 1000
Baltimore, MD 21117
Attn: Jeremy Friedberg, Esq.

| | |
|---|---|
| Borough: | Brooklyn |
| Block: | 3602 |
| Lot: | 1002 |
| County: | Kings |
| Address: | 774 Rockaway Avenue, Brooklyn, New York |

## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS (the "Assignment") is entered into this September 22, 2014, by and between **BANCO POPULAR NORTH AMERICA**, a New York state chartered commercial bank, having an address at 7900 Miami Lakes Drive West, Miami Lakes, Florida 33016 ("Assignor"), and **ECP PROPERTY II LLC**, a Delaware limited liability company, having an address 4695 MacArthur Court, Suite 370, Newport Beach, California 92660 ("Assignee").

Capitalized terms used herein but not otherwise defined shall have the meanings assigned thereto in the Loan Purchase and Sale Agreement executed by Assignor, as seller, and Assignee, as purchaser, dated as of September 3, 2014 (the "Loan Sale Agreement").

In consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby bargains, sells, conveys, assigns, and transfers unto Assignee without recourse, representation or warranty, all of its right, title and interest in and to that certain Assignment of Leases and Rents executed by Riverrock Nehemiah Realty LLC, a New York limited liability company in favor of Assignor, dated August 20, 2008, and recorded on October 21, 2008, in the Office of the City Register of City of New York under CFRN 2008000413122 (the "Assignment of Rents").

The Assignment of Rents encumbers those certain parcels of real property and all improvements thereon situated at 774 Rockaway Avenue, Brooklyn, New York, which property is more particularly described in the Loan Sale Agreement.

By separate and contemporaneous assignment, Assignor has assigned and conveyed to Assignee all of Assignor's right, title and interest in and to all indebtedness secured by the above Assignment of Rents, including all notes and any other instruments evidencing such indebtedness.

Assignor and Assignee Addresses:

Assignor:      Banco Popular North America
                7900 Miami Lakes Drive West
                Miami Lakes, Florida 33016
                Attn: Gary Walker
                Telephone: (786) 953-1104
                Fascimile: (305) 894-3244

Assignee:      ECP Property II LLC
                4695 MacArthur Court, Suite 370
                Newport Beach, California 92660
                Attn: Ravi Bhagavatula
                Telephone: (949) 566-8100
                Facsimile: (720) 836-6500

[SIGNATURE AND NOTARY PAGES FOLLOW]

#32753667_v1

In witness whereof, the parties have duly executed this Assignment as of the date set forth above.

ASSIGNOR:

**BANCO POPULAR NORTH AMERICA**, a New York state chartered commercial bank

By: _____

Name: Gary Walker

Title: Vice President

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this _18_ day of September, 2014, by Gary Walker as Vice President of Banco Popular North America, a New York state chartered commercial bank, on behalf of the bank.  He is personally known to me or has produced _____ as identification.

_____

Signature of Notary Public

Date Commission Expires:

E. Garcia-Moya

_____

Printed Name of Notary

> E. GARCIA-MOYA
> Notary Public - State of Florida
> My Comm. Expires Nov 6, 2015
> Commission # EE 143977
> Bonded Through National Notary Assn.

SEAL

**ASSIGNEE:**

**ECP PROPERTY II LLC**, a Delaware limited
liability company

By: _____

Name: Ravi Bhagavatula
Title: Authorized Signatory

STATE OF CALIFORNIA

COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this 22 day of September, 2014, by Ravi Bhagavatula, as authorized signatory of ECP PROPERTY II LLC, a Delaware limited liability company, on behalf of the limited liability company. He is personally known to me or has produced *CALIFORNIA DRIVERS LICENSE* as identification.

