UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:                  .     Case No. 1-17-42199-ESS
                       .
THEMA T. NORTON       .
                       .
         Debtor,       .
. . . . . . . . . . . . . ..
THEMA T. NORTON,      .     Adv. No. 1-20-01113-ESS
                       .
         Plaintiff,     .
                       .
         v.             .     271-C Cadman Plaza East
                       .     Brooklyn, NY 11201-1800
NATHAN CANN and ECP    .
PROPERTY II, LLC,     .
                       .
         Defendants.    .     April 29, 2022
. . . . . . . . . . . . . ..     2:00 p.m.


TRANSCRIPT OF [1,4] ADJOURNED PRE-TRIAL CONFERENCE RE:
COMPLAINT; [20] ADJOURNED MOTION TO DISMISS ADVERSARY
PROCEEDING FILED BY GORDON S. YOUNG ON BEHALF OF NATHAN CANN,
ECP PROPERTY II LLC, JEREMY FRIEDBERG, GORDON YOUNG; [107,
108, 134] ADJOURNED HEARING TO DETERMINE WHETHER TO APPROVE THE
SALE OF THE ASSET TO THE SUCCESSFUL BIDDER, (RE: RELATED
DOCUMENTS(S) 107, 108); [71] ADJOURNED MOTION FOR CONTEMPT
AGAINST THEMA T. NORTON AND THAT THE CONTEMPT PARTY BE FINED
AND/OR TAKEN INTO CUSTODY BY THE UNITED STATES MARSHAL UNTIL
SHE COMPLIES WITH THE 2004 ORDER AND/OR THE CONTEMPT ORDER
FILED BY ALEX E. TSIONIS ON BEHALF OF DAVID J. DOYAGA

BEFORE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY COURT JUDGE



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES:

For the Debtor/         Dahiya Law Offices LLC
Plaintiff:              By:  KARAMVIR DAHIYA, ESQ.
                        75 Maiden Lane, Suite 606
                        New York, NY  10038

For Nathan Cann and     Friedberg, PC
ECP PROPERTY II, LLC:   By: JEREMY S. FRIEDBERG, ESQ
                        10451 Mill Run Circle, Suite 1000
                        Baltimore, MD  21117

1          COURTROOM DEPUTY:  Following the matters for the

2   afternoon calendar are Norton versus Cann, et al., Numbers 53

3   and 54 on the calendar, Adversary Proceeding Number 20-1113.

4   Connected is Mr. Dahiya, Ms. Norton, Mr. Norton and Mr.

5   Friedberg.  If I could just please remind the parties just to

6   state your name each time before speaking.  Thank you.

7          THE COURT:  Thank you.

8          Good afternoon again, everyone.  This is Judge Stong.

9   Let's get your appearances on the record, please.

10          For the debtor Ms. Norton, Mr. Dahiya.

11          MR. DAHIYA:  Good afternoon, Your Honor.  Karamvir

12   Dahiya appearing for Ms. Thema Norton.  Good afternoon.

13          THE COURT:  Thank you.

14          And, Ms. Norton, I see you.  Good to have you here.

15          Mr. Norton, I understand you're listening in.  Good

16   to have you as well.

17          Mr. Friedberg appearing for the defendant and movant,

18   ECP Property.

19          MR. FRIEDBERG:  Good afternoon, Your Honor.  Jeremy

20   Friedberg on behalf of ECP Property II, LLC and Nathan Cann.

21          THE COURT:  All right, thank you both.

22          We've scheduled this hearing today on a few matters

23   in Ms. Norton's bankruptcy case, the motion to dismiss and case

24   management conference, pretrial conference in the adversary

25   proceeding and separately in the bankruptcy case the motion for

1   contempt and the carried hearing -- carried hearing and the

2   carried hearing on the motion to determine whether to approve

3   the sale. I do think that last item, Number 55 on today's

4   calendar, has been decided by the Court. There's an order

5   that's been entered.

6          And so I believe, Ms. Jackson, can you confirm? It

7   would be appropriate to mark that off and for that to be so

8   ordered? And that's now done.

9          Oh, I'm sorry. That's on at three o'clock. I so

10   apologize. You know, sometimes when you try to be efficient,

11   you actually mess it all up so let's go back in the adversary

12   proceeding. The pretrial conference I think we can touch on

13   briefly. Of course, the main event is I'm eager to hear your

14   argument on the motion to dismiss. We've conferenced on those

15   issues and addressed those issues. We even have argued those

16   issues before, but today would be the opportunity to bring that

17   process to closure and let the Court hear from you anything

18   you'd like to add to the record. Let's start, however, with

19   the pretrial conference.

20          And let's hear first from plaintiff's counsel. I'll

21   ask the same question I always ask in this context which is, is

22   there anything that's helpful for the Court to know or anything

23   that would be helpful for the Court to do in order to help the

24   parties in moving this matter forward?

25          MR. DAHIYA: No, Your Honor. I think this case has

been pending for a very long time and we had consultation talks but we failed to materialize anywhere in a productive manner so we want the Court to decide everything. We have briefed our paperwork. That's what we have for arguments. There's nothing much to add.

THE COURT: All right, good to know.

Anything to add, Mr. Friedberg, staying with the pretrial conference?

MR. FRIEDBERG: Nothing to add, Your Honor.

THE COURT: Thank you.

Then that brings us to the motion to dismiss that's been filed by the defendants. I note that the movants are Mr. Cann, ECP Property II, LLC, Mr. Friedberg, Mr. Young, the named defendants. Over to you. Let me hear from you.

MR. FRIEDBERG: Thank you, Your Honor. Jeremy Friedberg on behalf of ECP Property II, LLC and Nathan Cann, defendants in this case. I note -- I'm looking down at my outline for today, our first hearing on this motion to dismiss was scheduled for December 15th, 2020 so this has been pending for a very long time.

THE COURT: It sure has.

MR. FRIEDBERG: The case was filed in October of 2020 so that's about 20 months ago and that case was filed against ECP, Nathan Cann, my partner Gordon Young and myself seeking $15 million in alleged damages for alleged violation of a

discharge order entered in Ms. Norton's case I guess in 2017.
I point out to the Court that the complaint is not verified.
The complaint contains numerous allegations of immense damages
that are not supported by any documentary exhibits attached to
the complaint.

Since the filing of the original complaint, we've
requested proof of damages numerous times from Mr. Dahiya.  To
date we've received absolutely nothing, no hospital admission
reports, no statements of attending physicians, not even an
affidavit from Ms. Norton.  Mr. Dahiya subsequently amended his
complaint twice without attaching any proof of damages or
without any verification by Ms. Norton of the truth of the
matters asserted in the complaint.

The motion to dismiss has been fully briefed for over
a year now after the second amended complaint filed by Mr.
Dahiya and nine months after the filing of the original
complaint.  At this Court's urging Mr. Dahiya graciously
dismissed Mr. Young and myself from this case so the case
remains just ECP and Mr. Cann at this point.

Mr. Cann remains in this case and for nearly 20
months he's had to disclose that he's got a $15 million suit to
his business' owners, to his funding sources and to his
investors.  Additionally, this complaint is a matter of public
record and as you can imagine, Your Honor, this is highly
damaging to Mr. Cann's reputation and also as he's an investor

1  by obtaining money to invest, the cost of money has obviously

2  gone up here because of this complaint.

3          The parties at this Court's direction and I think it

4  was a good direction had three mediation sessions subsequent to

5  the filing of the complaint.  Tellingly, Ms. Norton's father

6  who has nothing to do with this case participated in all the

7  meditations.  He's on the call today.  This should not surprise

8  the Court as Mr. Norton is behind everything in this case and

9  he's using the case as an instrument to avoid ECP's monetary

10  judgment against Mr. Norton personally.

11          The parties were scheduled for a fourth mediation

12  session on January 22nd of this year prior to which Ms. Norton

13  was going to provide to Mr. Dahiya proof of damages for the

14  first time.  Your Honor, let me repeat that.  In January 2022

15  Mr. Dahiya had not seen any proof of damages.  We stood ready

16  to engage even without the proof of damages in a fourth

17  mediation session.  The mediation session was canceled by the

18  defendant.  For whatever reasons we received no proof of

19  damages.  That's by way of background sort of setting the plate

20  for where this case really stands, Your Honor.

21          We believe this case --

22          THE COURT:  Mr. Friedberg, just one small question

23  and I'm really going to try to restrain myself so I can hear

24  all the arguments in full.

25          MR. FRIEDBERG:  Sure.

1    THE COURT:  The mediation session in January was
2  canceled by the defendants.  Was a last session ever
3  rescheduled or not?

4    MR. FRIEDBERG:  No.

5    THE COURT:  Was that the end of that process?

6    MR. FRIEDBERG:  No.  Mr. Dahiya canceled the
7  mediation, no proof was provided to us and that was the end of
8  it.  We stood ready to continue even without the proof hoping
9  we can move this case forward because, of course, this really
10  was about settling with Mr. Norton.  It had nothing to do with
11  Ms. Norton.  And Mr. Norton participated.

12    By way of that flavor and background so the Court can
13  understand what's really going on in this case, this case was
14  brought by Mr. Dahiya during a break in a mediation session
15  when they were going to make a new offer to us to settle the
16  case and during the break in the mediation session they filed
17  this complaint that's at issue here today.

18    At that point we had a RICO action pending in the
19  federal court Eastern District and the RICO complaint in this
20  case subject is that we violated the discharge order entered in
21  2017 by naming Ms. Norton as a defendant in the RICO case which
22  subsequently caused, you know, a personal tragedy, a
23  miscarriage, for which we have apologized to Ms. Norton
24  personally.  And the RICO action alleges that the debtor, Ms.
25  Norton, in concert with the other defendants, her brother, her

father, her cousin, her uncle I think and various other

entities, withheld payment of rents to ECP for a property owned

by Ms. Norton nominally, really owned by Mr. Norton equitably

and as part of that conspiracy, to prevent ECP and other

creditors from collecting valid debts, they diverted rents.

We call that in the complaint at Paragraphs 28

through 36 of the complaint which is attached to our pleadings,

Your Honor, the rent check scheme. And basically, we allege

this rent check scheme took place to establish predicate acts

along with other fraudulent transfers by the debtor and others

that we pled that just to establish an ongoing RICO conspiracy.

ECP did not seek any damages in the RICO complaint with respect

to the rents check scheme, nor did we seek to recover from the

debtor a penny of that money. In fact, tellingly, ECP never

even mentioned the amount of rents that were diverted in the

RICO complaint. It's purely to establish an ongoing RICO

scheme for the purposes of meeting the statutory predicate

acts.

Additionally, and this is very important, Your Honor,

ECP repeatedly alleged that the RICO conspiracy was ongoing in

the RICO complaint. In Paragraphs 78 and 79 of the complaint

ECP states three times its belief that the conspiracy was

continuing or continuing to the present. By alleging the

existence of the RICO conspiracy, ECP simply intended to obtain

discovery on additional post-petition acts by Ms. Norton and

1  her family.

2       The fundamental issues pervading the original

3  complaint in this action all still prevent this action from

4  moving past the pleading stage a third time.  Ms. Norton's

5  response to ECP's motion to dismiss the amended complaint is

6  rife with inaccuracies.  They're too numerous to list at this

7  preliminary hearing and really, listing them is not going to be

8  a helpful exercise because I don't think it really matters all

9  the inaccuracies set forth in the complaint.

10      The crux of Ms. Norton's argument appears to be that

11 ECP alleged certain pre-petition acts relating to the rents

12 check scheme and other fraudulent transfers, that because of

13 that, she's entitled to extraordinary damages because of an

14 alleged violation of this Court's discharge order including

15 damages from ECP's employees and ECP's attorneys.

16      Ms. Norton's counsel ignores the fact that ECP was

17 not seeking any damages from Ms. Norton for her participation

18 in the rent check scheme.  There's no prayer for relief.  We

19 don't even mention the amount.  It's just simply pled as part

20 of a continuing conspiracy to establish predicate acts, that's

21 it.

22      THE COURT:  If you don't seek any relief from her,

23 then why is she named in that complaint --

24      MR. FRIEDBERG:  Because she is --

25      THE COURT:  -- as opposed to simply referred to in

1  the body of the complaint?

2         MR. FRIEDBERG:  Because -- I'll get to this in a

3  second, Your Honor, because it is important because it's part

4  of our unclean hands argument.  But as the Court knows, Ms.

5  Norton failed to disclose millions of dollars in assets to this

6  Court as part of her bankruptcy schedules and the Trustee is --

7         THE COURT:  But my question is a different question.

8  Why would you name someone against whom you do not seek any

9  relief?  It sounds like a mistake.

10        MR. FRIEDBERG:  No, Your Honor, because she's part of

11  an ongoing, we believe, an ongoing RICO conspiracy.  So --

12        THE COURT:  Do you seek prospective injunctive relief

13  against her?

14        MR. FRIEDBERG:  No.  We would seek -- once we got

15  into the meat of that litigation, we would be seeking damages

16  for post-petition acts for transferring other assets among

17  various entities that right now there's --

18        THE COURT:  So you do seek relief?  You do seek

19  relief against her in the federal action, is that correct?

20        MR. FRIEDBERG:  The federal action has been dismissed

21  and we've refiled in state court.

22        THE COURT:  You did seek relief against her in the

23  federal action, is that correct?

24        MR. FRIEDBERG:  That is correct, Your Honor.  That is

25  for post-petition acts relating to an ongoing conspiracy.  We

1 are not seeking anything for pre-petition acts. We weren't

2 seeking to recover the funds that were diverted, we weren't

3 seeking to recover any of the things that she was discharged

4 for. We were simply seeking to recover for post-petition

5 actions including certain fraudulent transfers that took place

6 that are now the subject to a fraudulent transfer case in state

7 court which Norton is not a defendant in.

8        THE COURT: And, of course, the question posed by

9 your motion is whether a plausible claim for relief has been

10 stated in any of the counts of the complaint, of the amended

11 complaint, is that correct?

12        MR. FRIEDBERG: Correct. Right. And I'll just

13 repeat it because it's the crux of our argument really is that

14 the allegations related to Ms. Norton's pre-petition acts were

15 included only to establish that there was existence of a RICO

16 conspiracy and that is simply it. We're not seeking to recover

17 anything for which she was discharged. We're basically making

18 allegations that we believed there was an ongoing conspiracy in

19 post-petition. Ms. Norton had taken actions that would have

20 satisfied a RICO claim. That's all.

21        So Ms. Norton's response in opposition to our motion

22 to dismiss makes no attempt to refute the affidavits attached

23 to the motion to dismiss even though ECP's motion --

24        THE COURT: Well, on a motion to dismiss is the Court

25 really directed to resolving disputed issues of fact or more

1  appropriately I think under the law I think it's pretty clear

2  to assume that the well-pleaded factual allegations are true

3  and then ascertain whether taking those and the reasonable

4  inferences that they support to be true a plausible cause of

5  action has been stated.  I think that's the question here.

6          MR. FRIEDBERG:  Well, once affidavits are --

7          THE COURT:  It's not whether there's a factual --

8  well -- I think that's the question.