_____
Signature of Notary Public

Date Commission Expires: 8/31/2016

ROBERT KESTER
_____
Printed Name of Notary

ROBERT KESTER
Commission # 1989911
Notary Public - California
Orange County
My Comm. Expires Aug 31, 2016

SEAL

4

# EXHIBIT
# 14

**439197**        **2014 Oct 23 PM06:07**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌈LEITESS FRIEDBERG PC
│10451 Mill Run Circle, Ste. 1000
│Baltimore, MD 21117, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 200810100693956 Filedate: 10-OCT-08 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME **BANCO POPULAR NORTH AMERICA** | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME **ECP PROPERTY II LLC** | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS 383 **INVERNESS PARKWAY, SUITE 390** | CITY ENGLEWOOD | STATE CO | POSTAL CODE 80112 | COUNTRY USA |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME **BANCO POPULAR NORTH AMERICA** | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA **10713-128**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Filing Number-201410238421581**

**439196**        **2014 Oct 23 PM05:54**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌
│ LEITESS FRIEDBERG PC
│ 10451 Mill Run Circle, Ste. 1000
│ Baltimore, MD 21117, USA
└

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 200810100693968 Filedate: 10-OCT-08 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.     ☐ DELETE name: Give record name to be deleted in item 6a or 6b.     ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME  **BANCO POPULAR NORTH AMERICA** | | | |
|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME  **ECP PROPERTY II LLC** | | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS 383 **INVERNESS PARKWAY, SUITE 390** | CITY ENGLEWOOD | STATE CO | POSTAL CODE 80112 | COUNTRY USA |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any           ☐ NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  **BANCO POPULAR NORTH AMERICA** | | | |
|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA **10713-128**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Filing Number-201410238421579**



October 24, 2014

LEITESS FRIEDBERG PC
10451 MILL RUN CIRCLE, SUITE 1000
BALTIMORE, MD 21117

**RE: Submitted Transaction Successfully Recorded**

Dear LEITESS FRIEDBERG PC:

Document Identification Number 2014102400685001 which was electronically submitted and intaken for Recording on 10/24/2014 2:55:14 PM, was successfully recorded on 10/24/2014 at 3:29 PM.

Below summarizes the status of the document(s).

Recording & Endorsement Cover Page(s) attached

 2014102400685001

If you have questions or require further information, please send an email to acrishelp@finance.nyc.gov and someone will get back to you.

Thank you.

City Register

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014102400685001002ED8DE

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: **2014102400685001** | Document Date: 10-24-2014 | Preparation Date: 10-24-2014 |
|---|---|---|
| Document Type:  UCC3 ASSIGNMENT | | FIXTURE FILING |
| Document Page Count: 1 | | |

**PRESENTER:**
LEITESS FRIEDBERG PC
10451 MILL RUN CIRCLE, SUITE 1000
BALTIMORE, MD 21117
443-471-2620
DAPO.LAWAL@LF-PC.COM

**RETURN TO:**
LEITESS FRIEDBERG PC
10451 MILL RUN CIRCLE, SUITE 1000
BALTIMORE, MD 21117
443-471-2620
DAPO.LAWAL@LF-PC.COM

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 3602 | 1002 | Partial Lot 2 | | 774 ROCKAWAY AVENUE |
| **Property Type:** | OTHER | | | | |

**CROSS REFERENCE DATA**

CRFN:   2008000412595

**PARTIES**

**DEBTOR:**
RIVERROCK NEHEMIAH REALTY LLC
771 THOMAS S. BOYLAND STREET
BROOKLYN, NY 11212

**SECURED PARTY:**
ECP PROPERTY II LLC
383 INVERNESS PARKWAY, SUITE 390
ENGLEWOOD, CO 80112

☒   Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 20.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed         10-24-2014 15:29
City Register File No.(CRFN):
**2014000355169**

*Annette M Hill*

**City Register Official Signature**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO:   (Name and Address) |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS <br> Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
| --- | --- |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:   **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:   Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:   Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:   Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

# EXHIBIT
# 15



LEITESS FRIEDBERG PC
ATTORNEYS

Gordon S. Young (MD, DC, VA, PA & NY)
Tel 410.581.7407
gordon.young@lf-pc.com

December 1, 2014

*VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,
AND FIRST-CLASS MAIL, POSTAGE PREPAID*