9          MR. FRIEDBERG:  Correct, Your Honor.  But once there

10 are affidavits put in in support of a motion to dismiss, the

11 Court can treat it as a motion for summary judgment and Mr.

12 Dahiya should have put in some kind of refutation of the

13 allegations made in our affidavits.  There is none.  There's no

14 affidavit --

15         THE COURT:  The Court may but is not required to.

16 I'm trying to remember.  There's a lot of briefs here.  I have

17 a pretty big pile of files on my desk.

18         MR. FRIEDBERG:  Yes.

19         THE COURT:  But is it argued in your moving papers

20 that we should treat this as a Rule 56 motion?

21         MR. FRIEDBERG:  That you can.

22         THE COURT:  I don't recall that.

23         MR. FRIEDBERG:  Yes, yes, we do.

24         THE COURT:  I'm sorry?

25         MR. FRIEDBERG:  We do.

1          THE COURT:  I think you would agree that the Court
2    may but is not required to do that.  That's completely within
3    the Court's discretion.
4          MR. FRIEDBERG:  Absolutely.  Absolutely, Your Honor.
5    That is true.
6          THE COURT:  It's a question of testing the pleadings.
7          MR. FRIEDBERG:  Either way.  It's fine, Your Honor,
8    because I think --
9          THE COURT:  Yes, either way, I guess, but not really.
10   Rule 12 and Rule 56 are very different.
11         MR. FRIEDBERG:  Correct.
12         THE COURT:  The job is different.
13         MR. FRIEDBERG:  Of course.  And the Court can, if
14   there are affidavits and other extrinsic pieces of evidence,
15   treat it as a motion for summary judgment.  That is within your
16   discretion and we do plead that in our papers.
17         THE COURT:  Argue, not plead, I think, but yes.
18         MR. FRIEDBERG:  Yes.  Yes, Your Honor.  Yes, yes.  So
19   even though ECP's motion to dismiss has been fully briefed for
20   over a year, ECP's affidavit, Mr. Cann's affidavit which I
21   think is really the most important thing remains completely
22   unrefuted.  So we've got baseless statements and an unverified
23   complaint that somehow Mr. Cann acted in his individual
24   capacity and that the Court should pierce the corporate veil
25   and Mr. Cann put an affidavit in saying he's the agent, he did

everything in his corporate capacity and there's no refutation of that. The Court can treat it as a motion for summary judgment on that ground and we say that in the motion that it can be treated that way.

And, Your Honor, no amount of discovery is going to change the uncontroverted facts set out in the affidavits that the individuals were acting appropriately in their corporate roles. And, in fact, Mr. Young and I have been dismissed out of this case because we're acting in our corporate roles.

So finally, Your Honor, the relief the debtor seeks is equitable in nature. The debtor cannot come to this Court seeking an equitable remedy with unclean hands. By failing to disclose millions of dollars in assets in this bankruptcy action and procuring her discharge order through fraud, equity is unavailable to the debtor because of her unclean hands because this action is essentially a Section 105 action.

Indeed, the debtor's claims are based solely on alleged violation of a discharge order which the discharge order never would have been entered by this Court had she been forthright because there were millions of dollars in assets and it would have been used to --

THE COURT: Just a question. Why is this a 105 action when it's -- I'm not sure I even know what that means -- when it's, among other things on its face, an action arising from a violation of the discharge injunction?

1          MR. FRIEDBERG:  Because I think a violation of the

2     discharge injunction is brought under Section 105.  I could be

3     mistaken about this but it's different than violation of the

4     automatic stay which has a statutory language which talks about

5     sanctions for violation of the automatic stay as opposed to

6     violation of a discharge order because they're seeking

7     equitable relief here.  They're seeking injunctions and

8     declaratory rulings from this Court so it is brought under

9     Section 105.

10          THE COURT:  But not fully, I guess.  I understand

11     your point.

12          MR. FRIEDBERG:  Right.  And finally --

13          THE COURT:  Thank you.

14          MR. FRIEDBERG:  Finally, because ECP alleged that the

15     RICO conspiracy was ongoing, the filing of the RICO action did

16     not violate the discharge order.  Accordingly, Count 1 of the

17     complaint should be dismissed for failure to state a claim.

18          The remainder of our arguments are pretty well

19     briefed and unless the Court wants me to run through and

20     restate the arguments that we make in our briefs, I can rest

21     and I'll take any questions the Court might have.

22          THE COURT:  I just have one, I guess.  I have in

23     front of me the original motion and it is a while ago.  You're

24     right.  The parties have been working on some alternative

25     dispositions here and the matter has been simplified to some

1    extent with a resolution of claims against some defendants.

2           But looking at Number 20 in the docket of the

3    adversary proceeding, defendants' motion -- amended adversary

4    complaint for failure to state claims upon which relief may be

5    granted and for lack of subject matter jurisdiction, I guess

6    the question I have is where here in your motion do you argue

7    that this should be converted to a motion under Rule 56?  I

8    don't see it.  It could be there.  I don't see it.

9           MR. FRIEDBERG:  Let me --

10          THE COURT:  All right, thank you.  You have a

11   starting point in a motion as the moving papers.  That's an

12   important enough question already.  The Court has plenty of

13   work to do with all the counts to determine whether and to what

14   extent assuming the well-pleaded facts as opposed to legal

15   conclusions are true that whether they support a plausible

16   claim (indiscernible).

17          MR. FRIEDBERG:  We say it in several places, Your

18   Honor.  First, there's Footnote 3 that we attached bank records

19   that establish that Ms. Norton failed to disclose assets in her

20   filing papers and the Trustee has already established that as

21   being true.  I'd also point out that --

22          THE COURT:  Just one second.  What page is Footnote 3

23   on?

24          MR. FRIEDBERG:  One second.

25          THE COURT:  There we go.  Defendants are aware that

1  by attaching the TDBank -- well, okay, there it is.

2  Defendants are aware that the Court may treat this motion as

3  one for summary judgment.

4          MR. FRIEDBERG:  Yes.

5          THE COURT:  Okay, point taken.  There it is in the

6  footnote.  Note citation to the rule.

7          MR. FRIEDBERG:  Yes.  I'm sorry, Your Honor.

8          THE COURT:  And it's somewhere else here as well?

9          MR. FRIEDBERG:  Yeah, Footnote 4, same thing, that

10 the individual defendants were aware that by attaching their

11 affidavits, the Court could treat this as a motion for summary

12 judgment at your discretion.

13         THE COURT:  In other words, you're giving the Court

14 some context for understanding why counsel elected to put an

15 affidavit on a Rule 12 motion?

16         MR. FRIEDBERG:  Correct, Your Honor.

17         THE COURT:  I appreciate that point.

18         MR. FRIEDBERG:  Yes.

19         THE COURT:  All right, anything further?  And you're

20 right, there's extensive and very useful briefing.  It's helped

21 me do my best to be well prepared for today and it will help me

22 get from today to being in a position to give you a decision.

23 Whether an oral or a written decision, is still to be

24 determined.  But anything further, Mr. Friedberg, before I

25 hear from Mr. Dahiya?

1    MR. FRIEDBERG:  No, Your Honor.  I think all I would

2  do is rehash what I've written for the Court so I'll just rest

3  and rely on the pleadings.

4    THE COURT:  All right, I do have a full written

5  record.

6    Mr. Dahiya, you can respond.

7    (No audible response)

8    THE COURT:  Mr. Dahiya --

9    MR. DAHIYA:  Yes.  Oh.

10    THE COURT:  -- you may respond.

11    MR. DAHIYA:  Yes, Your Honor.  May it please the

12  Court?  You know, all this glib talking is basically to take

13  the Court's attention away from the real tragedy here.  They

14  oppressed the youngest child of Mr. Norton.  They used that as

15  a pawn and they want to strong arm twist Mr. Joseph Norton's

16  arm and they went through the family route.  It's very

17  unfortunate.  The father's presence here is only from one

18  thing, to take care of his daughter.

19    (indiscernible) this client of mine, this lady, Ms.

20  Thema Norton, the plaintiff, is suffering, going through

21  trauma.  She's seeing doctors, she's taking medications, she

22  has gone through hell, she lost a child.  All these wrongdoers

23  were named because what they did in the mediation session was

24  horrible.  When it was brought to their attention that Ms.

25  Thema Norton has filed for bankruptcy, their reaction was not

1  acceptable to me despite that the complaint was filed because

2  they would not stop and then that took them at least a month's

3  time to stop what they were doing in the district court.

4         They talk about damages.  There's nothing special

5  about, for the defendants to take discoveries.  There was no

6  Rule 26 conference call.  There was no discovery that had

7  comments in this case.  It was a motion under Rule 12 they had

8  filed.  Now, that's the reason when nothing was done.  They

9  wanted to have everything prepared through mediation so that

10 they could attack us.  Interestingly, so very interestingly

11 this good faith mediation that we volunteered, we asked for, we

12 (indiscernible) now did not stop them from paralleling

13 prosecuting other family members.  They moved ahead, kept

14 filing their paperwork in other courts.  It did not stop them

15 from filing a fraud, fake proof of claim.  It did not stop them

16 from stopping the Trustee the property sale of the assets,

17 everything.  So they wanted everything from us.  They didn't

18 want to give us anything.  So we talked about the damages.

19        As I stated, it was an afterthought when they came up

20 with this issue was the complaint was filed and I think this

21 Court was speculating on the issue of pre-petition activities

22 or post-petition activities.  They felt, ah-ha, this is a safe

23 harbor for us.  Now they are trying to bring an artificial

24 divide.

25        If you see their complaint, Your Honor, the RICO

complaint, there's no bright line rule of separation and the thing they're talking about, the continuing, Your Honor, that is a typical word of art used in RICO pleadings, in all RICO pleadings enclosed continuity or open-ended continuity. They always argue this as a matter of pleading. So this is not keeping the bankruptcy distinction that they use that word continuity. I have done RICO cases so I'm aware of this.

Now, talking about hideous conduct, hiding billions of dollars of assets, the reality is nothing, she has nothing. But that is a red herring again. The fact of the matter is they acted very improperly. She had a miscarriage. Before that, she had bleeding and after that miscarriage, she had the trauma and it's a big loss for her.

Now, talking about, you know, as I told Your Honor, the issue of 12(b)(6) and morphing that into a summary judgment. First of all, their motion doesn't ask for it. It might be anywhere in the (indiscernible). It doesn't make sense. The Court can, of course, sua sponte decide a motion for summary judgment but then the Court has to treat this and give the other person a chance. It doesn't happen this way what he's thinking.

Either he should have moved for a summary judgment, which he didn't, he moved under 12(b)(6) and once the Court decides it has to be a summary judgment, then the Court sets a different timeline that I'm going to treat this as a motion for

 1  summary judgment and you have to brief the issue.  A new thing

 2  comes about, Your Honor, that -- I mean this is what our law

 3  says if you see under Rule 12.

 4         Now, Your Honor, they're talking about, you know, oh,

 5  we didn't ask for piercing the corporate veil.  He doesn't

 6  understand one thing, the counselor.  Your Honor, the tort --

 7  these are like violation of injunction is something like a

 8  violation of tort, there is no necessity to pierce the

 9  corporate veil for contempt.  He doesn't need to do this, two

10  separate entities, Mr. Cann himself, his company separate, both

11  through each are violating the injunction of the Court.

12         So Mr. Cann fights lawsuit, RICO lawsuits, all kind

13  of lawsuits here in New York and now he says the Court does not

14  have jurisdiction?  This is ridiculous, Your Honor.  It doesn't

15  happen this way.

16         So there's a lot of law, case law on the issues of to

17  what extent is, what do you call, the personal liability.

18  Personal liability when the company or other entity is equally

19  liable, our New York law is very clear, Your Honor.  Personal

20  liability will be imposed upon a corporate officer who commits

21  (indiscernible) in the commission of a (indiscernible) even if

22  the commission or (indiscernible) is for the corporation

23  benefits.  This is a violation of injunction.  They are in

24  contempt of the Court.

25         At this stage, at Rule 12(b)(6) stage this motion of

1  a complaint is deemed to be factually correct and the issue

2  that they're talking about, whether it's post-petition conduct

3  or pre-petition conduct, these are merit-based issues that will

4  be taken care of -- decided afterward, Your Honor, when the

5  pretrial order is sent by the time the Court would be handle to

6  what conduct would be deemed to be post-petition or pre-

7  petition.

8          But if you look at the complaint filed, the RICO

9  complaint, it's one narrative, one tale so there's no

10 demarcation there.  There is no line.  Also, Your Honor, this

11 is a Rule 12(b)(6) stage.  It's not an evidentiary hearing at

12 this stage.  Of course, you could take judicial notice of

13 something but there's no judicial notice of anything other than

14 the complaint, the RICO complaint.  The RICO complaint is very

15 clear that they have sued her for conduct from 2014 onward

16 until this complaint was -- 2014.  And in --

17          THE COURT:  Mr. Dahiya?

18          MR. DAHIYA:  Yeah?

19          THE COURT:  Are the RICO claims still pending against

20 Ms. Norton in the district court --

21          MR. DAHIYA:  No, they're not pending, Your Honor.

22          THE COURT:  -- or have they been dismissed?

23          MR. DAHIYA:  They have been dismissed.

24          THE COURT:  Have they been dismissed with prejudice

25 or without prejudice?

1    MR. DAHIYA:  It was dismissed without prejudice

2  because --

3    THE COURT:  So they could be reinstated, is that

4  correct?

5    MR. DAHIYA:  It could be reinstated.  Of course, they

6  could be reinstated.  That's the reason we have injunction,

7  requesting an injunction in this case.

8    THE COURT:  All right, and that's what I'm focusing

9  on actually because I can see that to the extent, and I haven't

10  decided, but to the extent that there is alleged a plausible

11  discharge injunction violation arising out of that past

12  activity, of course, there are two kinds of relief maybe, at

13  least two kinds that could be implicated.  One would be damages

14  and the other would be an injunction.  And there are many

15  reported decisions that point in the direction of finding that

16  if the allegedly offending behavior has stopped, that an

17  injunction, and cannot be resumed, that an injunction is not

18  appropriate.  But if the allegedly offending behavior has been

19  stopped but could be resumed tomorrow, then an injunction would

20  be --

21    MR. DAHIYA:  That's why we requested that --

22    THE COURT:  -- that could at least in theory be

23  available and appropriate.  I was interested in the parties'

24  thoughts on that and my question was first to you.

25    Mr. Friedberg, you could make a note.

1      But I want Mr. Dahiya to finish his argument.  That's

2  one thing I have been thinking about in the context of that

3  claim in particular.

4          MR. DAHIYA:  This is --

5          THE COURT:  Back to you, Mr. Dahiya.

6          MR. DAHIYA:  Sorry, Your Honor.  This is exactly what

7  we mentioned.  What happened was, Judge Block's  complaint was

8  not disclosed to -- what is the other judge's name, very

9  erudite judge, the (indiscernible) judge?  Judge Glasser?  Is

10 it Judge Glasser?  Yes, the judge who dismissed the RICO

11 complaint.  He was very perturbed that the defendant did not

12 disclose to Judge Glasser about Judge Block's case where they

13 filed another case before.  So they filed a case, they amended

14 the complaint, they added Ms. Norton there and then the

15 bankruptcy was filed, they entered into stipulation with

16 (indiscernible) and they dismissed the case then without

17 prejudice.

18      In this case, same thing happened before I could say

19 anything.  The judge did not know the entire story what was

20 happening, otherwise, here is really what happened, Your Honor,

21 is when you dismiss a second time a case, it is deemed to be

22 with prejudice unless you carve out.  So they asked for without

23 prejudice and this is how it happened.  Now, there's a fear

24 that they will sue because there are three, four lawsuits.  It

25 doesn't stop anywhere so that's the reason we request this.

 1         And the last thing is the injunction, Your Honor, is

 2  not a matter of motion.  We have to bring an adversary because

 3  if you look at Rule 7001, it talks about the injunction could

 4  only be issued pursuant to an adversary proceeding.  Otherwise,

 5  I think motions for contempt have been decided, violations of

 6  injunction have been decided on motions to (indiscernible) the

 7  nature of relief that we're asking we're to bring a complaint,

 8  the kind of complaint we brought here.

 9         That's all, Your Honor.  The facts speak for

10  themselves.  You have taken judicial notice of the RICO

11  complaint, you have the transcript from Judge Glasser's ruling

12  and you have all the paperwork.  Unless you have questions, I

13  --

14         THE COURT:  Mr. Dahiya, I'm going to hear the

15  argument and close the record today and set an adjourn date at

16  which time I will either give you an oral ruling or be in a

17  position to issue a written decision.  So don't take this

18  question as a suggestion that anything other than that is our

19  path forward today.

20         But it's unusual for a party that, particularly as

21  you have a party where you profess and indicate an interest in

22  working things out to the extent they could be worked out in a

23  productive way and the parties have certainly suffered a lot

24  here, that's clear, on both sides of the caption there's been a

25  lot of litigation and not much productive litigation, but there

1  was a mediation session cancelled and not rescheduled.  Is

2  there any prospect that while I'm working on my decision, the

3  parties should also resume that or are we done on that front

4  (indiscernible)?

5       MR. DAHIYA:  Your Honor, I think we're done, there's

6  a stalemate because we're not getting anything from them.

7  That's all.  They want discovery so that they could make up

8  their mind and basically they want all the discovery for the

9  trial now.  They want to prepare.

10      There's a lot of -- we've been stabbed in the back,

11 Your Honor.  We're very concerned here with what is happening.

12 In good faith I made the first move so that we could settle.

13 They are my brother colleagues.  Immediately he requested, he

14 asked me to take the name off and the Court instructed us

15 because of legal fraternity, Your Honor, we decided to take off

16 the name of the attorneys.  And, otherwise, the attorneys were

17 very clearly liable with what they were doing.  But we took it

18 out in good faith so that we can make a settlement or

19 something.  It's the other way.  They're blaming us using Ms.

20 Thema Norton, you know, that we are using her.  It's the other

21 way, Your Honor.  They filed the lawsuit to weaken, to coerce.

22      The other part is this.  The entire thing -- had Mr.

23 Norton -- had he had a good lawyer in state court, had very

24 powerful counter claims.  All this mess started because the

25 bank that refused to renew the loan, they refused to extend the

1   loan. They had promised. The construction loan was supposed

2   to convert to a permanent loan but the economy tanked in 2008,

3   Your Honor. Everything collapsed. So they are the one who

4   refused to convert the loan. This is why Mr. Norton got into

5   this problem and I did mention that in my counter claim in the

6   right of setoff or recoupment. I mentioned that that can be

7   used -- asserted without a statute of limitation. I could have

8   got it. But anyway, that's past. This is where we are. It's

9   a simple thing.

10         THE COURT: All right.

11         MR. DAHIYA: Last concluding remarks, Your Honor.

12   The issue is very simple. There was an injunction 524. Was it

13   violated? Not the issue whether she's hiding wealth, hiding

14   that, hiding this. These are red herrings. It's a very clear

15   issue. That's what the complaint is. That's it. Thank you.

16         THE COURT: All right, thank you.

17         Mr. Friedberg, it's your motion. You can reply.

18         MR. FRIEDBERG: Yes, Your Honor. First, I'd like to

19   -- Jeremy Friedberg on behalf of ECP Property II and Nathan

20   Cann. I'd like to respond, Judge, to your inquiry about

21   whether we would agree to injunction or agree to dismiss with

22   prejudice. We have no intention of pursuing Ms. Norton at this

23   point so --

24         THE COURT: I'm sorry, no objection to?

25         MR. FRIEDBERG: We have no intention to pursue Ms.

1 Norton any further at this point. Happy to be enjoined, happy

2 to amend it to dismissal, dismissal with prejudice from the

3 federal case. That's fine.

4        THE COURT: I think that could be a very useful step.

5        MR. FRIEDBERG: Then we will do that right away, Your

6 Honor, because we've already re-sued the rest of the family and

7 all the entities that -- the Court has seen that there are at

8 least four entities here that Ms. Norton didn't disclose.

9 We've sued those entities as well.

10        And this is what really is going on. Mr. Norton has

11 taken assets, moved them around, sent assets to Guyana where

12 they're beyond judicial reach of this Court, of any Court from

13 the U.S. and we're just trying to collect a debt. That's all

14 this is and --

15        THE COURT: It's probably worth saying that again.

16        MR. FRIEDBERG: Your Honor, you cut out.

17        THE COURT: ...people are good people or bad people

18 or had good intent or bad intent. It's about collecting a

19 debt. I mean, of course, some of the defenses you raise,

20 unclean hands, things like that, may go somewhere down that

21 path but at the beginning and the end this is about whether and

22 to what extent a debt is going to be paid and that's important.

23        I think it's also helpful to just confirm on the

24 record that you've indicated that you would be prepared to

25 dismiss with prejudice the claims that were asserted in the

1　federal court, district court action against the debtor Thema

2　Norton.

3　　　　MR. FRIEDBERG:  Yes.

4　　　　THE COURT:  That, I think has some consequence for

5　the scope if this case proceeds, for the scope of the potential

6　relief that would be at issue in the first cause of action if

7　you do a discharge injunction violation and whether it's a

8　retrospective or prospective situation.  Again, as noted, cases

9　focus on that difference.  Mr. Dahiya, I would move to -- Mr.

10　Friedberg, the same -- I would encourage you to consider

11　whether there is some stipulation that could be filed.  I don't

12　know that it would be here, I guess it would be there, with

13　respect to a dismissal with prejudice of those claims.

14　　　　Mr. Dahiya, that eliminates that question going

15　forward from this case.  But even more important, it eliminates

16　that question or risk or uncertainty about Ms. Norton's life --

17　　　　MR. DAHIYA:  No.  Your Honor --

18　　　　THE COURT:  -- that's a good thing.  Mr. Friedberg --

19　it's his motion.  He's going to continue it.  Then we're going

20　to close the record.  You may confer as you wish after that.

21　I'll give you time.

22　　　　MR. FRIEDBERG:  Your Honor, may I?

23　　　　THE COURT:  Mr. Friedberg, back to you.

24　　　　MR. FRIEDBERG:  Yes.  So I think Mr. Dahiya's point

25　about we're seeking all this discovery and we're just trying to

1 game the system in this mediation because Rule 26 conference

2 hadn't taken place, that's not it at all. We were discussing

3 settlement. Obviously it's confidential. But we felt like we

4 could not negotiate in a vacuum. We needed to know that this

5 really happened, that there was some real damage and that a

6 doctor had seen her at the time and said this really happened,

7 it was caused by us and that's all we wanted. And it's not

8 forthcoming, Your Honor, it's just not. So we'd happily go

9 back to mediation. We were willing to do it even without it

10 but we can't come up with a number or a value without it.

11        THE COURT: In a general way, parties often conclude

12 that it is productive not to hold back whatever the evidence is

13 even at the settlement stage. You could think of it as helping

14 the other side help you if you're going to make a

15 recommendation to a client to put value on a claim, then the

16 more you can know about the support you will be facing for that

17 claim, the evidence in support of that claim, the better. I

18 think that's a basic concept. As a plaintiff, you don't have

19 to respond to that request but you will probably get a better

20 settlement offer if you do, I think. That's kind of a

21 statement of general application.

22        Back to you, Mr. Friedberg.

23        MR. FRIEDBERG: But except for the parties, of

24 course. We're not in the discovery stage if we get there but

25 certainly at this stage.

 1          MR. FRIEDBERG:  I just want to be clear to the Court

 2   that we were not doing anything untoward here with discovery.

 3   We just simply needed something to rest a calculus on to figure

 4   out what our relative risk here is rather than just unverified,

 5   unsupported allegations, that's it, plain and simple.

 6          I would just point out once again, Your Honor, that

 7   there were numerous undisclosed assets in Ms. Norton's

 8   bankruptcy.  The Court has already the sale of one of them.

 9   Those assets are the subject of the RICO case -- were the

10   subject of the RICO case and are the subject of the ongoing

11   state court fraudulent transfer case.  I'm sorry, it's under

12   the old statute so it's still a fraudulent transfer case.

13          We will happily dismiss the case against Ms. Norton

14   in federal court with prejudice, that we have no intent of

15   pursuing her any further personally.  It was really just to the

16   extent that she was a necessary party for the allegation of an

17   ongoing, continuing RICO conspiracy and she comes to this Court

18   with unclean hands and we would suggest the Court should

19   recognize that if they're asking for equitable relief, they

20   need to have clean hands before they come to the Court and the

21   case law is really --

22          THE COURT:  Do you think that's the kind of thing

23   that might raise disputed issues of fact that even on summary

24   judgment might not be appropriate and certainly when the motion

25   is directed to testing the pleading, noting your two footnotes,

1  noting they don't even cite the Rule 56, but I know the rule,

2  you don't have to tell me, I wonder if this is the time for

3  that argument.  Assuming that it has overwhelming merit, what I

4  have now is a complaint, not a motion to dismiss a Chapter 7

5  case, not unclean hands, but a motion under Rule 12(b)(1) and

6  12(b)(6) of the Federal Rules of Civil Procedure.  I'm reading

7  from your document to dismiss as not stating a plausible claim

8  upon which relief can be granted.

9          MR. FRIEDBERG:  Your Honor?

10          THE COURT:  Anything further?  It's been very

11  helpful.

12          MR. FRIEDBERG:  Your point is well taken.  Thank you.

13          THE COURT:  All right.

14          MR. FRIEDBERG:  Nothing further.

15          THE COURT:  All right, anything?  So I'm prepared to

16  close the record.  Set -- we'll get about a month out and get

17  to work.  I'm also happy because I do think actually against

18  the odds I will say there's been a little, you know, I see a

19  little crack of light, a little maybe an opportunity that if we

20  gave you just a few minutes now, you have access to your

21  clients some to be in a Zoom room while we hold our next

22  hearing or not.

23          UNIDENTIFIED SPEAKER:  (indiscernible).

24          THE COURT:  Oh, it's the main case.  So, first, thank

25  you both.  Very helpful, very productive and as always, so

1  grateful for your responsiveness to my questions.  There's a

2  lot to think about here.  Obviously, the context is very

3  difficult, very difficult, and the question as for today --

4  well, the question is not can I change the past or can I make

5  things that happened not happen.  I can't.  No judge can, not

6  even a lawyer can.  But what I can do is apply Rule 12(b)(6) to

7  this complaint and 12(b)(1) as well and I will.  But now I

8  think it's appropriate.

9         I see we have Trustee's counsel, Mr. Tsionis, to call

10 the main case and get to work on that and then I may invite you

11 to Zoom into a room to see -- and I will not not work.  It will

12 delay nothing in my own efforts which are already quite ongoing

13 to assess the complaint under the applicable standards.  But,

14 you know, sometimes we do our best work when we solve a

15 problem, lawyers and judges.  Anyway, let's call the main case

16 and get the appearance of the Trustee's counsel.

17        COURTROOM DEPUTY:  Numbers 55 and 56 on the calendar,

18 Thema T. Norton, the Main Case Number is 17-42199.  Connected

19 is Mr. Dahiya, Ms. Norton, Mr. Norton, Mr. Friedberg and Mr.

20 Tsionis representing the Trustee.  I just ask the parties to

21 please remember to state your name each time before speaking.

22 Thank you.

23        THE COURT:  All right, thank you.  Let's get your

24 appearances again on the record now that we've called the main

25 bankruptcy case.

1          Mr. Dahiya for the debtor?

2          MR. DAHIYA:  Good afternoon, Judge.  Karamvir Dahiya

3   appearing for Ms. Thema Norton, the debtor in these

4   proceedings.

5          THE COURT:  Thank you.  We note the presence of the

6   debtor and the debtor's father, Thema and Joseph Norton.

7          Mr. Friedberg, ECP Property II, LLC, in the

8   bankruptcy case?

9          MR. FRIEDBERG:  Yes, Your Honor.  Jeremy Friedberg on

10  behalf of ECP Property II, LLC.  We have nothing really going

11  on in this hearing and I'd ask if I could be --

12         THE COURT:  No, but you're appearing and I'm making a

13  complete record.

14         Mr. Tsionis for the Trustee?

15         MR. TSIONIS:  Good afternoon, Your Honor.  Alex

16  Tsionis, Law Offices of Avrum J. Rosen, PLLC, for David J.

17  Doyaga, the Chapter 7 Trustee.

18         THE COURT:  I don't think we need much time.  I do

19  want to note there are two matters on the calendar today,

20  Number 55 and 56.  55 is the carried hearing whether to approve

21  the sale that's been approved so that's an administrative

22  matter.  It's appropriate to mark that off and indicate it's so

23  ordered.

24         That brings me to the Trustee's motion for contempt

25  and all kinds of relief with respect to the enforcement of the

1  2004 order.  The 2004 order remains on the docket.

2          Mr. Tsionis, is it necessary to -- do you seek

3  further relief on this motion or at this point could we mark it

4  off without prejudice?  If you need to restore it to the

5  calendar, we could always do that or consider a request to do

6  that?

7          MR. TSIONIS:  Thank you, Your Honor.  Alex Tsionis

8  for the Trustee.  I was actually thinking before the hearing to

9  adjourn it out but I wanted to get before Your Honor -- to be

10  before Your Honor today to give you a status of sort of where

11  we've been, where we are and where we're going with this case.

12          As Your Honor knows, this was a case where it was

13  reopened, there were multiple business entities that allegedly

14  the debtor had an interest in that were not disclosed.  We sold

15  one of the business entities which the estate had an interest

16  in or allegedly had an interest in and there are four other

17  entities that the Trustee is still investigating and there are

18  documents that we do need from Ms. Norton that we still have

19  not received, for example, federal and state tax returns for

20  these entities, all the K-1s if there were distributions to any

21  of the members and all versions of the operating agreements.

22          And the reason why we say all versions of the

23  operating agreements is because we happen to have operating

24  agreements that seem to show that Ms. Norton was a member and

25  then there seems to be a different operating agreement that was

created later on that shows that she's not a member or that only Mr. Norton is a member. So that's where we are.

Where we'd like to go is we've identified another party that may have some of this critical information that the Trustee requires in order to continue his due diligence into the debtor's financial affairs. I hope to bring that 2004 motion within the next week so I would ask Your Honor I think it's appropriate to just carry this motion for a period of 60 days just so I can file that 2004 and get the information, hopefully I can get the information from that other party and we could assess from there.

I think that makes the most sense but we will defer to the Court. Thank you, Your Honor.

MR. DAHIYA: Can I chip in, Your Honor?

THE COURT: Of course, Mr. Dahiya.

MR. DAHIYA: This case is a case that is going around for $2,500. The claim is $2,500. That is what the claim is here, Ms. Norton's. If you see my objection to the proof of claim which usually is the job of a Trustee which we are doing because we're equally -- bankruptcy court says any party-in-interest can bring a motion to object to a proof of claim. It was the sacred duty to see who wants to feed on the estate. The Trustee doesn't want to do this.

The design is very nefarious. Lawyer wants to make their money. Mr. Avrum Rosen, his firm is the attorney billing

1 by hours. $50,000 was raised. They want to keep spinning the

2 wheel just to make their money. To date, the gentleman

3 appointed by the Court, the Trustee or his attorneys have not

4 filed any objection, shown any concern to a sham proof of claim

5 that has been filed in this case. If you see my objection to

6 the proof of claim, it is not a light small like, you know, a

7 frivolous objection to proof of claim. It's got some very deep

8 abiding learning of virtues that should have been followed by

9 the Trustee. But it is what it is. For $2,500 --

10          THE COURT: It is what it is.

11          MR. DAHIYA: Yeah.

12          THE COURT: All right, what I see in the record, Mr.

13 Dahiya is a claims register that shows a claim of American

14 Express National Bank of $1,062.45 and a claim that I

15 understand is objected to of ECP Property that is for $206,592.

16 So I'm not sure it is a complete description of the claims in

17 the case to say that they're $2,500 --

18          MR. DAHIYA: Because that claim pursuant to your

19 adjustments and established judgment rules and laws of our

20 court and our circuit it's very clear, Your Honor, there's

21 entitlement to rents, there's no entitlement unless you are in

22 possession, your own judgments, Your Honor.

23          THE COURT: Mr. Dahiya, aren't these the arguments in

24 your motion that's presently scheduled to be heard on May 3rd

25 --

1          MR. DAHIYA:  Yes.

2          THE COURT:  -- your claim objection motion?

3          MR. DAHIYA:  Yes, Your Honor.

4          THE COURT:  Let's wait til then.

5          MR. DAHIYA:  Okay.

6          THE COURT:  I think I've heard enough to satisfy me

7     that at this point, while I always assume that parties will

8     comply with orders and I'm happy to say I am rarely

9     disappointed and I always assume and I look forward to and

10    admire cooperation among counsel even when they represent

11    clients who have strenuously different positions,

12    professionalism is something that our system and our

13    professions depends on so I think an adjourn date makes sense.

14          Mr. Tsionis, that would be then the only matter we'd

15    be carrying, I would propose at least to keep everything

16    together that we carry --

17          Is May 3rd our next date in this case?  It's awfully

18    soon.

19          I believe that's just on a regular calendar day.

20    We're certainly not going to be in a position to hear your

21    argument in full on that day.  I don't know if you're going to

22    need discovery on that but you should prepare for that in the

23    context of almost as if it were a pretrial conference.  I'm

24    going to be asking what you need, if anything, in the way of

25    discovery, time, whatever.  We'll set a schedule and we'll move

1  forward.  The notice of motion and attachments is 218 pages so

2  there's obviously a lot to dig into and, again, not something

3  we'll be addressing on the merits on our May 3rd date.

4       So to keep the matters in the main case together, May

5  3rd at 10:30 with some understandings as to how you should be

6  preparing and what kinds of questions I'll have.  The hearing

7  on the sale motion is marked off as an administrative error.

8  And so I think that's all we have to do at the moment here.  We

9  have another matter to call not related to Thema Norton and I

10 believe not involving these parties but I'll be corrected if

11 I'm incorrect, I'm sure, and so I would propose to -- I'm in my

12 courtroom as you can tell.  I'm sorry you're not in my

13 courtroom.  It is what it is.  I would point to that conference

14 room.  You remember it, I know.

15       UNIDENTIFIED ATTORNEY:  Remember it well.

16       THE COURT:  And I'd ask you to go into that

17 conference room and, remember that the conference room is

18 connected to the well of the court.  That's substantive in my

19 view.  And so let's just counsel.  That would be, I think, in

20 the adversary Mr. Dahiya and Mr. Friedberg and I want you to

21 try to imagine you're in the other lawyer's seat and what would

22 make sense to them and to you.  And if anything good comes of

23 it, I'll be thrilled to hear.  And if not, hopefully I'll only

24 have wasted a little bit of your time.  I don't think any time

25 that parties are engaging productively in this case is actually

1  a waste.  You've given me a lot to think about and we've made

2  some really good progress on the question of prospective relief

3  and with a prejudice dismissal.  I want you to address how that

4  could be addressed to simply take that issue out of the case.

5  That would be helpful to me.  But it is what it is.

6          THE COURT:  Mr. Dahiya?

7          MR. DAHIYA:  Just a quick thing, Your Honor.  Yeah,

8  just a very quick thing.  I think procedurally Mr. Friedberg is

9  not right and the Court is also speculating expecting something

10 that's not available.  First of all, that would call for an

11 amendment of the judgment.  Amendment is pursuant to Rule 60 or

12 59.

13         THE COURT:  Mr. Dahiya, I'm inviting you to confer in

14 the conference room.  We're going to call the next case.

15         MR. DAHIYA:  That's fine, Your Honor, Okay.

16         THE COURT:  And it may be that I'm proposing the

17 impossible.  It could be.  It's not often the case but we'll

18 find out.

19         All right, so, Ms. Jackson, can you make the

20 appropriate arrangements?

21         MR. FRIEDBERG:  Your Honor, are you going to want us

22 to come back into the court?

23         THE COURT:  Well, Ms. Jackson will be in touch and if

24 you think it's useful at all, we do need a continued hearing

25 date, we can just advise you what it'll be.  I don't think it

1 makes sense to put this down for May 3rd but we'll figure it

2 out and we can advise you after. (indiscernible).

3 　　　　　MR. TSIONIS: Your Honor, Alex Tsionis for the

4 Trustee. I apologize for my confusion. The motion for

5 contempt, that's being adjourned out? I'm sorry. I apologize

6 for my confusion.

7 　　　　　THE COURT: That's going to be adjourned. Our next

8 date in the bankruptcy case is actually very soon. It's May

9 3rd on the claim objection. So to keep the bankruptcy case

10 matters together, I put it to the same date. That'll be

11 largely a scheduling date largely focused on that other matter.

12 If the Trustee's counsel would like to request that your

13 appearance be waived and that the motion for contempt be

14 adjourned out to whatever the next date there is, I would

15 certainly consider that. I'm trying to manage both my docket

16 and your docket, I guess, all right?

17 　　　　　MR. TSIONIS: Thank you very much.

18 　　　　　THE COURT: But for now it's being adjourned to May

19 3rd because we have another matter, the claim objection and

20 this Chapter 7 bankruptcy case on for that same date.

21 　　　　　MR. TSIONIS: Your Honor, thank you very much.

22 　　　　　THE COURT: All right? Thank you.

23 　　　　　MR. TSIONIS: Yes, we would respectfully request that

24 the Trustee's appearance be waived for the May 3rd hearing.

25 　　　　　THE COURT: You could file a letter just so the

1  record is clear.

2          MR. TSIONIS:  Thank you very much, Your Honor.  We

3  will.

4          THE COURT:  Thank you.

5          MR. TSIONIS:  Have a great weekend.

6          THE COURT:  Give me a very short letter.

7          MR. TSIONIS:  Have a great weekend, Your Honor.

8  Thank you very much.

9          THE COURT:  Thank you.  You too.

10         MR. TSIONIS:  Bye-bye.

11         THE COURT:  Bye-bye.

12                      * * * * *

13               **C E R T I F I C A T I O N**

14         I, MARY POLITO, court approved transcriber, certify

15  that the foregoing is a correct transcript from the official

16  electronic sound recording of the proceedings in the

17  above-entitled matter, and to the best of my ability.

18

19

20  /s/ Mary Polito

21  MARY POLITO

22  J&J COURT TRANSCRIBERS, INC.      DATE:  June 10, 2022

23

24

25

## $

**$1,062.45** [1] **38**:14
**$15** [2] **5**:25 **6**:21
**$2,500** [4] **37**:17,17 **38**:9, 17
**$206,592** [1] **38**:15
**$50,000** [1] **38**:1

## /

**/s/** [1] **43**:20

## 1

**1** [1] **16**:16
**10** [1] **43**:22
**10:30** [1] **40**:5
**105** [4] **15**:16,22 **16**:2,9
**12** [4] **14**:10 **18**:15 **20**:7 **22**:3
**12(b)(1** [2] **33**:5 **34**:7
**12(b)(6** [6] **21**:15,23 **22**: 25 **23**:11 **33**:6 **34**:6
**15th** [1] **5**:19
**17-42199** [1] **34**:18

## 2

**20** [3] **5**:23 **6**:20 **17**:2
**2004** [4] **36**:1,1 **37**:6,9
**2008** [1] **28**:2
**20-1113** [1] **3**:3
**2014** [2] **23**:15,16
**2017** [2] **6**:1 **8**:21
**2020** [2] **5**:19,22
**2022** [2] **7**:14 **43**:22
**218** [1] **40**:1
**22nd** [1] **7**:12
**26** [2] **20**:6 **31**:1
**28** [1] **9**:6

## 3

**3** [2] **17**:18,22
**36** [1] **9**:7
**3rd** [8] **38**:24 **39**:17 **40**:3, 5 **42**:1,9,19,24

## 4

**4** [1] **18**:9

## 5

**524** [1] **28**:12
**53** [1] **3**:2
**54** [1] **3**:3
**55** [4] **4**:3 **34**:17 **35**:20,20
**56** [6] **13**:20 **14**:10 **17**:7 **33**:1 **34**:17 **35**:20
**59** [1] **41**:12

## 6

**60** [2] **37**:8 **41**:11
**606** [1] **2**:75

## 7

**7** [3] **33**:4 **35**:17 **42**:20
**7001** [1] **26**:3
**78** [1] **9**:21
**79** [1] **9**:21

## A

**abiding** [1] **38**:8
**ability** [1] **43**:17
**above-entitled** [1] **43**: 17
**absolutely** [3] **6**:8 **14**:4, 4
**acceptable** [1] **20**:1
**access** [1] **33**:20
**accordingly** [1] **16**:16
**acted** [2] **14**:23 **21**:11
**acting** [2] **15**:7,9
**action** [16] **8**:18,24 **10**:3, 3 **11**:19,20,23 **13**:5 **15**:14, 16,16,23,24 **16**:15 **30**:1,6
**actions** [2] **12**:5,19
**activities** [1] **20**:21,22
**activity** [1] **24**:12
**acts** [9] **9**:9,18,25 **10**:11, 20 **11**:16,25 **12**:1,14
**actually** [6] **4**:11 **24**:9 **33**: 17 **36**:8 **40**:25 **42**:8
**add** [4] **4**:18 **5**:5,7,9
**added** [1] **25**:14
**additional** [1] **9**:25
**additionally** [2] **6**:23 **9**: 19
**address** [1] **41**:3
**addressed** [2] **4**:15 **41**:4
**addressing** [1] **40**:3

**adjourn** [3] **26**:15 **36**:9 **39**:13
**adjourned** [4] **42**:5,7,14, 18
**adjustments** [1] **38**:19
**administrative** [2] **35**: 21 **40**:7
**admire** [1] **39**:10
**admission** [1] **6**:8
**adversary** [8] **3**:3,24 **4**: 11 **17**:3,3 **26**:2,4 **40**:20
**advise** [2] **41**:25 **42**:2
**affairs** [1] **37**:6
**affidavit** [6] **6**:10 **13**:14 **14**:20,20,25 **18**:15
**affidavits** [7] **12**:22 **13**:6, 10,13 **14**:14 **15**:6 **18**:11
**afternoon** [7] **3**:2,8,11, 12,19 **35**:2,15
**afterthought** [1] **20**:19
**afterward** [1] **23**:4
**agent** [1] **14**:25
**ago** [2] **5**:23 **16**:23
**agree** [3] **14**:1 **28**:21,21
**agreement** [1] **36**:25
**agreements** [3] **36**:21, 23,24
**ahead** [1] **20**:13
**ah-ha** [1] **20**:22
**al** [1] **3**:2
**alex** [3] **35**:15 **36**:7 **42**:3
**allegation** [1] **32**:16
**allegations** [6] **6**:3 **12**: 14,18 **13**:2,13 **32**:5
**allege** [1] **9**:8
**alleged** [8] **5**:25,25 **9**:20 **10**:11,14 **15**:18 **16**:14 **24**: 10
**allegedly** [4] **24**:16,18 **36**:13,16
**alleges** [1] **8**:24
**alleging** [1] **9**:23
**almost** [1] **39**:23
**already** [5] **17**:12,20 **29**: 6 **32**:8 **34**:12
**alternative** [1] **16**:24
**amend** [1] **29**:2

**amended** [6] **6**:10,15 **10**: 5 **12**:10 **17**:3 **25**:13
**amendment** [2] **41**:11, 11
**american** [1] **38**:13
**among** [3] **11**:16 **15**:24 **39**:10
**amount** [3] **9**:15 **10**:19 **15**:5
**another** [4] **25**:13 **37**:3 **40**:9 **42**:19
**anyway** [2] **28**:8 **34**:15
**apologize** [3] **4**:10 **42**:4, 5
**apologized** [1] **8**:23
**appearance** [3] **34**:16 **42**:13,24
**appearances** [2] **3**:9 **34**: 24
**appearing** [4] **3**:12,17 **35**:3,12
**appears** [1] **10**:10
**applicable** [1] **34**:13
**application** [1] **31**:21
**apply** [1] **34**:6
**appointed** [1] **38**:3
**appreciate** [1] **18**:17
**appropriate** [8] **4**:7 **24**: 18,23 **32**:24 **34**:8 **35**:22 **37**:8 **41**:20
**appropriately** [2] **13**:1 **15**:7
**approve** [2] **4**:2 **35**:20
**approved** [2] **35**:21 **43**: 14
**aren't** [1] **38**:23
**argue** [3] **14**:17 **17**:6 **21**: 5
**argued** [2] **4**:15 **13**:19
**argument** [8] **4**:14 **10**: 10 **11**:4 **12**:13 **25**:1 **26**:15 **33**:3 **39**:21
**arguments** [5] **5**:4 **7**:24 **16**:18,20 **38**:23
**arising** [2] **15**:24 **24**:11
**arm** [2] **19**:15,16
**around** [2] **29**:11 **37**:16

**arrangements** [1] **41:** 20
**art** [1] **21:3**
**artificial** [1] **20:23**
**ascertain** [1] **13:3**
**asserted** [3] **6:13 28:7 29:25**
**assess** [2] **34:13 37:11**
**assets** [11] **11:5,16 15:** 13,20 **17:19 20:16 21:9 29:11,11 32:7,9**
**assume** [3] **13:2 39:7,9**
**assuming** [2] **17:14 33:** 3
**attached** [4] **6:4 9:7 12:** 22 **17:18**
**attaching** [3] **6:11 18:1,** 10
**attachments** [1] **40:1**
**attack** [1] **20:10**
**attempt** [1] **12:22**
**attending** [1] **6:9**
**attention** [2] **19:13,24**
**attorney** [2] **37:25 40:15**
**attorneys** [4] **10:15 27:** 16,16 **38:3**
**audible** [1] **19:7**
**automatic** [2] **16:4,5**
**available** [2] **24:23 41:** 10
**avoid** [1] **7:9**
**avrum** [2] **35:16 37:25**
**aware** [4] **17:25 18:2,10 21:7**
**away** [2] **19:13 29:5**
**awfully** [1] **39:17**

## B

**back** [8] **4:11 25:5 27:10 30:23 31:9,12,22 41:22**
**background** [2] **7:19 8:** 12
**bad** [2] **29:17,18**
**bank** [3] **17:18 27:25 38:** 14
**bankruptcy** [14] **3:23,** 25 **11:6 15:13 19:25 21:6**

**25:15 32:8 34:25 35:8 37:** 20 **42:8,9,20**
**based** [1] **15:17**
**baseless** [1] **14:22**
**basic** [1] **31:18**
**basically** [4] **9:8 12:17 19:12 27:8**
**beginning** [1] **29:21**
**behalf** [4] **3:20 5:16 28:** 19 **35:10**
**behavior** [2] **24:16,18**
**behind** [1] **7:8**
**belief** [1] **9:22**
**believe** [5] **4:6 7:21 11:** 11 **39:19 40:10**
**believed** [1] **12:18**
**benefits** [1] **22:23**
**best** [3] **18:21 34:14 43:** 17
**better** [2] **31:17,19**
**beyond** [1] **29:12**
**big** [2] **13:17 21:13**
**billing** [1] **37:25**
**billions** [1] **21:8**
**bit** [1] **40:24**
**blaming** [1] **27:19**
**bleeding** [1] **21:12**
**block's** [2] **25:7,12**
**body** [1] **11:1**
**both** [5] **3:21 22:10 26:** 24 **33:25 42:15**
**break** [2] **8:14,16**
**brief** [1] **22:1**
**briefed** [4] **5:3 6:14 14:** 19 **16:19**
**briefing** [1] **18:20**
**briefly** [1] **4:13**
**briefs** [2] **13:16 16:20**
**bright** [1] **21:1**
**bring** [6] **4:16 20:23 26:2,** 7 **37:6,21**
**brings** [2] **5:11 35:24**
**brother** [2] **8:25 27:13**
**brought** [5] **8:14 16:2,8 19:24 26:8**
**business** [2] **36:13,15**
**business'** [1] **6:22**

**bye-bye** [2] **43:10,11**

## C

**calculus** [1] **32:3**
**calendar** [7] **3:2,3 4:4 34:17 35:19 36:5 39:19**
**call** [7] **7:7 9:6 20:6 22:** 17 **34:9,15 40:9 41:10,14**
**called** [1] **34:24**
**came** [1] **20:19**
**can't** [2] **31:10 34:5**
**canceled** [3] **7:17 8:2,6**
**cancelled** [1] **27:1**
**cann** [12] **3:2,20 5:13,16,** 24 **6:19,20 14:23,25 22:** 10,12 **28:20**
**cann's** [2] **6:25 14:20**
**cannot** [2] **15:11 24:17**
**capacity** [2] **14:24 15:1**
**caption** [1] **26:24**
**care** [2] **19:18 23:4**
**carried** [4] **4:1,1,2 35:20**
**carry** [2] **37:8 39:16**
**carrying** [1] **39:15**
**carve** [1] **25:22**
**case** [64] **3:23,23,25 4:25 5:17,22,23 6:1,18,18,20 7:6,8,9,20,21 8:9,13,13, 16,20,21 12:6 15:9 20:7 22:16 24:7 25:12,13,13, 16,18,21 29:3 30:5,15 32: 9,10,11,12,13,21 33:5,24 34:10,15,18,25 35:8 36: 11,12 37:16,16 38:5,17 39:17 40:4,25 41:4,14,17 42:8,9,20**
**cases** [2] **21:7 30:8**
**cause** [2] **13:4 30:6**
**caused** [2] **8:22 31:7**
**certain** [2] **10:11 12:5**
**certainly** [5] **26:23 31:** 25 **32:24 39:20 42:15**
**certify** [1] **43:14**
**chance** [1] **21:20**
**change** [2] **15:6 34:4**
**chapter** [3] **33:4 35:17 42:20**

**check** [5] **9:8,9,13 10:12,** 18
**child** [2] **19:14,22**
**chip** [1] **37:14**
**circuit** [1] **38:20**
**citation** [1] **18:6**
**cite** [1] **33:1**
**civil** [1] **33:6**
**claim** [24] **12:9,20 16:17 17:16 20:15 25:3 28:5 31:** 15,17,17 **33:7 37:17,17, 19,21 38:4,6,7,13,14,18 39:2 42:9,19**
**claims** [9] **15:17 17:1,4 23:19 27:24 29:25 30:13 38:13,16**
**clean** [1] **32:20**
**clear** [8] **13:1 22:19 23:** 15 **26:24 28:14 32:1 38:** 20 **43:1**
**clearly** [1] **27:17**
**client** [2] **19:19 31:15**
**clients** [2] **33:21 39:11**
**close** [3] **26:15 30:20 33:** 16
**closure** [1] **4:17**
**coerce** [1] **27:21**
**collapsed** [1] **28:3**
**colleagues** [1] **27:13**
**collect** [1] **29:13**
**collecting** [2] **9:5 29:18**
**come** [4] **15:11 31:10 32:** 20 **41:22**
**comes** [3] **22:2 32:17 40:** 22
**comments** [1] **20:7**
**commission** [2] **22:21,** 22
**commits** [1] **22:20**
**company** [2] **22:10,18**
**complaint** [50] **6:2,3,5,6, 11,13,15,17,23 7:2,5 8: 17,19 9:6,7,12,16,21,21 10:3,5,9,23 11:1 12:10, 11 14:23 16:17 17:4 20:1, 20,25 21:1 23:1,8,9,14, 14,14,16 25:7,11,14 26:7,**

8,11 **28:**15 **33:**4 **34:**7,13

**complete** [2] **35:**13 **38:**
16

**completely** [2] **14:**2,21

**comply** [1] **39:**8

**concept** [1] **31:**18

**concern** [1] **38:**4

**concerned** [1] **27:**11

**concert** [1] **8:**25

**conclude** [1] **31:**11

**concluding** [1] **28:**11

**conclusions** [1] **17:**15

**conduct** [5] **21:**8 **23:**2,3, 6,15

**confer** [2] **30:**20 **41:**13

**conference** [12] **3:**24,24 **4:**12,19 **5:**8 **20:**6 **31:**1 **39:** 23 **40:**13,17,17 **41:**14

**conferenced** [1] **4:**14

**confidential** [1] **31:**3

**confirm** [2] **4:**6 **29:**23

**confusion** [2] **42:**4,6

**connected** [3] **3:**4 **34:**18 **40:**18

**consequence** [1] **30:**4

**consider** [3] **30:**10 **36:**5 **42:**15

**conspiracy** [12] **9:**4,11, 20,22,24 **10:**20 **11:**11,25 **12:**16,18 **16:**15 **32:**17

**construction** [1] **28:**1

**consultation** [1] **5:**1

**contains** [1] **6:**3

**contempt** [7] **4:**1 **22:**9, 24 **26:**5 **35:**24 **42:**5,13

**context** [5] **4:**21 **18:**14 **25:**2 **34:**2 **39:**23

**continue** [3] **8:**8 **30:**19 **37:**5

**continued** [1] **41:**24

**continuing** [5] **9:**23,23 **10:**20 **21:**2 **32:**17

**continuity** [3] **21:**4,4,7

**convert** [2] **28:**2,4

**converted** [1] **17:**7

**cooperation** [1] **39:**10

**corporate** [7] **14:**24 **15:**

1,7,9 **22:**5,9,20

**corporation** [1] **22:**22

**correct** [11] **11:**19,23,24 **12:**11,12 **13:**9 **14:**11 **18:** 16 **23:**1 **24:**4 **43:**15

**corrected** [1] **40:**10

**cost** [1] **7:**1

**counsel** [8] **4:**20 **10:**16 **18:**14 **34:**9,16 **39:**10 **40:** 19 **42:**12

**counselor** [1] **22:**6

**count** [1] **16:**16

**counter** [2] **27:**24 **28:**5

**counts** [2] **12:**10 **17:**13

**course** [11] **4:**13 **8:**9 **12:** 8 **14:**13 **21:**18 **23:**12 **24:**5, 12 **29:**19 **31:**24 **37:**15

**court's** [5] **6:**17 **7:**3 **10:** 14 **14:**3 **19:**13

**courtroom** [4] **3:**1 **34:** 17 **40:**12,13

**courts** [1] **20:**14

**cousin** [1] **9:**1

**crack** [1] **33:**19

**created** [1] **37:**1

**creditors** [1] **9:**5

**critical** [1] **37:**4

**crux** [2] **10:**10 **12:**13

**cut** [1] **29:**16

## D

**dahiya** [55] **3:**4,10,11,12 **4:**25 **6:**7,10,16,17 **7:**13, 15 **8:**6,14 **13:**12 **18:**25 **19:** 6,8,9,11 **23:**17,18,21,23 **24:**1,5,21 **25:**1,4,5,6 **26:** 14 **27:**5 **28:**11 **30:**9,14,17 **34:**19 **35:**1,2,2 **37:**14,15, 16 **38:**11,13,18,23 **39:**1,3, 5 **40:**20 **41:**6,7,13,15

**dahiya's** [1] **30:**24

**damage** [1] **31:**5

**damages** [16] **5:**25 **6:**3,7, 11 **7:**13,15,16,19 **9:**12 **10:** 13,15,17 **11:**15 **20:**4,18 **24:**13

**damaging** [1] **6:**25

**date** [13] **6:**8 **26:**15 **38:**2 **39:**13,17 **40:**3 **41:**25 **42:**8, 10,11,14,20 **43:**22

**daughter** [1] **19:**18

**david** [1] **35:**16

**day** [2] **39:**19,21

**days** [1] **37:**9

**debt** [3] **29:**13,19,22

**debtor** [12] **3:**10 **8:**24 **9:** 10,14 **15:**10,11,15 **30:**1 **35:**1,3,6 **36:**14

**debtor's** [3] **15:**17 **35:**6 **37:**6

**debts** [1] **9:**5

**december** [1] **5:**19

**decide** [2] **5:**3 **21:**18

**decided** [6] **4:**4 **23:**4 **24:** 10 **26:**5,6 **27:**15

**decides** [1] **21:**24

**decision** [4] **18:**22,23 **26:** 17 **27:**2

**decisions** [1] **24:**15

**declaratory** [1] **16:**8

**deemed** [2] **23:**1,6 **25:**21

**deep** [1] **38:**7

**defendant** [5] **3:**17 **7:**18 **8:**21 **12:**7 **25:**11

**defendants** [10] **5:**12,14, 17 **8:**2,25 **17:**1,25 **18:**2, 10 **20:**5

**defendants'** [1] **17:**3

**defenses** [1] **29:**19

**defer** [1] **37:**12

**delay** [1] **34:**12

**demarcation** [1] **23:**10

**depends** [1] **39:**13

**deputy** [2] **3:**1 **34:**17

**description** [1] **38:**16

**design** [1] **37:**24

**desk** [1] **13:**17

**despite** [1] **20:**1

**determine** [4] **4:**2 **17:**13

**determined** [1] **18:**24

**didn't** [4] **20:**17 **21:**23 **22:** 5 **29:**8

**difference** [1] **30:**9

**different** [7] **11:**7 **14:**10,

12 **16:**3 **21:**25 **36:**25 **39:** 11

**difficult** [2] **34:**3,3

**dig** [1] **40:**2

**diligence** [1] **37:**5

**directed** [2] **12:**25 **32:**25

**direction** [2] **7:**3,4 **24:**15

**disappointed** [1] **39:**9

**discharge** [12] **6:**1 **8:**20 **10:**14 **15:**14,18,18,25 **16:** 2,6,16 **24:**11 **30:**7

**discharged** [2] **12:**3,17

**disclose** [6] **6:**21 **11:**5 **15:**13 **17:**19 **25:**12 **29:**8

**disclosed** [2] **25:**8 **36:** 14

**discoveries** [1] **20:**5

**discovery** [10] **9:**25 **15:** 5 **20:**6 **27:**7,8 **30:**25 **31:** 24 **32:**2 **39:**22,25

**discretion** [3] **14:**3,16 **18:**12

**discussing** [1] **31:**2

**dismiss** [17] **3:**23 **4:**14 **5:** 11,18 **6:**14 **10:**5 **12:**22,23, 24 **13:**10 **14:**19 **25:**21 **28:** 21 **29:**25 **32:**13 **33:**4,7

**dismissal** [4] **29:**2,2 **30:** 13 **41:**3

**dismissed** [10] **6:**18 **11:** 20 **15:**8 **16:**17 **23:**22,23, 24 **24:**1 **25:**10,16

**dispositions** [1] **16:**25

**disputed** [2] **12:**25 **32:** 23

**distinction** [1] **21:**6

**distributions** [1] **36:**20

**district** [4] **8:**19 **20:**3 **23:** 20 **30:**1

**diverted** [3] **9:**5,15 **12:**2

**divide** [1] **20:**24

**docket** [4] **17:**2 **36:**1 **42:** 15,16

**doctor** [1] **31:**6

**doctors** [1] **19:**21

**document** [1] **33:**7

**documentary** [1] **6:**4

**documents** [1] 36:18

**doesn't** [8] 21:16,17,20 22:5,9,14 25:25 37:23

**doing** [4] 20:3 27:17 32:2 37:19

**dollars** [4] 11:5 15:13,20 21:9

**don't** [15] 10:8,19,22 13:22 17:8,8 26:17 30:11 31:18 33:1,2 35:18 39:21 40:24 41:25

**done** [5] 4:8 20:8 21:7 27:3,5

**down** [3] 5:17 29:20 42:1

**doyaga** [1] 35:17

**due** [1] 37:5

**during** [2] 8:14,16

**duty** [1] 37:22

### E

**each** [3] 3:6 22:11 34:21

**eager** [1] 4:13

**eastern** [1] 8:19

**economy** [1] 28:2

**ecp** [20] 3:18,20 5:13,16,24 6:19 9:2,4,12,14,20,22,24 10:11,16 16:14 28:19 35:7,10 38:15

**ecp's** [7] 7:9 10:5,15,15 12:23 14:19,20

**efficient** [1] 4:10

**efforts** [1] 34:12

**either** [4] 14:7,9 21:22 26:16

**elected** [1] 18:14

**electronic** [1] 43:16

**eliminates** [2] 30:14,15

**employees** [1] 10:15

**enclosed** [1] 21:4

**encourage** [1] 30:10

**end** [3] 8:5,7 29:21

**enforcement** [1] 35:25

**engage** [1] 7:16

**engaging** [1] 40:25

**enjoined** [1] 29:1

**enough** [2] 17:12 39:6

**entered** [5] 4:5 6:1 8:20

**15:**19 25:15

**entire** [2] 25:19 27:22

**entities** [10] 9:2 11:17 22:10 29:7,8,9 36:13,15,17,20

**entitled** [1] 10:13

**entitlement** [2] 38:21,21

**entity** [1] 22:18

**equally** [2] 22:18 37:20

**equitable** [4] 15:11,12 16:7 32:19

**equitably** [1] 9:3

**equity** [1] 15:14

**error** [1] 40:7

**erudite** [1] 25:9

**essentially** [1] 15:16

**establish** [6] 9:9,11,16 10:20 12:15 17:19

**established** [2] 17:20 38:19

**estate** [2] 36:15 37:22

**et** [1] 3:2

**even** [17] 4:15 6:9 7:16 8:8 9:15 10:19 12:23 14:19 15:23 22:21 30:15 31:9,13 32:23 33:1 34:6 39:10

**event** [1] 4:13

**everyone** [1] 3:8

**everything** [8] 5:3 7:8 15:1 20:9,17,17 28:3 39:15

**evidence** [3] 14:14 31:12,17

**evidentiary** [1] 23:11

**exactly** [1] 25:6

**example** [1] 36:19

**except** [1] 31:23

**exercise** [1] 10:8

**exhibits** [1] 6:4

**existence** [2] 9:24 12:15

**expecting** [1] 41:9

**express** [1] 38:14

**extend** [1] 27:25

**extensive** [1] 18:20

**extent** [8] 17:1,14 22:17

24:9,10 26:22 29:22 32:16

**extraordinary** [1] 10:13

**extrinsic** [1] 14:14

### F

**face** [1] 15:24

**facing** [1] 31:16

**fact** [6] 9:14 10:16 12:25 15:8 21:10 32:23

**facts** [3] 15:6 17:14 26:9

**factual** [2] 13:2,7

**factually** [1] 23:1

**failed** [3] 5:2 11:5 17:19

**failing** [1] 15:12

**failure** [2] 16:17 17:4

**faith** [3] 20:11 27:12,18

**fake** [1] 20:15

**family** [4] 10:1 19:16 20:13 29:6

**father** [3] 7:5 9:1 35:6

**father's** [1] 19:17

**fear** [1] 25:23

**federal** [9] 8:19 11:19,20,23 29:3 30:1 32:14 33:6 36:19

**feed** [1] 37:22

**felt** [2] 20:22 31:3

**few** [2] 3:22 33:20

**fights** [1] 22:12

**figure** [2] 32:3 42:1

**file** [2] 37:9 42:25

**filed** [17] 5:12,22,23 6:15 8:16 19:25 20:1,8,20 23:8 25:13,13,15 27:21 30:11 38:4,5

**files** [1] 13:17

**filing** [7] 6:6,16 7:5 16:15 17:20 20:14,15

**finally** [3] 15:10 16:12,14

**financial** [1] 37:6

**find** [1] 41:18

**finding** [1] 24:15

**fine** [3] 14:7 29:3 41:15

**finish** [1] 25:1

**firm** [1] 37:25

**first** [11] 4:20 5:18 7:14

**17:**18 21:16 24:24 27:12 28:18 30:6 33:24 41:10

**flavor** [1] 8:12

**focus** [1] 30:9

**focused** [1] 42:11

**focusing** [1] 24:8

**followed** [1] 38:8

**following** [1] 3:1

**footnote** [4] 17:18,22 18:6,9

**footnotes** [1] 32:25

**foregoing** [1] 43:15

**forth** [1] 10:9

**forthcoming** [1] 31:8

**forthright** [1] 15:20

**forward** [6] 4:24 8:9 26:19 30:15 39:9 40:1

**four** [3] 25:24 29:8 36:16

**fourth** [2] 7:11,16

**fraternity** [1] 27:15

**fraud** [5] 15:14 20:15

**fraudulent** [6] 9:10 10:12 12:5,6 32:11,12

**friedberg** [71] 3:5,17,19,20 5:7,9,13,15,16,22 7:22,25 8:4,6 10:24 11:2,10,14,20,24 12:12 13:6,9,18,21,23,25 14:4,7,11,13,18 16:1,12,14 17:9,17,24 18:4,7,9,16,18,24 19:1 24:25 28:17,18,19,25 29:5,16 30:3,10,18,22,23,24 31:22,23 32:1 33:9,12,14 34:19 35:7,9,9 40:20 41:8,21

**frivolous** [1] 38:7

**front** [2] 16:23 27:3

**full** [3] 7:24 19:4 39:21

**fully** [3] 6:14 14:19 16:10

**fundamental** [1] 10:2

**funding** [1] 6:22

**funds** [1] 12:2

**further** [7] 18:19,24 29:1 32:15 33:10,14 36:3

### G

**game** [1] 31:1

**gave** [1] 33:20
**general** [2] 31:11,21
**gentleman** [1] 38:2
**getting** [1] 27:6
**give** [7] 18:22 20:18 21:
  20 26:16 30:21 36:10 43:
  6
**given** [1] 41:1
**giving** [1] 18:13
**glasser** [3] 25:9,10,12
**glasser's** [1] 26:11
**glib** [1] 19:12
**gordon** [1] 5:24
**got** [6] 6:21 11:14 14:22
  28:4,8 38:7
**graciously** [1] 6:17
**granted** [2] 17:5 33:8
**grateful** [1] 34:1
**great** [2] 43:5,7
**ground** [1] 15:3
**guess** [7] 6:1 14:9 16:10,
  22 17:5 30:12 42:16
**guyana** [1] 29:11

## H

**hadn't** [1] 31:2
**handle** [1] 23:5
**hands** [7] 11:4 15:12,15
  29:20 32:18,20 33:5
**happen** [4] 21:20 22:15
  34:5 36:23
**happened** [7] 25:7,18,
  20,23 31:5,6 34:5
**happening** [2] 25:20 27:
  11
**happily** [2] 31:8 32:13
**happy** [4] 29:1,1 33:17
  39:8
**harbor** [1] 20:23
**haven't** [1] 24:9
**he's** [8] 6:21,21,25 7:7,9
  14:25 21:21 30:19
**hear** [9] 4:13,17,20 5:14
  7:23 18:25 26:14 39:20
  40:23
**heard** [2] 38:24 39:6
**hearing** [14] 3:22 4:1,1,2

5:18 10:7 23:11 33:22 35:
  11,20 36:8 40:6 41:24 42:
  24
**hell** [1] 19:22
**help** [3] 4:23 18:21 31:14
**helped** [1] 18:20
**helpful** [7] 4:22,23 10:8
  29:23 33:11,25 41:5
**helping** [1] 31:13
**herring** [1] 21:10
**herrings** [1] 28:14
**hideous** [1] 21:8
**hiding** [4] 21:8 28:13,13,
  14
**highly** [1] 6:24
**himself** [1] 22:10
**hold** [2] 31:12 33:21
**honor** [72] 3:11,19 4:25
  5:9,15 6:24 7:14,20 9:8,
  19 11:3,10,24 13:9 14:4,
  7,18 15:5,10 17:18 18:7,
  16 19:1,11 20:25 21:2,14
  22:2,4,6,14,19 23:4,10,
  21 25:6,20 26:1,9 27:5,
  11,15,21 28:3,11,18 29:6,
  16 30:17,22 31:8 32:6 33:
  9 35:9,15 36:7,9,10,12
  37:7,13,14 38:20,22 39:3
  41:7,15,21 42:3,21 43:2,
  7
**hope** [1] 37:6
**hopefully** [2] 37:10 40:
  23
**hoping** [1] 8:8
**horrible** [1] 19:24
**hospital** [1] 6:8
**hours** [1] 38:1
**however** [1] 4:18

## I

**i'd** [5] 17:21 28:18,20 35:
  11 40:16
**i'll** [10] 4:20 11:2 12:12
  16:21 19:2 30:21 40:6,10,
  23,23
**i'm** [30] 4:9,13 5:17 7:23
  13:16,24 15:23 18:7 21:7,

25 24:8 26:14 27:2 28:24
  32:11 33:6,15,17 35:12
  38:16 39:8,23 40:11,11,
  11,12 41:13,16 42:5,15
**i've** [2] 19:2 39:6
**identified** [1] 37:3
**ignores** [1] 10:16
**ii** [6] 3:20 5:13,16 28:19
  35:7,10
**imagine** [2] 6:24 40:21
**immediately** [1] 27:13
**immense** [1] 6:3
**implicated** [1] 24:13
**important** [6] 9:19 11:3
  14:21 17:12 29:22 30:15
**imposed** [1] 22:20
**impossible** [1] 41:17
**improperly** [1] 21:11
**inaccuracies** [2] 10:6,9
**inc** [1] 43:22
**included** [1] 12:15
**including** [2] 10:14 12:5
**incorrect** [1] 40:11
**indeed** [1] 15:17
**indicate** [2] 26:21 35:22
**indicated** [1] 29:24
**indiscernible** [13] 17:
  16 19:19 20:12 21:17 22:
  21,21,22 25:9,16 26:6 27:
  4 33:23 42:2
**individual** [2] 14:23 18:
  10
**individuals** [1] 15:7
**inferences** [1] 13:4
**information** [3] 37:4,9,
  10
**injunction** [18] 15:25 16:
  2 22:7,11,23 24:6,7,11,
  14,17,17,19 26:1,3,6 28:
  12,21 30:7
**injunctions** [1] 16:7
**injunctive** [1] 11:12
**inquiry** [1] 28:20
**instructed** [1] 27:14
**instrument** [1] 7:9
**intended** [1] 9:24
**intent** [3] 29:18,18 32:14

**intention** [2] 28:22,25
**interest** [5] 26:21 36:14,
  15,16 37:21
**interested** [1] 24:23
**interestingly** [2] 20:10,
  10
**invest** [1] 7:1
**investigating** [1] 36:17
**investor** [1] 6:25
**investors** [1] 6:23
**invite** [1] 34:10
**inviting** [1] 41:13
**involving** [1] 40:10
**issue** [12] 8:17 20:20,21
  21:15 22:1 23:1 26:17 28:
  12,13,15 30:6 41:4
**issued** [1] 26:4
**issues** [8] 4:15,15,16 10:
  2 12:25 22:16 23:3 32:23
**it'll** [1] 41:25
**it's** [47] 9:16 10:19 11:3
  12:13 13:1,7 14:6,7 15:
  23,24 16:3 18:8,20 19:16
  21:13 23:2,9,11 26:20 27:
  19,20 28:8,14,17 29:15,
  18,23 30:7,19 31:3,7,8
  32:11,12 33:10,24 34:8
  35:22,22 37:8 38:7,20 39:
  17 41:17,24 42:8,18
**item** [1] 4:3

## J

**j&j** [1] 43:22
**jackson** [3] 4:6 41:19,23
**january** [3] 7:12,14 8:1
**jeremy** [4] 3:19 5:15 28:
  19 35:9
**job** [2] 14:12 37:19
**joseph** [2] 19:15 35:6
**judge** [14] 3:8 25:7,9,9,9,
  10,10,12,12,19 26:11 28:
  20 34:5 35:2
**judge's** [1] 25:8
**judges** [1] 34:15
**judgment** [14] 7:10 13:
  11 14:15 15:3 18:3,12 21:
  16,19,22,24 22:1 32:24

38:19 41:11
**judgments** [1] 38:22
**judicial** [4] 23:12,13 26:
10 29:12
**june** [1] 43:22
**jurisdiction** [2] 17:5 22:
14

## K

**k-1s** [1] 36:20
**karamvir** [2] 3:11 35:2
**keep** [4] 38:1 39:15 40:4
42:9
**keeping** [1] 21:6
**kept** [1] 20:13
**kind** [5] 13:12 22:12 26:8
31:20 32:22
**kinds** [4] 24:12,13 35:25
40:6
**knows** [2] 11:4 36:12

## L

**lack** [1] 17:5
**lady** [1] 19:19
**lane** [1] 2:75
**language** [2] 16:4
**largely** [4] 42:11,11
**last** [4] 4:3 8:2 26:1 28:
11
**later** [1] 37:1
**law** [7] 13:1 22:2,16,16,
19 32:21 35:16
**laws** [1] 38:19
**lawsuit** [2] 22:12 27:21
**lawsuits** [3] 22:12,13 25:
24
**lawyer** [3] 27:23 34:6 37:
24
**lawyer's** [1] 40:21
**lawyers** [1] 34:15
**learning** [1] 38:8
**least** [5] 20:2 24:13,22
29:8 39:15
**legal** [2] 17:14 27:15
**let's** [8] 3:9 4:11,18,20
34:15,23 39:4 40:19
**letter** [2] 42:25 43:6

**liability** [3] 22:17,18,20
**liable** [2] 22:19 27:17
**life** [1] 30:16
**light** [2] 33:19 38:6
**limitation** [1] 28:7
**line** [2] 21:1 23:10
**list** [1] 10:6
**listening** [1] 3:15
**listing** [1] 10:7
**litigation** [3] 11:15 26:
25,25
**little** [4] 33:18,19,19 40:
24
**llc** [5] 3:20 5:13,16 35:7,
10
**loan** [5] 27:25 28:1,1,2,4
**long** [2] 5:1,20
**look** [3] 23:8 26:3 39:9
**looking** [2] 5:17 17:2
**loss** [1] 21:13
**lost** [1] 19:22
**lot** [8] 13:16 22:16 26:23,
25 27:10 34:2 40:2 41:1

## M

**made** [3] 13:13 27:12 41:
1
**maiden** [1] 2:75
**main** [7] 4:13 33:24 34:
10,15,18,24 40:4
**manage** [1] 42:15
**management** [1] 3:24
**manner** [1] 5:2
**many** [1] 24:14
**mark** [3] 4:7 35:22 36:3
**marked** [1] 40:7
**mary** [3] 43:14,20,21
**materialize** [1] 5:2
**matter** [13] 4:24 6:23 16:
25 17:5 21:5,10,20 26:2 35:
22 39:14 40:9 42:11,19
43:17
**matters** [7] 3:1,22 6:13
10:8 35:19 40:4 42:10
**mean** [2] 22:2 29:19
**means** [1] 15:23
**meat** [1] 11:15

**mediation** [14] 7:4,11,
17,17 8:1,7,14,16 19:23
20:9,11 27:1 31:1,9
**medications** [1] 19:21
**meditations** [1] 7:7
**meeting** [1] 9:17
**member** [3] 36:24 37:1,
2
**members** [2] 20:13 36:
21
**mention** [2] 10:19 28:5
**mentioned** [3] 9:15 25:
7 28:6
**merit** [1] 33:3
**merit-based** [1] 33:3
**merits** [1] 40:3
**mess** [2] 4:11 27:24
**might** [4] 16:21 21:17 32:
23,24
**million** [2] 5:25 6:21
**millions** [3] 11:5 15:13,
20
**mind** [1] 27:8
**mine** [1] 19:19
**minutes** [1] 33:20
**miscarriage** [3] 8:23 21:
11,12
**mistake** [1] 11:9
**mistaken** [1] 16:3
**moment** [1] 40:8
**monetary** [1] 7:9
**money** [5] 7:1,1 9:14 37:
25 38:2
**month** [1] 33:16
**month's** [1] 20:2
**months** [3] 5:23 6:16,21
**morphing** [1] 21:15
**most** [2] 14:21 37:12
**motion** [50] 3:23,25 4:2,
14 5:11,18 6:14 10:5 12:
9,21,23,23,24 13:10,11,
20 14:15,19 15:2,3 16:23
17:3,6,7,11 18:2,11,15
20:7 21:16,18,25 22:25
26:2 28:17 30:19 32:24
33:4,5 35:24 36:3 37:7,8,
21 38:24 39:2 40:1,7 42:

4,13
**motions** [2] 26:5,6
**movant** [1] 3:17
**movants** [1] 5:12
**move** [4] 8:9 27:12 30:9
39:25
**moved** [2] 20:13 21:22,
23 29:11
**moving** [4] 4:24 10:4 13:
19 17:11
**ms** [44] 3:4,10,12,14,23 4:
6 6:1,10,12 7:5,12 8:11,
21,23,24 9:3,25 10:4,10,
16,17 11:4 12:14,19,21
17:19 19:19,24 23:20 25:
14 27:19 28:22,25 29:8
30:16 32:7,13 34:19 35:3
36:18,24 37:18 41:19,23
**much** [7] 5:5 26:25 35:
18 42:17,21 43:2,8
**multiple** [1] 36:13
**myself** [3] 5:24 6:18 7:
23

## N

**name** [6] 3:6 11:8 25:8
27:14,16 34:21
**named** [3] 5:13 10:23 19:
23
**naming** [1] 8:21
**narrative** [1] 23:9
**nathan** [4] 3:20 5:16,24
28:19
**national** [1] 38:14
**nature** [2] 15:11 26:7
**nearly** [1] 6:20
**necessary** [2] 32:16 36:
2
**necessity** [1] 22:8
**need** [8] 22:9 32:20 35:
18 36:4,18 39:22,24 41:
24
**needed** [2] 31:4 32:3
**nefarious** [1] 37:24
**negotiate** [1] 31:4
**never** [2] 9:14 15:19
**new** [4] 8:15 22:1,13,19

**next** [6] 33:21 37:7 39:17
41:14 42:7,14
**nine** [1] 6:16
**nominally** [1] 9:3
**none** [1] 13:13
**nor** [1] 9:13
**norton** [49] 3:2,4,4,10,12,
14,15 6:10,12 7:8,10,12
8:10,11,11,21,23,25 9:3,
3,25 10:17 11:5 12:7,19
17:19 19:14,20,25 23:20
25:14 27:20,23 28:4,22
29:1,8,10 30:2 32:13 34:
18,19,19 35:3,6 36:18,24
37:2 40:9
**norton's** [12] 3:23 6:1 7:
5 10:4,10,16 12:14,21 19:
15 30:16 32:7 37:18
**note** [6] 5:12,17 18:6 24:
25 35:5,19
**noted** [1] 30:8
**nothing** [12] 5:4,9 6:8 7:
6 8:10 20:4,8 21:9,9 33:
14 34:12 35:10
**notice** [4] 23:12,13 26:
10 40:1
**noting** [2] 32:25 33:1
**number** [6] 3:3 4:3 17:2
31:10 34:18 35:20
**numbers** [2] 3:2 34:17
**numerous** [4] 6:3,7 10:
6 32:7

## O

**o'clock** [1] 4:9
**object** [1] 37:21
**objected** [1] 38:15
**objection** [8] 28:24 37:
18 38:4,5,7 39:2 42:9,19
**obtain** [1] 9:24
**obtaining** [1] 7:1
**obviously** [4] 7:1 31:3
34:2 40:2
**october** [1] 5:22
**odds** [1] 33:18
**offending** [2] 24:16,18
**offer** [2] 8:15 31:20

**officer** [1] 22:20
**offices** [1] 35:16
**official** [1] 43:15
**often** [2] 31:11 41:17
**old** [1] 32:12
**once** [5] 11:14 13:6,9 21:
23 32:6
**one** [14] 7:22 16:22 17:22,
24 18:3 19:17 22:6 23:9,
9 24:13 25:2 28:3 32:8
36:15
**ongoing** [11] 9:11,16,20
11:11,11,25 12:18 16:15
32:10,17 34:12
**only** [6] 12:15 19:17 26:4
37:2 39:14 40:23
**onward** [1] 23:15
**open-ended** [1] 21:4
**operating** [4] 36:21,23,
23,25
**opportunity** [2] 4:16 33:
19
**opposed** [3] 10:25 16:5
17:14
**opposition** [1] 12:21
**oppressed** [1] 19:14
**oral** [2] 18:23 26:16
**order** [14] 4:4,23 6:1 8:
20 10:14 15:14,18,19 16:
6,16 23:5 36:1,1 37:5
**ordered** [2] 4:8 35:23
**orders** [1] 39:8
**original** [4] 6:6,16 10:2
16:23
**other** [25] 8:25 9:1,4,10
10:12 11:16 14:14 15:24
18:13 20:13,14 21:20 22:
18 23:13 24:14 25:8 26:
18 27:19,20,22 31:14 36:
16 37:10 40:21 42:11
**others** [1] 9:10
**otherwise** [3] 25:20 26:
4 27:16
**out** [19] 6:2 15:6,8 17:21
24:11 25:22 26:22,22 27:
18 29:16 32:4,6 33:16 36:
9 41:4,18 42:2,5,14

**outline** [1] 5:18
**over** [3] 5:14 6:14 14:20
**overwhelming** [1] 33:3
**own** [2] 34:12 38:22
**owned** [2] 9:2,3
**owners** [1] 6:22

## P

**page** [1] 17:22
**pages** [1] 40:1
**paid** [1] 29:22
**papers** [4] 13:19 14:16
17:11,20
**paperwork** [1] 5:4 20:
14 26:12
**paragraphs** [2] 9:6,21
**paralleling** [1] 20:12
**part** [6] 9:4 10:19 11:3,6,
10 27:22
**participated** [2] 7:6 8:
11
**participation** [1] 10:17
**particular** [1] 25:3
**particularly** [1] 26:20
**parties** [13] 3:5 4:24 7:3,
11 16:24 26:23 27:3 31:
11,23 34:20 39:7 40:10,
25
**parties'** [1] 24:23
**partner** [1] 5:24
**party** [5] 26:20,21 32:16
37:4,10
**party-in** [1] 37:20
**past** [4] 10:4 24:11 28:8
34:4
**path** [2] 26:19 29:21
**pawn** [1] 19:15
**payment** [1] 9:2
**pending** [5] 5:1,19 8:18
23:19,21
**penny** [1] 9:14
**people** [3] 29:17,17,17
**period** [1] 37:8
**permanent** [1] 28:2
**person** [1] 21:20
**personal** [4] 8:22 22:17,
18,19

**personally** [3] 7:10 8:24
32:15
**perturbed** [1] 25:11
**pervading** [1] 10:2
**petition** [1] 23:7
**physicians** [1] 6:9
**pieces** [1] 14:14
**pierce** [2] 14:24 22:8
**piercing** [1] 22:5
**pile** [1] 13:17
**place** [3] 9:9 12:5 31:2
**places** [1] 17:17
**plain** [1] 32:5
**plaintiff** [2] 19:20 31:18
**plaintiff's** [1] 4:20
**plate** [1] 7:19
**plausible** [5] 12:9 13:4
17:15 24:10 33:7
**plead** [2] 14:16,17
**pleading** [3] 10:4 21:5
32:25
**pleadings** [5] 9:7 14:6
19:3 21:3,4
**please** [4] 3:5,9 19:11
34:21
**pled** [2] 9:11 10:19
**plenty** [1] 17:12
**pllc** [1] 35:16
**point** [17] 6:2,19 8:18 16:
11 17:11,21 18:5,17 24:
15 28:23 29:1 30:24 32:6
33:12 36:3 39:7 40:13
**polito** [3] 43:14,20,21
**posed** [1] 12:8
**position** [3] 18:22 26:17
39:20
**positions** [1] 39:11
**possession** [1] 38:22
**post-petition** [8] 9:25
11:16,25 12:4,19 20:22
23:2,6
**potential** [1] 30:5
**powerful** [1] 27:24
**prayer** [1] 10:18
**pre** [1] 23:6
**predicate** [3] 9:9,17 10:
20

**prejudice** [13] **23**:24,25
**24**:1 **25**:17,22,23 **28**:22
**29**:2,25 **30**:13 **32**:14 **36**:4
**41**:3
**preliminary** [1] **10**:7
**prepare** [2] **27**:9 **39**:22
**prepared** [4] **18**:21 **20**:9
**29**:24 **33**:15
**preparing** [1] **40**:6
**pre-petition** [5] **10**:11
**12**:1,14 **20**:21 **23**:3
**presence** [2] **19**:17 **35**:5
**present** [1] **9**:23
**presently** [1] **38**:24
**pretrial** [6] **3**:24 **4**:12,19
**5**:8 **23**:5 **39**:23
**pretty** [3] **13**:1,17 **16**:18
**prevent** [2] **9**:4 **10**:3
**prior** [1] **7**:12
**probably** [2] **29**:15 **31**:
19
**problem** [2] **28**:5 **34**:15
**procedurally** [1] **41**:8
**procedure** [1] **33**:6
**proceeding** [5] **3**:3,25 **4**:
12 **17**:3 **26**:4
**proceedings** [2] **35**:4
**43**:16
**proceeds** [1] **30**:5
**process** [2] **4**:17 **8**:5
**procuring** [1] **15**:14
**productive** [5] **5**:2 **26**:
23,25 **31**:12 **33**:25
**productively** [1] **40**:25
**profess** [1] **26**:21
**professionalism** [1]
**39**:12
**professions** [1] **39**:13
**progress** [1] **41**:2
**promised** [1] **28**:1
**proof** [14] **6**:7,11 **7**:13,15,
16,18 **8**:7,8 **20**:15 **37**:18,
21 **38**:4,6,7
**property** [10] **3**:18,20 **5**:
13,16 **9**:2 **20**:16 **28**:19 **35**:
7,10 **38**:15
**propose** [2] **39**:15 **40**:11

**proposing** [1] **41**:16
**prosecuting** [1] **20**:13
**prospect** [1] **27**:2
**prospective** [3] **11**:12
**30**:8 **41**:2
**provide** [1] **7**:13
**provided** [1] **8**:7
**public** [1] **6**:23
**purely** [1] **9**:16
**purposes** [1] **9**:17
**pursuant** [3] **26**:4 **38**:18
**41**:11
**pursue** [1] **28**:25
**pursuing** [2] **28**:22 **32**:
15
**put** [7] **13**:10,12 **14**:25 **18**:
14 **31**:15 **42**:1,10

## Q

**question** [18] **4**:21 **7**:22
**11**:7,7 **12**:8 **13**:5,8 **14**:6
**15**:22 **17**:6,12 **24**:24 **26**:
18 **30**:14,16 **34**:3,4 **41**:2
**questions** [4] **16**:21 **26**:
12 **34**:1 **40**:6
**quick** [2] **41**:7,8
**quite** [1] **34**:12

## R

**raise** [2] **29**:19 **32**:23
**raised** [1] **38**:1
**rarely** [1] **39**:8
**rather** [1] **32**:4
**reach** [1] **29**:12
**reaction** [1] **19**:25
**reading** [1] **33**:6
**ready** [2] **7**:15 **8**:8
**real** [2] **19**:13 **31**:5
**reality** [1] **21**:9
**really** [19] **7**:20,23 **8**:9,13
**9**:3 **10**:7,8 **12**:13,25 **14**:9,
21 **25**:20 **29**:10 **31**:5,6 **32**:
15,21 **35**:10 **41**:2
**reason** [4] **20**:8 **24**:6 **25**:
25 **36**:22
**reasonable** [1] **13**:3
**reasons** [1] **7**:18

**recall** [1] **13**:22
**received** [3] **6**:8 **7**:18 **36**:
19
**recognize** [1] **32**:19
**recommendation** [1]
**31**:15
**record** [12] **3**:9 **4**:18 **6**:24
**19**:5 **26**:15 **29**:24 **30**:20
**33**:16 **34**:24 **35**:13 **38**:12
**43**:1
**recording** [1] **43**:16
**records** [1] **17**:18
**recoupment** [1] **28**:6
**recover** [5] **9**:13 **12**:2,3,
4,16
**red** [2] **21**:10 **28**:14
**referred** [1] **10**:25
**refiled** [1] **11**:21
**refused** [3] **27**:25,25 **28**:
4
**refutation** [2] **13**:12 **15**:
1
**refute** [1] **12**:22
**register** [1] **38**:13
**regular** [1] **39**:19
**rehash** [1] **19**:2
**reinstated** [3] **24**:3,5,6
**related** [2] **14**:21 **40**:9
**relating** [2] **10**:11 **11**:25
**relative** [1] **32**:4
**relief** [19] **10**:18,22 **11**:9,
12,18,19,22 **12**:9 **15**:10
**16**:7 **17**:4 **24**:12 **26**:7 **30**:
6 **32**:19 **33**:8 **35**:25 **36**:3
**41**:2
**rely** [1] **19**:3
**remainder** [1] **16**:18
**remains** [4] **6**:19,20 **14**:
21 **36**:1
**remarks** [1] **28**:11
**remedy** [1] **15**:12
**remember** [5] **13**:16 **34**:
21 **40**:14,15,17
**remind** [1] **3**:5
**renew** [1] **27**:25
**rent** [2] **9**:8,9 **10**:18
**rents** [6] **9**:2,5,13,15 **10**:

11 **38**:21
**reopened** [1] **36**:13
**repeat** [2] **7**:14 **12**:13
**repeatedly** [1] **9**:20
**reply** [1] **28**:17
**reported** [1] **24**:15
**reports** [1] **6**:9
**represent** [1] **39**:10
**representing** [1] **34**:20
**reputation** [1] **6**:25
**request** [5] **25**:25 **31**:19
**36**:5 **42**:12,23
**requested** [3] **6**:7 **24**:21
**27**:13
**requesting** [1] **24**:7
**required** [2] **13**:15 **14**:2
**requires** [1] **37**:5
**rescheduled** [2] **8**:3 **27**:
1
**resolution** [1] **17**:1
**resolving** [1] **12**:25
**respect** [3] **9**:12 **30**:13
**35**:25
**respectfully** [1] **42**:23
**respond** [4] **19**:6,10 **28**:
20 **31**:19
**response** [3] **10**:5 **12**:21
**19**:7
**responsiveness** [1] **34**:
1
**rest** [4] **16**:20 **19**:2 **29**:6
**32**:3
**restate** [1] **16**:20
**restore** [1] **36**:4
**restrain** [1] **7**:23
**re-sued** [1] **29**:6
**resume** [1] **27**:3
**resumed** [2] **24**:17,19
**retrospective** [1] **30**:8
**returns** [1] **36**:19
**rico** [30] **8**:18,19,21,24 **9**:
11,12,16,16,20,21,24 **11**:
11 **12**:15,20 **16**:15,15 **20**:
25 **21**:3,3,7 **22**:12 **23**:8,
14,14,19 **25**:10 **26**:10 **32**:
9,10,17
**ridiculous** [1] **22**:14

**rife** [1] 10:6
**risk** [2] 30:16 32:4
**roles** [2] 15:8,9
**room** [6] 33:21 34:11 40: 14,17,17 41:14
**rosen** [2] 35:16 37:25
**route** [1] 19:16
**rule** [19] 13:20 14:10,10 17:7 18:6,15 20:6,7 21:1 22:3,25 23:11 26:3 31:1 33:1,1,5 34:6 41:11
**rules** [2] 33:6 38:19
**ruling** [2] 26:11,16
**rulings** [1] 16:8
**run** [1] 16:19

## S

**sacred** [1] 37:22
**safe** [1] 20:22
**sale** [5] 4:3 20:16 32:8 35:21 40:7
**same** [6] 4:21 18:9 25:18 30:10 42:10,20
**sanctions** [1] 16:5
**satisfied** [1] 12:20
**satisfy** [1] 39:6
**saying** [2] 14:25 29:15
**says** [3] 22:3,13 37:20
**schedule** [1] 39:25
**scheduled** [4] 3:22 5:19 7:11 38:24
**schedules** [1] 11:6
**scheduling** [1] 42:11
**scheme** [6] 9:8,9,13,17 10:12,18
**scope** [2] 30:5,5
**seat** [1] 40:21
**second** [5] 6:15 11:3 17: 22,24 25:21
**section** [3] 15:16 16:2,9
**see** [13] 3:14 17:8,8 20: 25 22:3 24:9 33:18 34:9, 11 37:18,22 38:5,12
**seeing** [1] 19:21
**seek** [10] 9:12,13 10:22 11:8,12,14,18,18,22 36:2
**seeking** [12] 5:24 10:17

**11:**15 **12:**1,2,3,4,16 **15:** 12 **16:**6,7 **30:**25
**seeks** [1] 15:10
**seem** [1] 36:24
**seems** [1] 36:25
**seen** [3] 7:15 29:7 31:6
**sense** [5] 21:18 37:12 39: 13 40:22 42:1
**sent** [2] 23:5 29:11
**separate** [2] 22:10,10
**separately** [1] 3:25
**separation** [1] 21:1
**session** [9] 7:12,17,17 8: 1,2,14,16 19:23 27:1
**sessions** [1] 7:4
**set** [5] 10:9 15:6 26:15 33:16 39:25
**setoff** [1] 28:6
**sets** [1] 21:24
**setting** [1] 7:19
**settle** [2] 8:15 27:12
**settlement** [4] 27:18 31: 3,13,20
**settling** [1] 8:10
**several** [1] 17:17
**sham** [1] 38:4
**she's** [6] 10:13 11:10 19: 21,21 28:13 37:1
**short** [1] 43:6
**show** [1] 36:24
**shown** [1] 38:4
**shows** [2] 37:1 38:13
**side** [1] 31:14
**sides** [1] 26:24
**simple** [3] 28:9,12 32:5
**simplified** [1] 16:25
**simply** [9] 9:24 10:19,25 12:4,16 32:3 41:4
**since** [1] 6:6
**situation** [1] 30:8
**small** [2] 7:22 38:6
**sold** [1] 36:14
**solely** [1] 15:17
**solve** [1] 34:14
**somehow** [1] 14:23
**someone** [1] 11:8
**sometimes** [2] 4:10 34:

14
**somewhere** [2] 18:8 29: 20
**soon** [2] 39:18 42:8
**sorry** [8] 4:9 13:24 18:7 25:6 28:24 32:11 40:12 42:5
**sort** [2] 7:19 36:10
**sound** [1] 43:16
**sounds** [1] 11:9
**sources** [1] 6:22
**speaker** [1] 33:23
**speaking** [2] 3:6 34:21
**special** [1] 20:4
**speculating** [2] 20:21 41:9
**spinning** [1] 38:1
**sponte** [1] 21:18
**stabbed** [1] 27:10
**stage** [8] 10:4 22:25,25 23:11,12 31:13,24,25
**stalemate** [1] 27:6
**standards** [1] 34:13
**stands** [1] 7:20
**start** [1] 4:18
**started** [1] 27:24
**starting** [1] 17:11
**state** [9] 3:6 11:21 12:6 16:17 17:4 27:23 32:11 34:21 36:19
**stated** [3] 12:10 13:5 20: 19
**statement** [1] 31:21
**statements** [2] 6:9 14: 22
**states** [1] 9:22
**stating** [1] 33:7
**status** [1] 36:10
**statute** [2] 28:7 32:12
**statutory** [2] 9:17 16:4
**stay** [2] 16:4,5
**staying** [1] 5:7
**step** [1] 29:4
**still** [6] 10:3 18:23 23:19 32:12 36:17,18
**stipulation** [2] 25:15 30: 11

**stong** [1] 3:8
**stood** [2] 7:15 8:8
**stop** [6] 20:2,3,12,14,15 25:25
**stopped** [2] 24:16,19
**stopping** [1] 20:16
**story** [1] 25:19
**strenuously** [1] 39:11
**strong** [1] 19:15
**sua** [1] 21:18
**subject** [6] 8:20 12:6 17: 5 32:9,10,10
**subsequent** [1] 7:4
**subsequently** [2] 6:10 8:22
**substantive** [1] 40:18
**sue** [1] 25:24
**sued** [2] 23:15 29:9
**suffered** [1] 26:23
**suffering** [1] 19:20
**suggest** [1] 32:18
**suggestion** [1] 26:18
**suit** [1] 6:21
**suite** [1] 2:75
**summary** [11] 13:11 14: 15 15:2 18:3,11 21:15,19, 22,24 22:1 32:23
**support** [5] 13:4,10 17: 15 31:16,17
**supported** [1] 6:4
**supposed** [1] 28:1
**surprise** [1] 7:7
**system** [2] 31:1 39:12

## T

**tale** [1] 23:9
**talked** [1] 20:18
**talks** [3] 5:1 16:4 26:3
**tanked** [1] 28:2
**tax** [1] 36:19
**tdbank** [1] 18:1
**tellingly** [2] 7:5 9:14
**testing** [2] 14:6 32:25
**that'll** [1] 42:10
**that's** [48] 4:5,8,9,22 5:4, 11,23 7:19 8:17 10:20 12: 20 13:5,8 14:2 17:11 20:

8 **24:**6,8,21 **25:**1,25 **26:**9,
24 **27:**7 **28:**8,15,15 **29:**3,
13,22 **30:**18 **31:**2,7,18,20
**32:**5,22 **35:**21,21 **37:**2 **38:**
24 **39:**19 **40:**8,18 **41:**10,
15 **42:**5,7
**thema** [9] **3:**12 **19:**20,25
**27:**20 **30:**1 **34:**18 **35:**3,6
**40:**9
**themselves** [1] **26:**10
**theory** [1] **24:**22
**there's** [24] **4:**4 **5:**4 **10:**
18 **11:**17 **13:**7,13,16 **15:**1
**17:**18 **18:**20 **20:**4 **21:**1 **22:**
16 **23:**9,13 **25:**23 **26:**24
**27:**5,10 **33:**18 **34:**1 **38:**20,
21 **40:**2
**they're** [11] **10:**6 **16:**6,7
**21:**2 **22:**4 **23:**2,21 **27:**19
**29:**12 **32:**19 **38:**17
**thinking** [3] **21:**21 **25:**2
**36:**8
**third** [1] **10:**4
**though** [2] **12:**23 **14:**19
**thoughts** [1] **24:**24
**three** [4] **4:**9 **7:**4 **9:**22 **25:**
24
**thrilled** [1] **40:**23
**til** [1] **39:**4
**timeline** [1] **21:**25
**today** [12] **3:**22 **4:**16 **5:**18
**7:**7 **8:**17 **18:**21,22 **26:**15,
19 **34:**3 **35:**19 **36:**10
**today's** [1] **4:**3
**together** [3] **39:**16 **40:**4
**42:**10
**tomorrow** [1] **24:**19
**took** [4] **9:**9 **12:**5 **20:**2 **27:**
17
**tort** [2] **22:**6,8
**touch** [2] **4:**12 **41:**23
**tragedy** [2] **8:**22 **19:**13
**transcriber** [1] **43:**14
**transcribers** [1] **43:**22
**transcript** [2] **26:**11 **43:**
15
**transfer** [2] **12:**6 **32:**11,

12
**transferring** [1] **11:**16
**transfers** [3] **9:**10 **10:**12
**12:**5
**trauma** [2] **19:**21 **21:**13
**treat** [8] **13:**11,20 **14:**15
**15:**2 **18:**2,11 **21:**19,25
**treated** [1] **15:**4
**trial** [1] **27:**9
**true** [5] **13:**2,4 **14:**5 **17:**15,
21
**trustee** [14] **11:**6 **17:**20
**20:**16 **34:**20 **35:**14,17 **36:**
8,17 **37:**5,19,23 **38:**3,9
**42:**4
**trustee's** [5] **34:**9,16 **35:**
24 **42:**12,24
**truth** [1] **6:**12
**try** [3] **4:**10 **7:**23 **40:**21
**trying** [5] **13:**16 **20:**23 **29:**
13 **30:**25 **42:**15
**tsionis** [18] **34:**9,20 **35:**
14,15,16 **36:**2,7,7 **39:**14
**42:**3,3,17,21,23 **43:**2,5,7,
10
**twice** [1] **6:**11
**twist** [1] **19:**15
**two** [5] **22:**9 **24:**12,13 **32:**
25 **35:**19
**typical** [1] **21:**3

<h2 style="text-align:center">U</h2>

**u.s** [1] **29:**13
**unavailable** [1] **15:**15
**uncertainty** [1] **30:**16
**uncle** [1] **9:**1
**unclean** [6] **11:**4 **15:**12,
15 **29:**20 **32:**18 **33:**5
**uncontroverted** [1] **15:**
6
**under** [10] **13:**1 **16:**2,8
**17:**7 **20:**7 **21:**23 **22:**3 **32:**
11 **33:**5 **34:**13
**understand** [5] **3:**15 **8:**
13 **16:**10 **22:**6 **38:**15
**understanding** [1] **18:**
14

**understandings** [1] **40:**
5
**undisclosed** [1] **32:**7
**unfortunate** [1] **19:**17
**unidentified** [2] **33:**23
**40:**15
**unless** [4] **16:**19 **25:**22
**26:**12 **38:**21
**unrefuted** [1] **14:**22
**unsupported** [1] **32:**5
**until** [1] **23:**16
**untoward** [1] **32:**2
**unusual** [1] **26:**20
**unverified** [2] **14:**22 **32:**
4
**up** [5] **4:**11 **7:**2 **20:**19 **27:**
7 **31:**10
**urging** [1] **6:**17
**useful** [3] **18:**20 **29:**4 **41:**
24
**using** [3] **7:**9 **27:**19,20

<h2 style="text-align:center">V</h2>

**vacuum** [1] **31:**4
**valid** [1] **9:**5
**value** [2] **31:**10,15
**various** [2] **9:**1 **11:**17
**veil** [3] **14:**24 **22:**5,9
**verification** [1] **6:**12
**verified** [1] **6:**2
**versions** [2] **36:**21,22
**versus** [1] **3:**2
**view** [1] **40:**19
**violate** [1] **16:**16
**violated** [2] **8:**20 **28:**13
**violating** [1] **22:**11
**violation** [13] **5:**25 **10:**14
**15:**18,25 **16:**1,3,5,6 **22:**7,
8,23 **24:**11 **30:**7
**violations** [1] **26:**5
**virtues** [1] **38:**8
**volunteered** [1] **20:**11

<h2 style="text-align:center">W</h2>

**wait** [1] **39:**4
**waived** [2] **42:**13,24
**wanted** [4] **20:**9,17 **31:**7

36:9
**wants** [3] **16:**19 **37:**22,24
**waste** [1] **41:**1
**wasted** [1] **40:**24
**way** [12] **7:**19 **8:**12 **14:**7,9
**15:**4 **21:**20 **22:**15 **26:**23
**27:**19,21 **31:**11 **39:**24
**we'd** [3] **31:**8 **37:**3 **39:**14
**we'll** [6] **33:**16 **39:**25,25
**40:**3 **41:**17 **42:**1
**we're** [17] **12:**16,17 **15:**9
**26:**7,7 **27:**5,6,11 **29:**13
**30:**19,25,25 **31:**24 **36:**11
**37:**20 **39:**20 **41:**14
**we've** [13] **3:**22 **4:**14 **6:**6,
8 **11:**21 **14:**22 **27:**10 **29:**6,
9 **34:**24 **36:**11 **37:**3 **41:**1
**weaken** [1] **27:**21
**wealth** [1] **28:**13
**week** [1] **37:**7
**weekend** [2] **43:**5,7
**well-pleaded** [2] **13:**2
**17:**14
**weren't** [2] **12:**1,2
**what's** [1] **8:**13
**whatever** [4] **7:**18 **31:**12
**39:**25 **42:**14
**wheel** [1] **38:**2
**whether** [14] **4:**2 **12:**9 **13:**
3,7 **17:**13,15 **18:**23 **23:**2
**28:**13,21 **29:**21 **30:**7,11
**35:**20
**whom** [1] **11:**8
**will** [17] **18:**21 **22:**20 **23:**3
**25:**24 **26:**16 **29:**5 **31:**16,
19 **32:**13 **33:**18 **34:**7,11,
11 **37:**12 **39:**7 **41:**23 **43:**3
**willing** [1] **31:**9
**wish** [1] **30:**20
**withheld** [1] **9:**2
**within** [3] **14:**2,15 **37:**7
**without** [2] **6:**11,12 **7:**
16 **8:**8 **23:**25 **24:**1 **25:**16,
22 **28:**7 **31:**9,10 **36:**4
**wonder** [1] **33:**2
**word** [2] **21:**3,6
**words** [1] **38:**13

**work** [5] **17**:13 **33**:17 **34**:
10,11,14
**worked** [1] **26**:22
**working** [3] **16**:24 **26**:22
**27**:2
**worth** [1] **29**:15
**written** [4] **18**:23 **19**:2,4
**26**:17
**wrongdoers** [1] **19**:22

## Y

**year** [3] **6**:15 **7**:12 **14**:20
**york** [2] **22**:13,19
**you'd** [1] **4**:18
**you're** [9] **3**:15 **16**:23 **18**:
13,19 **31**:14 **35**:12 **39**:21
**40**:12,21
**you've** [2] **29**:24 **41**:1
**young** [4] **5**:13,24 **6**:18
**15**:8
**youngest** [1] **19**:14

## Z

**zoom** [2] **33**:21 **34**:11