Joseph Norton
771 Thomas S. Boyland Street
Brooklyn, NY 11212

Joseph Norton
771 Thomas S. Boyland Street, Apt. 2F
Brooklyn, NY 11212

Re:   *ECP Property II LLC ("ECP")*
      *Loan Numbers: 991692-01-01 and 991692-01-02*
      *Demand upon Joseph Norton ("Guarantor") – Demand for immediate payment*

Dear Mr. Norton:

This firm represents ECP with respect to the obligations and indebtedness owed by Riverrock Nehemiah Realty LLC ("Debtor") under the terms of an August 8, 2010 Building Loan Note in favor of Banco Popular North America ("Banco") in the original principal amount of $1,912,341.00 (as extended and modified by a December 8, 2010 Building Loan Note Extension and Modification Agreement, the "Building Loan Note"), an August 20, 2008 Project Loan Note in favor of Banco in the original principal amount of $349,669.00 (as extended and modified by a December 8, 2010 Project Loan Note Extension and Modification Agreement, the "Project Loan Note"), an August 20, 2008 Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement (the "Building Loan Mortgage") executed by Debtor in favor of Banco, and an August 20, 2008 Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement (the "Project Loan Mortgage") executed by Debtor in favor of Banco. This firm also represents ECP with respect to the obligations and indebtedness owed by Guarantor under an August 20, 2008 Guaranty of Payment in favor of Banco (as reaffirmed and ratified by Guarantor by a December 8, 2010 Reaffirmation of Guaranty of Payment, the "Payment Guaranty") and an August 20, 2008 Completion Costs Guaranty (together with the Payment Guaranty, the "Guaranty"). Collectively, the Building Loan Note, the Project Loan Note, the Building Loan Mortgage, the Project Loan Mortgage, the Guaranty, and all other documents evidencing the indebtedness of Debtor and Guarantor to Banco are referred to as the "Loan Documents." By assignment, ECP holds all rights in the documents evidencing the indebtedness owed by Debtor and Guarantor under the Loan Documents, including but not limited to the right to sue for enforcement thereof.

Banco previously notified you of Debtor's default under the Loan Documents and accelerated the indebtedness thereunder. The purpose of this letter is to demand immediate payment from you pursuant to the Guaranty. ECP has authorized this firm to commence



Joseph Norton
December 1, 2014
Page 2

appropriate legal proceedings to collect all monies due under the Loan Documents.

As of November 26, 2014, the full amount owed by Debtor to ECP under the Loan Documents is $2,352,168.24, plus legal fees, interest and expenses as are provided under the Loan Documents (the "Indebtedness"). The Indebtedness is subject to increase until payment is received. Demand is hereby made upon you for full payment of the Indebtedness.

The Indebtedness must be paid with immediately available funds, such as a certified or cashier's check, delivered to this firm's Baltimore office by no later than 4:00 p.m. on Thursday, December 11, 2014. If we do not receive payment by that date, ECP may take appropriate legal action to enforce its rights. This will result in additional costs for which you will be responsible. ECP reserves all rights, claims, and causes of action against you under all agreements and governing law, including but not limited to ECP's right to seek a judgment against you.

This letter was sent to you by first-class mail and certified mail in order to ensure your receipt of the same.

Sincerely,

**LEITESS FRIEDBERG PC**

By: _Gordon S Young_

Gordon S. Young

GSY/gsy

cc:  ECP Property II LLC
Matthew Hall, Esquire, Goldstein Hall PLLC (*via* certified mail, return receipt requested, and first-class mail, postage prepaid)

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern          District of  New York

| | ) |
|---|---|
| ECP Property II LLC | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| | ) |
| Joseph Norton, et al. | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No. 14-7298

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Thema Norton
771 Thomas S. Boyland Street
Brooklyn, N Y 11212

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Gordon S. Young, Esquire
Leitess Friedberg PC
10451 Mill Run Circle, Suite 1000
Baltimore, MD 21117

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date:  _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.14-7298

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    &#8735; I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    &#8735; I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    &#8735; I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    &#8735; I returned the summons unexecuted because _____ ; or

    &#8735; Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: