```
 1   UNITED STATES BANKRUPTCY COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------------X
     In Re the Matter of:                :   17-42199  (ESS)
 3                                        :
                 THEMA T. NORTON,         :   Brooklyn, NY
 4                                        :   July 6, 2022
                           Debtor.        :
 5   ------------------------------------X
     In Re the Matter of:                :   20-01113  (ESS)
 6                                        :
                 NORTON v. CANN, et al.   :   Brooklyn, NY
 7                           Plaintiffs,  :   July 6, 2022
                     v.                   :
 8               THEMA T. NORTON,         :
                           Defendant.     :
 9   ------------------------------------X
         [148] Adjourned Motion ECP's Proof of Claim 2-2 Filed By
10         Karamvir Dahiya on behalf of Thema T. Norton.
                     Adjourned from 5/3/22
11       [1,4] Adjourned Pre-Trial Conference re:  Complaint
     Adjourned from 12/08/20 12/15/20 3/2/21 5/4/21 5/7/21 5/21/21
12     7/21/21 9/30/21 11/23/23 12/3/21 1/28/22 2/25/22 4/29/22

13             BEFORE THE HONORABLE ELIZABETH S. STONG
                   UNITED STATES BANKRUPTCY JUDGE
14   APPEARANCES:

15   For the Debtor:         DAHIYA LAW OFFICES LLC
                             75 Maiden Lane, Suite 606
16                           New York, NY 10038
                             BY:  KARAMVIR DAHIYA
17
     For the Creditor:       Friedberg, PC
18                           10451 Mill Run Circle, Suite 1000
                             Baltimore, MD 21117
19                           BY:  JEREMY FRIEDBERG

20   ALSO PRESENT:           MR. NORTON
                             (Father of Debtor)
21
     Court Transcriber:      ADL Transcription Services, Inc.
22                           24 Crossway Drive
                             Deer Park, New York 11729
23                           (631) 277-7900

24   Proceedings recorded by electronic sound recording,

25   transcript produced by transcription service.
```

1                    P R O C E E D I N G S

2            THE CLERK:  Calling matters one and two on the

3     calendar, Thema T. Norton and Norton versus Cann et al, main

4     case number 17-42199 and adversary proceeding number 20-1113.

5     Connected is Mr. Friedberg, Mr. Dahiya and Mr. Norton.  If I

6     could just please remind the parties to state your name each

7     time before speaking?

8            THE COURT:  All right.

9            THE CLERK:  Thank you.

10           THE COURT:  Thank you.  And I apologize for the

11    discourtesy of interrupting you, Mr. Friedberg.  Once we're on

12    the record it's helpful for Ms. Jackson to say that, get your

13    appearances on the record and anything you'd like to add as

14    well.  Mr. Friedberg, for ECP Property?

15           MR. FRIEDBERG:  Yes, Your Honor.  I do apologize in

16    advance, I am fighting a terrible cold, upper respiratory

17    infection so if I start coughing and sneezing I apologize in

18    advance.

19           THE COURT:  I'm sorry to hear that.  I hope you're

20    okay.  Please -- I will be having -- I have both coffee and

21    water on my bench.  Please feel free to get the same.  If a

22    glass of orange juice would help do that too.  I hope you're -

23    I hope you're well.  If you need a break at some point we'll do

24    that.

25           Mr. Dahiya, your appearance on the record please?  Mr.

1    Dahiya, may we get your appearance on the record please?  Mr.

2    Dahiya, I'm not hearing you.  Mr. Friedberg, are you hearing

3    Mr. Dahiya?

4              MR. FRIEDBERG:  I am not, Your Honor.

5              THE COURT:  Ms. Jackson, are you hearing Mr. Dahiya?

6              THE CLERK:  No.  And his - his line doesn't show up as

7    being muted.  Mr. Dahiya?  Maybe something on --

8              THE COURT:  Mr. Norton, good to see you.

9              MR. NORTON:  Yes, Judge, it's good to see you too.

10   (Inaudible).

11             THE COURT:  I can hear Mr. Norton.  There we go.  Mr.

12   Friedberg, you'll encourage us all to keep --

13             MR. NORTON:  (Inaudible).

14             THE COURT:  Drinking our water.

15             MR. DAHIYA:  Your Honor, can you hear me now?

16             THE COURT:  Yes.  I don't know what you fixed, but it

17   made a difference.  Thank you so much.  Glad to hear your

18   voices and see your faces.  I still miss seeing you in Court.

19             We have on the calendar today in the Thema Norton

20   Chapter 7 case a motion directed to the proof of claim,

21   pretrial conference and the adversary proceeding.  The goal

22   today is to hear your argument and work through any issues that

23   we can make progress on in the motion with respect to the proof

24   of claim, motion to strike brought by the debtor.

25             At some point we noted that there was a service issue

1  because we'd like to see service on the Chapter 7 trustee,

2  Counsel for the trustee.  They were served by e-mail, but the

3  U.S. Trustee who gets service of everything doesn't seem to

4  have been served.  I think it would be helpful to get that

5  service accomplished.  We'll double, triple check that.  That's

6  still a loose end here we think, still seems to be a loose end

7  here.  So, Mr. Dahiya I will ask you to serve, but I don't

8  think that's --

9           MR. DAHIYA:  Your Honor, --

10          THE COURT:  An impediment to hearing the argument

11  today.

12          MR. DAHIYA:  I did serve --

13          THE COURT:  The U.S.T.?

14          MR. DAHIYA:  (Inaudible) yes, because you instructed

15  me last time to serve --

16          THE COURT:  I know.

17          MR. DAHIYA:  The U.S.T., I remember.

18          THE COURT:  Okay.  So maybe we've got that service.

19  Did you file a certificate of service or an updated certificate

20  of service?

21          MR. DAHIYA:  It looks like I'm not sure about that.

22  That I might have made (inaudible).

23          THE COURT:  All right.  Please do.  First of all, most

24  important, I'm glad that service was made.  Second, if you

25  could file something confirming that just so we have a complete

1   record that would be very helpful.  And unless there's a reason

2   not to I would like to proceed with argument.  Mr. Norton, I

3   see your hand.

4           MR. NORTON:  I can't hear.

5           THE COURT:  Mr. Norton, is your hand raised for a

6   reason?

7           MR. NORTON:  Yes, I had tried to get in touch with my

8   (inaudible) hospital.

9           THE COURT:  I'm sorry, she's in the hospital?

10          MR. NORTON:  My wife said that she thinks she's at the

11  hospital.

12          THE COURT:  It's -- well, I want to do my best to

13  accommodate the participation or attendants of the parties who

14  wish to be here and I know that in the past often Ms. Norton

15  has attended.  Mr. Norton, Mr. Dahiya you are the father and

16  lawyer for the debtor respectively.

17          MR. DAHIYA:  I think we can proceed without her, Your

18  Honor, it is all right to --

19          THE COURT:  All right.  If you'd like to confer

20  briefly offline with your client Mr. Norton just to be sure

21  that everyone is comfortable with that I'll give you a couple

22  of minutes to do that.  I'm eager to proceed if we can, but I

23  also wanna do it in a way that respects everyone's preferences.

24          MR. DAHIYA:  Thank you, Judge.  That's all right.

25          THE COURT:  Okay.  All right.  Well, --

1          MR. DAHIYA:  That's all right.

2          THE COURT:  Mr. Norton, I hope everything is okay and

3    if she's able to join at any time of course she's welcome to do

4    that.  Mr. Dahiya, it's your motion.  Is there anything that

5    would be helpful to address in the bigger context first

6    including the adversary proceeding or shall I - shall I hear

7    your argument?

8          MR. DAHIYA:  Thank you, Your Honor.  There's nothing

9    else, we just straight away --

10         THE COURT:  All right.

11         MR. DAHIYA:  Can go to the merits --

12         THE COURT:  Please proceed.

13         MR. DAHIYA:  Of the motion.  Yes, Your Honor.  Nothing

14   else (inaudible) other than the motion (inaudible), Your Honor

15   at this point.

16         THE COURT:  Okay.

17         MR. DAHIYA:  I (inaudible) this case, this motion

18   that's been adjourned several, several times, it's been

19   extensively briefed and argued.

20         THE COURT:  It was originally on to be heard on May

21   3rd and I think that was the next most prior date and maybe the

22   only prior date.  It doesn't matter.  We are where we are.  My

23   impression is the issues have been before the parties for some

24   time, the motion has been before the Court on May 3rd and now

25   today.

1          Perhaps it would be helpful just to have a complete

2    record if you could summarize the grounds.  I - I -- summarize

3    the grounds for the relief that you seek.  I think I'm familiar

4    with the issues, but we're about to hear from Mr. Friedberg in

5    opposition and maybe it would make sense to have I guess the

6    key points of your argument.

7          I take it that it turns in substance on the legal

8    grounds that the statute of limitations is an obstacle to the

9    collection of this debt and, therefore, the claim should be

10   stricken, is that right?

11         MR. DAHIYA:  That's one of the arguments.  Your Honor,

12   the proof of claim was filed on 4th of March, 2021 and then it

13   was subsequently amended July 21st of 2021.  The motions were

14   filed (inaudible) motion was filed and finally we are here

15   today.  I think the motion has been extensively briefed, Your

16   Honor.

17         The issue is - the issue is of law at this point

18   because if you see the proof of claim which has been filed in

19   this case, Your Honor it's basically a conversion claim.  What

20   they did was they also attached the file (inaudible) copy of

21   the complaint and I was kind of confused about it.  And so they

22   rested on us to find out like finding a needle in a haystack to

23   understand what could be the basis of the claim although they

24   didn't have to understand it's conversion.

25         Anyway, despite that what I did, Your Honor was I

1  looked at all the filings, the complaints, I looked at the

2  (inaudible) of the claims filed in the complaint and this is

3  how I prepared my response.

4       The bottom line, Your Honor is it's a (inaudible)

5  there's nothing factual here, the normal issue is it's all

6  covered by your judgment in re Southside LLC, it's a 2012 474

7  DR 391, it's your judgment, Your Honor very, you know, very

8  beautifully done judgment.

9       It talks about the issue as to when rents become

10 property of the holder, Your Honor.  Your Honor states unlike

11 Madeline which is a (inaudible) state, Your Honor.  The rents

12 (inaudible) Your Honor and to the extent that title remains

13 that is the owner of the property.  Conversion takes place when

14 the other party is the lawful owner, Your Honor.  You have to

15 have ownership and then he should make a demand (inaudible)

16 make a demand and it should be denied.

17      So let's imagine the fact that a demand was made in

18 2011, (inaudible), paperwork filed, Your Honor.  (Inaudible)

19 that's not a demand and you could say it's a demand, that it's

20 their rent and, you know, but that's 2011 (inaudible) that is

21 also the rent (inaudible), the notice claim, the contact claim.

22      So, Your Honor the (inaudible) the ownership belongs

23 to the debtor.  Assuming it belongs to the debtor the debtor

24 could easily (inaudible) and you could say that's a breach of

25 the contract.  In New York State, Your Honor breach of a

1    contract does not (inaudible) damage claims.  Debt created by

2    contract (inaudible) judgment that's (inaudible) the judgment

3    now.  The debt created by contract much as in the judgment is

4    not to (inaudible).

5         The issue is the (inaudible) what exactly was the

6    contract, the contract (inaudible), Your Honor.  Now I don't

7    know what they're using.  They filed a complaint which was not

8    prosecuted in the previous case and (inaudible) and the back

9    and forth (inaudible) interest of the rental payments, Your

10    Honor.  So other part is, Your Honor the issue of (inaudible)

11    in briefs that, you know, those claims cannot be assigned away,

12    the contract claims (inaudible) in the rental payments, but

13    that's not a (inaudible) assignment, Your Honor.  (Inaudible)

14    that the proof of claim was filed (inaudible) trustee to

15    discovery, you know, basically because Mr. Friedberg I believe

16    they started a State Court action and they benefitted the

17    warranted discovery from this Court so that it could be

18    utilized.

19         And that's what they've done successfully, creating an

20    interest of the trustee when the proof of claim in this case

21    does not exceed $10,000, Your Honor.  Anyway, this is what it

22    is, that's the nature of the - nature of the proceedings.

23    Also, you need to understand, Your Honor I mean we cannot

24    (inaudible) lawfully taken by the (inaudible) in this case and

25    also the (inaudible).

1    Unless you have questions, Your Honor it's a very

2    simple -- I have nothing else to add in this case.  The last

3    thing I could read is from the judgment (inaudible) of its

4    title and release of property until the same is actually

5    conducted.

6    Your Honor, there was no appointment of a receiver,

7    there was no (inaudible).  The events that they're complaining

8    about, the collection extends the time, there was no

9    appointment of a receiver, there was - it's not a (inaudible)

10   talk about it before (inaudible) took over the property in the

11   claim (inaudible) doesn't belong to that claim, Your Honor.

12   So, Your Honor unless you have questions for me I have nothing

13   else to - nothing left to say.

14   THE COURT:  All right.  Thank you, Mr. Dahiya.  I do

15   have a couple of questions.  I just wanna be sure I understand

16   the parties' position on a couple of things.  First, and I

17   think we know this from the prior hearing, but it's your

18   position that no further discovery is needed at this point,

19   we're done, you're ready for this to be decided, is that

20   correct?

21   MR. DAHIYA:  Yes, Your Honor.

22   THE COURT:  And, Mr. Friedberg I'll have the same

23   question for you when it's your turn.  Next, you rely on the

24   statute of limitations.  I wanna be sure I understand when you

25   think that statute began to run.  Limitations has to run for

1   some time.  When would that be?  You pointed to different

2   limitations periods.  When did it start to run?

3        MR. DAHIYA:  Your Honor, this is a question for --

4        THE COURT:  It's a question for you.

5        MR. DAHIYA:  A question for me?

6        THE COURT:  I think - I think you argued that the

7   statute of limitations is a bar here or is an obstacle that

8   can't be overcome and so my question is when did the statute

9   begin to run.

10       MR. DAHIYA:  The date of the (inaudible) demands, of

11  the demand started in 2011, Your Honor and (inaudible) one of

12  the claims that we have that there is no proper viable claim

13  against the debtor.  It started with the demand for the payment

14  of the contract, for the mortgage payment.  Also, Your Honor

15  there's no (inaudible) of this proof of claim to add to my

16  arguments because they didn't attach a copy of the lease.  They

17  were supposed to attach a copy of the lease.

18       Also, I think there was a judgment obtained by the

19  debtors (inaudible) so I don't know how they came to this

20  number $200,000 or whatever number they came to, (inaudible).

21  This is speculation so (inaudible) at this point, Your Honor

22  (inaudible) create a viable claim.

23       THE COURT:  All right.  And I guess another question I

24  had was, and I may have raised this with the parties before, of

25  course the Supreme Court in Midland Funding case addressed a

1    situation with the proof of claim and a question of statute of

2    limitations defense.  I'm sure you know the case.  How should

3    -- how if it all does that case fit in here?

4            MR. DAHIYA:  No, it doesn't fit it.  (Inaudible) the

5    issue very simply was the (inaudible) claim if you could have a

6    claim (inaudible) that was all.  The Supreme Court talks about

7    it that the debtor can (inaudible) sanctions or other means to

8    complain.

9            There are other safeguards in bankruptcy which are not

10   outside.  If the debtor said well, you don't have (inaudible)

11   claim (inaudible) that is confined to a claim if it's deemed

12   timely.

13           Let's say hypothetically it was a proper claim, you

14   need to have - you still need to have a proper claim.  That was

15   not about the issue of - issue of the enforceability of the

16   claim, the issue was very different if you can charge the

17   (inaudible).  That in fact doesn't belong in here, Your Honor.

18   It doesn't apply to our (inaudible).

19           THE COURT:  All right.  Is there anything else you

20   think is important for the Court to hear from you at this time

21   or shall we hear from Mr. Friedberg?

22           MR. DAHIYA:  You can -- Your Honor, I think I

23   summarized everything.

24           THE COURT:  Thank you.  Mr. Friedberg, over to you.

25           MR. FRIEDBERG:  Thank you, Your Honor.  Jeremy

1    Friedberg, on behalf of ECP Property II, LLC.  As a preliminary

2    matter I'd just point out that since Mr. Dahiya has waived any

3    discovery here I would assume that the proof of claim is going

4    to be dealt with on its face and the facts would be - would be

5    true as asserted in the proof of claim and we're just dealing

6    with legal issues as Mr. Dahiya said.

7         So the standard for allowing for proof of claim - by

8    the way, Your Honor I'm gonna address all your questions in a

9    moment that you just asked Mr. Dahiya.

10        THE COURT:  Whatever order works for you is fine with

11   me.  Please proceed.

12        MR. FRIEDBERG:  Thank you, Your Honor.  The standard

13   for allowing a proof of claim is very low in Rule 3001 and it's

14   our contention that the adversary complaint attached to the

15   main claim is sufficient to clear that low bar and the

16   (inaudible) must be denied.  The adversary complaint contains

17   two elements required to establish a valid claim which are

18   basically to put the debtor on notice of the basis of the claim

19   and the amount of the claim.

20        The adversary complaint describes in detail the basis

21   of the claim, describing in detail debtor's conversion, what's

22   at issue, the amount of the claim now with interest is

23   $206,000, the conversation was about $146,000 worth of - worth

24   of funds.

25        Our claim is it's not a contract claim, it's a claim

1   that Ms. Norton personally converted (inaudible) from the

2   (inaudible) LLC which was the debtor that ECP sued and she

3   personally converted them and that is the basis of our

4   adversary complaint.  That's uncontroverted because we didn't

5   do any discovery.

6        THE COURT:  And when did she do that according to the

7   claim and the complaint?

8        MR. FRIEDBERG:  So this is - this is very, very

9   important, Your Honor.  ECP's claim is based on from the date

10  they purchased this loan forward, it's not based on 2011, 2012

11  or 2013.  ECP's claim the earliest date of its claim would have

12  been September 3rd, 2014 when it bought - when it bought this

13  loan.

14       Those are the only rents that are being claimed, no

15  back rents prior to ECP's ownership of this loan were claimed

16  in the adversary proceeding against Ms. Norton.  I'll just

17  address that while talking about that.

18       The statute of limitations has not expired because the

19  earliest date on this claim - the earliest date on which the

20  claim arose would be September 3rd, 2014.  Ms. Norton's first

21  bankruptcy was September 22nd, 2016 which would have obviously

22  tolled the statute of limitations.

23       The first bankruptcy was dismissed in April of 2017,

24  her second bankruptcy was filed in May of 2017 so the earliest,

25  forgetting any tolling by the bankruptcies, the earliest

1    possible date of the expiration of the statute of limitations

2    would have been September 3rd, 2017.  The order stayed, she was

3    in bankruptcy and she got her discharge on December 4th, 2017.

4    ECP could not pursue this claim so I don't think the statute of

5    limitations actually applies here.

6            THE COURT:  So it's your argument that even a lapsed

7    statute of limitations would be revived when you bought the

8    loan?

9            MR. FRIEDBERG:  No, the statute of limitations --

10           THE COURT:  That would seem -- I would have to think

11   about that a little bit, but I would be - I would think about

12   that a little bit because it would seem to me if it was a

13   lapsed statute of limitations if a transaction like that could

14   somehow revive it then a statute of limitations would bring no

15   repose whatsoever to a prospective debtor - excuse me, a

16   defendant.

17           MR. FRIEDBERG:  Let me address that, Your Honor to

18   clarify this argument a little bit.

19           THE COURT:  Please.

20           MR. FRIEDBERG:  The assignment of rents -- upon the

21   debtor's default the assignment of rent requires the debtor to

22   pay all of the funds over to the lender so they do have an

23   ownership interest in the rents upon default.  So I'm not quite

24   sure I agree with Mr. Dahiya on that point.

25           We do not -- we are not claiming anything before

1  September 3rd, 2014 so our claim arose at its earliest

2  September 3rd, 2014, nothing in our case is for 2011, 2012 or

3  2013.  So there's no claim for any of the rents that might have

4  been diverted.  We don't even know if funds were diverted pre

5  September 3rd, 2014 because we have no ability to answer that,

6  we just got this loan September 3rd, 2014.  So we're not

7  claiming any of our predecessors damages, we're just claiming

8  damages that harmed ECP after its purchase of the loan which

9  was on September 3rd, 2014.  Does that clarify --

10       THE COURT:  And was there a continued -- your argument

11  would then be and the basis for your claim would be that there

12  was a continuing diversion or conversion, a continuing

13  conversion of the rents from then forward?

14       MR. FRIEDBERG:  It goes forward, Your Honor, yes, that

15  is correct, Your Honor.

16       THE COURT:  And so --

17       MR. FRIEDBERG:  That's our case.

18       THE COURT:  Is it that -- and now I'm looking at the

19  amended complaint language.  Beginning in September, 2014

20  through the present borrower failed and refused to remit

21  collections of tenant rents to ECP.  Were they being collected

22  at that same time or was it that--

23       MR. FRIEDBERG:  Yes.

24       THE COURT:  They previously had been collected, but

25  not turned over?

1          MR. FRIEDBERG:  No, our claim is for rents that were

2    collected and not remitted after September 3rd, 2014.  There is

3    no claim for anything pre September, 2014.  So the earliest

4    date these claims arose would have been September 3rd, 2014.  I

5    hope that clarifies the nature of our claim and --

6          THE COURT:  So it -- and your - and your complaint,

7    this is 17-01037, the adversary proceeding complaint, through

8    the present the complaint refers to paragraph twenty-eight,

9    would be then conversion up to March 20th, 2017.  Is that - is

10   that right?

11         MR. FRIEDBERG:  Yes, that's correct.  I think that's

12   the date that we ended our ownership of the property.

13         THE COURT:  All right.  And then your first claim,

14   2-1, filed on March 4th, 2021 sounds to me like it's more than

15   three years after the latest date on which the debtor allegedly

16   refused to return the rents and that would seem to be a problem

17   under the statute of limitations.  I think we agree --

18         MR. FRIEDBERG:  Well, --

19         THE COURT:  It's a three year statute, is  that right?

20         MR. FRIEDBERG:  I think - I think the Midland case

21   does apply here, Your Honor and the language in the Midland

22   case is that you look to state law even if the statute of

23   limitations has passed onto whether the claim is extinguished

24   and that's - and in that case they're analyzing Alabama law and

25   Alabama law extinguishes the claim upon the expiration of the

1   statute of limitations.

2          I don't find any case law that says claims are

3   extinguished under New York State law upon expiration of the

4   statute of limitations, you simply  can't sue them, but you

5   still have the claim.

6          THE COURT:  So you would - you would argue that yes,

7   the statute expired, no, you could not sue to collect, but

8   nevertheless, and maybe this brings us to the Supreme Court's

9   decision in Midland Funding, it's still a claim, is that right?

10          MR. FRIEDBERG:  No, I disagree.  No, I disagree with

11   that.  I'll restate my logic one more time.  So basically our

12   claim arose in September of 2014.  The first bankruptcy was in

13   September of 2016.  We sued then for - we filed a claim for

14   conversion.

15          The case was dismissed six months later which would

16   extended the statute of limitations I believe to - in April of

17   2017 and the moment we refiled twenty days later in September -

18   in May of 2017.

19          So the statute of limitations, the 362 could not have

20   collected this debt even though we had a claim and we were in

21   the bankruptcy.  If the Court remembers looking at the docket

22   there was no notice of assets or need to proof of claim in the

23   second bankruptcy case and that's because Ms. Norton did not

24   report assets that she allegedly owned according to the

25   trustee's investigation.

1          So in addition to the fact that the statute of

2    limitations did not expire and there is no New York law that

3    says the claim is not valid even in light of the expiration of

4    the statute of limitations we also have an issue of equitable

5    estoppel here because under New York law Ms. Norton would be

6    estopped, but including the statute of limitations where the

7    delay was caused by misrepresentation, fraud, deception which

8    caused refraining from a timely action (inaudible) 406 New York

9    State 2nd 259 and for the doctrine of equitable estoppel to

10   apply the defendant's subsequent intentional and material

11   misrepresentation must have prevented the plaintiff from timely

12   filing the action and that's also in the (inaudible) case and

13   the Court there ruled in favor of the plaintiff when the

14   defendant's subsequent misrepresentation prevented the

15   plaintiff from making a claim.

16         The debtor -- the issue of wrongdoing was conversion

17   of ECP's rents, ECP timely filed its conversion complaint in

18   the first bankruptcy in the context of - in the (inaudible)

19   cases and in the second case.  In the context of this

20   bankruptcy case the debtor obtained a discharge while

21   intentionally concealing assets and that's an issue that the

22   trustee has raised and developed as well.

23         THE COURT:  What's the status of the debtor's

24   discharge in this case?  I thought we had a discharge in this

25   case.

1          MR. FRIEDBERG:  The debtor is discharged, that is

2    correct, but the debtor's discharge was obtained through a

3    fraudulent filing.  She did not schedule assets that she was -

4    for which she was an owner and that's clearly been established

5    by the trustee.  So if that - if - I believe if --

6          THE COURT:  What are you basing that on?  That's a

7    pretty big statement, Mr. Friedberg.  Has the Court concluded

8    that?  It's clearly been --

9          MR. FRIEDBERG:  I don't think so.

10          THE COURT:  Established by the trustee according to

11    whom?

12          MR. FRIEDBERG:  No, just according to the trustee,

13    not --

14          THE COURT:  And where is that in the record?

15          MR. FRIEDBERG:  The trustee made numerous arguments

16    which is how the trustee saw Ms. Norton's --

17          THE COURT:  Tell me where it is in the record.

18          MR. FRIEDBERG:  Off the top of my head I don't have

19    it, Your Honor.

20          THE COURT:  Is there still a discharge in this case?

21          MR. FRIEDBERG:  Of course.

22          THE COURT:  Of course?  Well, the trustee would

23    probably want to revoke a discharge if the trustee had

24    discovered a massive fraud.

25          MR. FRIEDBERG:  I don't think the trustee can revoke

1   discharge after a year.

2          THE COURT:  Well, no, you would probably have to come

3   to the Court.

4          MR. FRIEDBERG:  (Inaudible).

5          THE COURT:  For the avoidance of doubt I'm speaking

6   lightly of something that's deadly serious if there's been a

7   massive fraud perpetrated.  Maybe there's a time limit on that,

8   but I haven't come across that in prior cases that I recall as

9   I sit here.  So we have a discharged --

10          MR. FRIEDBERG:  I believe --

11          THE COURT:  We have a discharged case, there was a

12   sale by the trustee of an asset I think.  This is a point of

13   information.  Is this a case where it's anticipated there will

14   be some distribution to creditors?

15          MR. FRIEDBERG:  Yes, the trustee has sold assets for

16   $50,000.

17          THE COURT:  So -- and I recall that, it was a

18   paramount of attention page of that in the course of the

19   progress of the case.  So if I agree with the debtor and your

20   claim is stricken she's got a discharge and you won't get a

21   distribution and perhaps your claim will be discharged.

22          If I disagree with the debtor and I don't strike your

23   claim then there will be a distribution of some sort because

24   this is an asset case it seems because of that sale and I

25   recall the sale of the interest and the many hearings about

1  whether there was anything for that interest and ultimately

2  concluding that whatever it was was somebody willing to pay

3  $50,000 for it.

4       So as - at the risk of beginning of a question in a

5  legal argument with the phrase as a practical matter, as a

6  practical matter if your claim is not stricken what happens

7  next to ECP's claim?  It seems to me it's paid in part and

8  discharged, is that correct, Mr. Friedberg?

9       MR. FRIEDBERG:  That is correct, Your Honor.  I just

10 -- that is correct, Your Honor.  I just would go  back to the

11 fact that the statute of limitations has not expired because

12 the greatest possible expiration of the statute of limitations

13 was September 3rd, 2017.  Ms. Norton was mid-bankruptcy at that

14 point.

15      THE COURT:  When did it begin to run?  Your argument

16 is September, 2014 because that's when you --

17      MR. FRIEDBERG:  Correct.

18      THE COURT:  Acquired the (inaudible).  Mr. Friedberg,

19 something's happened and I can't hear you.

20      MR. FRIEDBERG:  I'm sorry.  Your - your --

21      THE COURT:  There's a tone.

22      MR. FRIEDBERG:  You got the green box.

23      THE COURT:  Yes.  If you could repeat what you just

24 said?  One of the quirks of this building these days is that

25 from time to time and for no reason of concern there will be a

1  tone in the Courtroom and unless I quickly put myself on mute

2  it seems to take over the audio and I apologize for that.  Back

3  to you.

4      MR. FRIEDBERG:  Thank you, Your Honor.  Can you hear

5  me?  Can you hear me now?

6      THE COURT:  Yes, just fine.  I think it was caused by

7  that tone and I need to be more quick with my mute.

8      MR. FRIEDBERG:  Thank you, Your Honor.  I'll just

9  repeat what I said in case you didn't hear it.

10      THE COURT:  Please.

11      MR. FRIEDBERG:  We're only seeking to recover from

12  funds that were diverted after September 3rd, 2014.  The

13  earliest possible expiration of the statute of limitations in

14  that case would be September 3rd, 2017, the debtor was in

15  bankruptcy, but with a filing on May 2nd, 2017 and was

16  discharged on December 4th, 2017.  So the statute of

17  limitations did not expire prior to the bankruptcy filing.

18      So ECP has a claim in this case because the debtor -

19  the debtor was discharged and there were no assets at the time

20  according to - you know, according to the U.S. Trustee at the

21  time.

22      So we're not seeking to collect anything that would

23  have been subject to the statute of limitations expiring.

24      THE COURT:  All right.  Please continue.  I'm looking

25  forward to hearing the debtor's response, but I wanna have your

1   full argument before we move back to Mr. Dahiya.

2           MR. FRIEDBERG:  Thank you, Your Honor.

3           THE COURT:  There's such a disconnect between the

4   chronologies presented by the two parties.  I'll sort it out,

5   that's my job, but at least I want to be sure that I understand

6   clearly your respective chronology positions --

7           MR. FRIEDBERG:  Thank you, Your Honor.

8           THE COURT:  And where they overlap and where they

9   don't.  Back to you.

10          MR. FRIEDBERG:  Thank you, Your Honor.  The chronology

11  is supported solely by the complaint we filed, the adversary

12  proceeding which is attached to our proof of claim which says

13  from September 3rd, 2014 on.  So we're not - you know, once

14  again, we are not claiming anything prior to that.

15          So let me just -- I think everything else is fairly

16  well briefed, but I wanted to just make the argument that the

17  proof of claim does comply with Rule 2001.  The creditor is not

18  required to prove every aspect when it files the proof of claim

19  and Mr. Dahiya is relying on the papers and so there is no

20  controversion of the facts alleged in the adversary complaint.

21          Additionally, the debtor's attempt to apply the

22  (inaudible) pleading standard is not properly placed here.

23  There's no civil case that we could find nor did the debtor

24  cite one that the (inaudible) standard for Federal Court

25  actions is applied to a proof of claim in bankruptcy.  ECP's

1   claim complies with the rules because it attaches the

2   instrument upon which the claim is founded, the assignment of

3   rents, and has (inaudible) to the adversary complaint.

4        Even on its own and absent the context provided by the

5   adversary complaint itself in additional exhibits the

6   assignment of rents establishes ECP's ownership of the rent

7   because the debtor as Mr. Dahiya admitted had been in default

8   since 2011.

9        Now, with respect to the (inaudible) res judicata and

10  lack of standing, those arguments should all fail as well.  The

11  debtor's argument that ECP's tort claim merges into the

12  judgment for breach of contract by three separate parties, the

13  debtor was not a party to the contract.

14       The cases cited by the debtor which is Duane Reade

15  versus St. Paul would not allow for merger in this action.  In

16  Duane Reade, which is cited by the debtor to support her

17  contention the Court held that only claims that are

18  extinguished upon entry of a judgment by those against the

19  defendant with respect to all or any part of the transaction or

20  series of transactions out of which the action arose.

21       This is not a contract claim, it is a conversion to a

22  claim.  ECP's claim has not been made against any of the other

23  debtors or any against - only against out debtor.  I apologize,

24  my phone is ringing.

25       Debtor's related argument that res judicata precludes

1    a claim should fail as well.  Res judicata can only apply to

2    claims which could have been raised in an earlier litigation,

3    but were not.  The debtor was not a party to the earlier

4    litigation which was against River Rock Nehemiah and again

5    towards Mr. Norton and (Inaudible) Tech so the claim of

6    conversion could not have been litigated against her in those

7    cases and I would cite the Court to O'Brien versus City of

8    Syracuse, 54 New  York 353 for that - for that - to support

9    that assertion.

10        The debtor cites no case law holding that a tort claim

11   such as a claim for conversion can be merged into a judgment of

12   entirely different parties.  Such a holding does not exist

13   under New York law any bankruptcy law because tort claims can

14   and should be held liable for the torts they commit, same if

15   judgment is entered against entirely different parties.

16        Finally, the debtor's argument relating to ECP's

17   standing should fail as well.  ECP's conversion claim accrued

18   when the conversion occurred, not when Banco Popular still

19   owned the loan.  I would cite the Court to (Inaudible) versus

20   Christie's, 51 AD 3rd 444.

21        The debtor's conversion of ECP's rightful property,

22   the tenant rents, could not have occurred when Banco Popular,

23   our predecessor, demanded acceleration of liability in 2011, it

24   could not have occurred - accrued prior to this transfer of the

25   debt to ECP.

1      ECP does have standing to bring a conversion claim

2  against the debtor since the debtor unlawfully exuded ownership

3  and control of ECP's rightful property to tenant rents and

4  placed (inaudible) ECP after Banco Popular transferred its

5  interest in the loan documents to ECP.

6      I think we've addressed the (inaudible) argument, but

7  no New York Court has interpreted  CPLR Section 214.3 to

8  determine whether the creditor's right of payment is

9  extinguished or only the revenue of the right to - of suit, to

10  collect the debt after expiration of the limitations period.

11      THE COURT:  I think that brings us right to the point

12  addressed by the Supreme Court in Midland which seems to me to

13  be in substance that, and the Court - the decision speaks for

14  itself, but there's still a proof of claim that could be filed,

15  but there's also a defense that can be asserted which is the

16  statute of limitations so it's not that you can't file a proof

17  of claim, it's that the debtor, the debtor in bankruptcy, may

18  well have a defense, but would need to assert the defense.

19      Of course a proof of claim is deemed prima facie valid

20  and then there's an objection, the creditor always retains

21  ultimately the burden to show they're entitled to payment,

22  whatever the payment turns out to be in this case which is an

23  asset case and is a case with a discharge.  At least that's the

24  current state of the record as I see it.

25      So it sounds to me like what you're describing is

1  most, but not all of the path that the Supreme Court charted in

2  that Midland case saying that yes, you can file a proof of

3  claim even via - even for an obligation that would be barred

4  and by statute of limitations, but know that you - there may be

5  a defense asserted as has been here.

6      MR. FRIEDBERG:  Yes, Your Honor, I agree one hundred

7  percent with your analysis, however, the Court in Midland

8  basically said that you could assert an affirmative defense,

9  the statute of limitations and proof of claim with a statute of

10 limitations had expired if under state law, under the law of

11 that state the claim is extinguished.

12      In Alabama, which is what they're talking about, the

13 Alabama law is clear the claim is extinguished.  Once the

14 statute of limitations passes the claim is gone.  There's no

15 New York case that can address that.

16      THE COURT:  What's the difference between a claim

17 that's extinguished and a claim that has a defense to payment?

18 As a practical matter what's the difference?  I mean statute of

19 limitations doesn't mean nothing under New York law.

20      MR. FRIEDBERG:  That's true, but you still have a

21 claim.  Just because it --

22      THE COURT:  Right, and a defense to payment.

23      MR. FRIEDBERG:  It's a defense to suit, I don't think

24 it's a defense to payment, it's a defense to suit and there's

25 no New York case law that says the claim is extinguished.  I

1   think that's a really fine point to have to address, but I

2   believe the analysis is that the right to sue is gone, but not

3   the claim.  You have a right to payment, but --

4           THE COURT:  Do you --

5           MR. FRIEDBERG:  You don't have a right to sue.

6           THE COURT:  Are you aware of any bankruptcy cases that

7   have ruled as you just described in the state of New York

8   applying New York law since Midland was decided?

9           MR. FRIEDBERG:  No, there are no cases in New York and

10  there are no New York cases that we could find that talk about

11  extinguishing the claim.  (Inaudible) issue of state law

12  clearly the claim is not extinguished because there's no

13  guidance from the statute or from the cases that the claim is

14  extinguished.  You just simply can't sue in State Court, that's

15  all.

16          You do have a claim and I'll give a good example, Your

17  Honor.  If they sued ECP, ECP could assert this claim as a set

18  off, that is clear, because even though you can't sue

19  affirmatively you still have a set off as long as you have a

20  claim.

21          Now, in Alabama you would not have a claim because --

22          THE COURT:  And what case law supports that

23  interpretation?

24          MR. FRIEDBERG:  Because there's no -- well, that's

25  just the standard practice and there's no case law in New

1   York.

2        THE COURT:  I don't practice anymore, Mr. Friedberg, I

3   need a case.

4        MR. FRIEDBERG:  Your Honor, I don't - I do not have a

5   case.

6        THE COURT:  And is that unbounded in time?  If fifty

7   years ago there was an obligation it could still be an offset?

8        MR. FRIEDBERG:  Yes, yes.

9        THE COURT:  Wow.  I have not come across that.

10       MR. FRIEDBERG:  There's no case law on this, Your

11  Honor.

12       THE COURT:  A hundred years ago, no limit?

13       MR. FRIEDBERG:  As a setoff I believe that's -- if New

14  York does not have any case law on it and there's no bankruptcy

15  or U.S. District Court case law on it you look to state law and

16  there's no interpretation --

17       THE COURT:  Well, if there's no law then why are you

18  so sure it comes out your way other than that's your client's

19  argument?

20       MR. FRIEDBERG:  Because that's my job.

21       THE COURT:  Because that's your job.  That part I

22  understand.  I used to be a litigator, Mr. Friedberg.  All

23  right.  So as a practical matter what the creditor is arguing

24  for is the right to receive a not very big distribution on its

25  claim in this case, is that correct?

1        MR. FRIEDBERG:  That is correct, Your Honor.

2        THE COURT:  Okay.  And the claim is otherwise

3   unenforceable and separate from that otherwise discharged, is

4   that correct?

5        MR. FRIEDBERG:  It is now discharged, however, --

6        THE COURT:  Just trying to be --

7        MR. FRIEDBERG:  (Inaudible).

8        THE COURT:  Just trying to get a practical sense of

9   things here.

10       MR. FRIEDBERG:  Yeah, and we find ourselves in an odd

11  situation where the debtor is discharged, assets come into the

12  estate, no proofs of claims were filed because there were no

13  assets --

14       THE COURT:  Oh, there was a notice of discovery of

15  assets, it's number forty-one on the docket, I checked that

16  actually just to be sure.

17       MR. FRIEDBERG:  And we --

18       THE COURT:  We served it out.

19       MR. FRIEDBERG:  And we properly filed a claim, we

20  filed our proof of claim, absolutely.

21       THE COURT:  And are there any other proof of claim

22  here?

23       MR. FRIEDBERG:  Yes.

24       THE COURT:  What's the claim register look like?  I

25  mean I'm being practical again and I suppose I should apologize

1  a little for that in an argument at such a high level of

2  theory, but it's part of why we all have jobs, this is mine.

3          MR. FRIEDBERG:  Your Honor, there's one other claim,

4  there is one other claim, American Express  --

5          THE COURT:  Okay.

6          MR. FRIEDBERG:  And it's small, under $2,000.

7          THE COURT:  I recall this, yes.  The point's been made

8  forcefully by debtor's Counsel that there's like a $3,000 claim

9  otherwise.  All right.  Really interesting issues.  Mr.

10  Friedberg, any - what else would you like to bring to the

11  Court's attention?

12          MR. FRIEDBERG:  I think we covered it all and I

13  appreciate the opportunity to argue, Your Honor.

14          THE COURT:  It's good, it's always good to hear an

15  interesting and thoughtful argument and I benefit from having

16  that from both sides here.

17          Mr. Dahiya, back to you.  Tell me what the practical

18  side of this, -- you know, there's a bunch of really

19  interesting legal arguments here and they truly and deeply are

20  interesting and they lie at the intersection of Supreme Court

21  authority and New York State law and the idea that there could

22  be rights that simply never go away, an interesting thing, but

23  there's also a practical question in my mind which is that we

24  have a not very - we have a small estate here, I suspect a

25  certain amount of an administrative claim, we have a family and

1   a debtor who would just like to move on.  It's always a

2   pleasure to see you, Mr. Norton, but I'm sure at some point

3   that you won't be disappointed if we're all done with this

4   case.

5        If I disagree with the debtor then the claim stays on

6   the register, it sounds like you could have a stipulation and

7   maybe you'd like to talk about the terms of this and I'll give

8   you a moment to do so.  The claim would not otherwise be

9   pursued in State Court, that they'll accept - and the discharge

10  won't be objected to and they'll take the claim they get, you

11  know, the distribution they get and we'll be done.

12       Mr. Dahiya, I'm eager to hear from you and you can

13  begin or end, you can address that practical part of the

14  picture whenever you'd like and everything else you'd like to

15  address too.

16       MR. DAHIYA:  Yes, Your Honor.  There is absolutely no

17  claim.  I don't even (inaudible) state claim, state law,

18  federal law.

19       THE COURT:  Mr. Dahiya, what happens if I disagree?

20  If I disagree then don't we --

21       MR. DAHIYA:  You disagree --

22       THE COURT:  Have a claim that will be paid in part and

23  then the debtor will receive a discharge and you've got an

24  acknowledgement on the record from claimant's Counsel that it's

25  an otherwise unenforceable claim?

1    MR. DAHIYA:  What happens is - what happens now is if

2    you sustain the claim they are confined to the Bankruptcy

3    Court, they cannot go out and file an action against the

4    debtor.

5    THE COURT:  They have, Mr. Friedberg has acknowledged

6    that I think.

7    MR. FRIEDBERG:  I did, Your Honor, absolutely.

8    MR. DAHIYA:  They cannot get anything, but the fact is

9    they do not have a claim, Your Honor.  This is (inaudible)

10   simple case of dismissal of the claim.  The original claims

11   that they claimed, conversion without any right to property

12   does not happen.

13   Now the other interesting part of this, Your Honor,

14   the issue of (inaudible) the statute of limitations, Your

15   Honor, the last piece of the reply, the statute of limitations

16   in those causes of action is (inaudible) and begins to run from

17   the date of the tort, not from the date of discovery or the

18   exercise of (inaudible) to discovery.  (Inaudible) the debtor

19   was not (inaudible) of ECP.

20   In the case law they mention (inaudible) therein she

21   had the property, she was holding the property.  Even if my

22   client is picking up the rent she's not holding the property

23   (inaudible), I keep saying that, there's no property of ECP.

24   The rents are there, she is holding them hypothetically and

25   also I just put - I think I had put - there is an adjustment

1   (inaudible) that the debtor - not the debtor (inaudible) the
2   borrower has got a judgment against the tenant for $200,000.
3   (Inaudible) earlier, I don't know the docket number, I refiled
4   it.  There's a judgment of $200,000, the tenants are not
5   paying.  In 2013 there is a judgment by the borrower against
6   the tenant.
7          Mr. Friedberg is just speculating, Your Honor.  This
8   is incredible, absolutely not even (inaudible) that he talks
9   about is viable here in the objection.  The issue of pleading,
10  the issue that I'm not mentioning (inaudible) the chief Judge
11  of Southern District, a lot of judgments by him.  There's no
12  claim here.
13         THE COURT:  No, Mr. Dahiya there is a proof of claim,
14  we can agree that on the docket there is a proof of claim and
15  you've made a motion to strike it.  So --
16         MR. DAHIYA:  Your Honor, --
17         THE COURT:  There is - you can say there is no valid
18  claim, you can say there's a claim that is time barred, but
19  there --
20         MR. DAHIYA:  Your Honor, --
21         THE COURT:  Have been some very interesting highly
22  technical, but that doesn't mean they aren't - they don't
23  require consideration.
24         MR. DAHIYA:  Absolutely, Your Honor.  There's no - the
25  claim does not have the presumption of validity, Your Honor.

1   There's no presumption of validity.  I keep saying, Your Honor

2   Midland was about --

3         THE COURT:  Mr. Dahiya, isn't it true that there is a

4   presumption, but you argue you have overcome it?  I think

5   that's the way --

6         MR. DAHIYA:  Yes.

7         THE COURT:  I think that's the - that would be the

8   analysis.

9         MR. DAHIYA:  You're right, you're right.  I stand

10  corrected, Your Honor.  There's a proof of claim, the

11  presumption of validity is gone, there has to (inaudible).

12  They were supposed to attach the (inaudible), the presumption

13  is gone, they have not been able to establish any standard of

14  payment of this claim, Your Honor.  There's nothing here, Your

15  Honor.  It is incredible what has happened here for - it's a

16  monthly rent that (inaudible) and now they're going against the

17  other family members and this is incredible.

18        (Inaudible) to say, Your Honor I have submitted --

19        THE COURT:  Okay.  All right.  Here's what - here's

20  what I'd like to do.  I would - I would find it helpful to take

21  a very short break, and I shall do so, and as I do that I'm

22  going to direct -- you see the conference room?  You know where

23  it is.

24        I'm sending you into it by Zoom, just Counsel.  I

25  think there's a framework here to get a resolution of this and

1   to me it makes a whole lot more sense than at least potentially

2   trying to understand how the world looks from each of your

3   respective positions.

4        This is not - this is - this is a challenge to a

5   claim, this is not - this is not an objection to discharge,

6   there's no - some big words have been used and some strong

7   statements have been made in both directions.

8        At the end of the day I think it comes down to a proof

9   of claim and whether the presumption of validity has been

10  overcome and how a legal argument concerning the statute of

11  limitations, very interesting legal argument, but a legal

12  argument, the very interesting nature of which will not add

13  value or subtract value from anyone's position in a year or six

14  months or whenever.  You know, --

15       MR. DAHIYA:  Your Honor, --

16       THE COURT:  It's a Chapter 7 case, it's not a question

17  of whether it's gonna be more or less hard to confirm the

18  Chapter 13 plan.  So I want you to confer on that because I

19  can't rule out the possibility that there could be some portion

20  of this claim that could be agreed to if everyone of course

21  neither admitting nor denying any bad behavior, it doesn't have

22  to be about bad behavior, and seeing where we are.

23       I began by saying I would like to take and intend to

24  take a short break and I shall and we're going to put you in a

25  Zoom room.  Thankfully my colleague Ms. Jackson knows how to do

1  that, I don't.  And please, I want you to approach it with a

2  truly fresh look and see if there's something that beginning at

3  1:38 p.m. on July 6th, 2022, close to a decade after some of

4  the matters at issue here whether there's something that makes

5  sense going forward because I think there might be.  All right.

6       So that's what we're gonna do.  I shall double mute

7  myself and see you in just a few minutes.  You'll get all the

8  time you need, but I'm directing you to take at least a couple

9  of minutes.  All right.  Thank you so much.

10       MR. FRIEDBERG:  Thank you, Your Honor.

11       (Off the record).

12       (Recall began).

13       THE CLERK:  Recalling the matters of Thema Norton,

14  17-42199 and 20-1113.

15       THE COURT:  All right.  Thank you, my friends.

16  Welcome back.  Is there any progress to report on any front,

17  Mr. Friedberg?

18       MR. FRIEDBERG:  Your Honor, we were discussing a

19  global settlement of all matters, but we have no - we have no

20  agreement on the proof of claim.

21       THE COURT:  All right.  It would be encompassed it

22  sounds like in that global universal settlement if you get

23  there so don't fail to continue talking.

24       For my part I did take a look at my slightly yellowed

25  McKinney's CPLR Section 214 for the first time in quite a

1   while.  I do have the bound McKinney statutes in my chamber's

2   library so I will continue to think about all the issues you've

3   identified.

4         We're gonna have an adjourned date and we have a

5   fairly soon date coming up in these cases.  I need to think

6   about the points you've made and it's possible I'll have an

7   oral decision for you when we come back on July 17th, 19th.

8   Ms. Jackson, when's our next date?  19th, July 19th, probably

9   10:30, is that correct?

10        THE CLERK:  (Inaudible).

11        THE COURT:  That's gonna be a holding date and we'll

12  see because if I'm going to have a long thing to say we'll have

13  to find a different time.  I'll invite you to file a status if

14  there's any change in status, a status letter the day before.

15  It's always helpful to know -- you've made -- your arguments

16  have been really interesting and you have responded to some

17  questions that were in my mind and I have to say you've raised

18  some new questions for me so I thank you for that as well.

19        Anything further?  Otherwise I'm gonna say July 19th

20  at 10:30.

21        MR. FRIEDBERG:  Yes, yes, Your Honor.  We have also

22  the motion to dismiss the adversary still pending.  I'm

23  wondering what we're doing with that.

24        THE COURT:  When is that coming back to the Court?

25  It's not on today's calendar.

1       MR. FRIEDBERG:  I thought it was, I thought the Court

2   was going to rule today.

3       THE COURT:  Could be.  I mean no, actually on the

4   ruling.  We'll have to follow up on that and we'll - someone

5   will get back to you.  Ms. Jackson will get back to you in a

6   day or so because it shouldn't take long to figure out the

7   status of that, but I don't see it on today's calendar unless

8   I'm overlooking something and it's a rather short calendar so

9   it would be hard to overlook I think, but we will follow up.

10  All right.  I do recall the motion and you're right, it's been

11  out there for a while.  All right.

12      So as for the moment, July 19th at 10:30.  We will

13  follow up and get back to you on the status of the motion to

14  dismiss, thank you for that reminder, and pick up where we left

15  off then.  All right.  Thank you and thank you for very

16  interesting and very helpful arguments each of you.

17      MR. FRIEDBERG:  Thank you, Your Honor.

18      MR. DAHIYA:  Thank you, Your Honor.

19      THE COURT:  And feel better, Mr. Friedberg and, Mr.

20  Dahiya I hope you're well.

21      MR. FRIEDBERG:  Much appreciated, much appreciated.

22      MR. DAHIYA:  May I be excused?

23      THE COURT:  Yes, you may be excused.  I'm sorry.  I

24  should have said that.

25      MR. DAHIYA:  Thank you, Your Honor.

1          THE COURT:  Ms. Jackson, you can call the next matter.

2          [Proceedings concluded]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3   I, Lynn O'Reilly, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7   Signature:

8

9               ADL Transcription Services

10              24 Crossway Drive

11              Deer Park, New York 11729

12              Date:   July 7, 2022

13

14

15

16

17

18

19

20

21

22

23

24

25

**< Dates >**
**5/3/22** 1:20
**December 4th, 2017** 15:3, 23:16
**July 17th, 19th** 39:7
**July 19th** 39:8, 39:19, 40:12
**July 21st** 7:13
**July 6, 2022** 1:7, 1:13
**July 6th** 38:3
**July 7, 2022** 42:12
**March 4th, 2021** 17:14
**March, 2021** 7:12
**May 2nd, 2017** 23:15
**May 3rd** 6:20, 6:24
**September 22nd, 2016** 14:21
**September 3rd** 16:2, 23:14
**September 3rd, 2014** 14:12, 14:20, 16:1, 16:5, 16:6, 16:9, 17:2, 17:4, 23:12, 24:13
**September 3rd, 2017** 15:2, 22:13
**September, 2014** 16:19, 17:3, 22:16
**$10,000** 9:21
**$146,000** 13:23
**$2,000** 32:6
**$200,000** 11:20, 35:2, 35:4
**$206,000** 13:23
**$3,000** 32:8
**$50,000** 21:16, 22:3
-------------------------------------
**-X** 1:3, 1:9, 1:15

**< 1 >**
**1/28/22** 1:23
**1000** 1:36
**10038** 1:32
**10451** 1:36
**10:30** 39:9, 39:20, 40:12
**11/23/23** 1:23
**11729** 1:45, 42:11
**12/08/20** 1:22
**12/15/20** 1:22
**12/3/21** 1:23
**13** 37:18
**17-01037** 7:7
**17-42199** 1:4, 2:4, 38:14

**19th** 39:8
**1:38** 38:3

**< 2 >**
**2-1** 17:14
**2-2** 1:18
**2/25/22** 1:23
**20-01113** 1:10
**20-1113** 2:4, 38:14
**2001** 24:17
**2011** 8:18, 8:20, 11:11, 14:10, 16:2, 25:8, 26:23
**2012** 8:6, 14:10, 16:2
**2013** 14:11, 16:3, 35:5
**2014** 16:2, 18:12
**2016** 18:13
**2017** 14:23, 14:24, 17:9, 18:17, 18:18, 23:14
**2021** 7:13
**2022** 38:3
**20th** 17:9
**21117** 1:37
**214** 38:25
**214.3** 27:7
**24** 1:44, 42:10
**259** 13:23
**277-7900** 1:46
**2nd** 19:9

**< 3 >**
**3/2/21** 1:22
**3001** 13:13
**353** 26:8
**362** 18:19
**391** 8:7
**3rd** 26:20

**< 4 >**
**4/29/22** 1:23
**406** 19:8
**444** 26:20
**474** 8:6
**4th** 7:12

**< 5 >**
**5/21/21** 1:22

**5/4/21** 1:22
**5/7/21** 1:22
**51** 26:20
**54** 26:8

**< 6 >**
**606** 1:31
**631** 1:46

**< 7 >**
**7** 3:20, 4:1, 37:16
**7/21/21** 1:23
**75** 1:31

**< 9 >**
**9/30/21** 1:23
**[1** 1:21
**[148]** 1:18
**[14]** 1:21
**[proceedings** 41:2

**< A >**
**ability** 16:5
**able** 6:3, 36:13
**absent** 25:4
**Absolutely** 31:20, 33:16, 34:7, 35:8, 35:24
**acceleration** 26:23
**accept** 33:9
**accommodate** 5:13
**accomplished** 4:5
**according** 14:6, 18:24, 20:10, 20:12, 23:20
**accrued** 26:17, 26:24
**accurate** 42:4
**acknowledged** 34:5
**acknowledgement** 33:24
**Acquired** 22:18
**across** 21:8, 30:9
**action** 9:16, 19:8, 19:12, 25:15, 25:20, 34:3, 34:16
**actions** 24:25
**actually** 10:4, 15:5, 31:16, 40:3
**AD** 26:20
**add** 2:13, 10:2, 11:15, 37:12
**addition** 19:1

**additional** 25:5
**Additionally** 24:21
**address** 6:5, 13:8, 14:17, 15:17, 28:15, 29:1, 33:13, 33:15
**addressed** 11:25, 27:6, 27:12
**Adjourned** 1:18, 1:20, 1:21, 1:22, 6:18, 39:4
**adjustment** 34:25
**ADL** 1:43, 42:9
**administrative** 32:25
**admitted** 25:7
**admitting** 37:21
**advance** 2:16, 2:18
**adversary** 2:4, 3:21, 6:6, 13:14, 13:16, 13:20, 14:4, 14:16, 17:7, 24:11, 24:20, 25:3, 25:5, 39:22
**affirmative** 28:8
**affirmatively** 29:19
**ago** 30:7, 30:12
**agree** 15:24, 17:17, 21:19, 28:6, 35:14
**agreed** 37:20
**agreement** 38:20
**al** 1:12, 2:3
**Alabama** 17:24, 17:25, 28:12, 28:13, 29:21
**alleged** 24:20
**allegedly** 17:15, 18:24
**allow** 25:15
**allowing** 13:7, 13:13
**although** 7:23
**amended** 7:13, 16:19
**American** 32:4
**amount** 13:19, 13:22, 32:25
**analysis** 28:7, 29:2, 36:8
**analyzing** 17:24
**answer** 16:5
**anticipated** 21:13
**Anyway** 7:25, 9:21
**apologize** 2:10, 2:15, 2:17, 23:2, 25:23, 31:25
**appearance** 2:25, 3:1
**APPEARANCES** 1:28, 2:13
**applied** 24:25
**applies** 15:5
**apply** 12:18, 17:21, 19:10, 24:21, 26:1
**applying** 29:8

**appointment** 10:6, 10:9
**appreciate** 32:13
**appreciated** 40:21
**approach** 38:1
**April** 14:23, 18:16
**argue** 18:6, 32:13, 36:4
**argued** 6:19, 11:6
**arguing** 30:23
**argument** 3:22, 4:10, 5:2, 6:7, 7:6, 15:6, 15:18, 16:10, 22:5, 22:15, 24:1, 24:16, 25:11, 25:25, 26:16, 27:6, 30:19, 32:1, 32:15, 37:10, 37:11, 37:12
**arguments** 7:11, 11:16, 20:15, 25:10, 32:19, 39:15, 40:16
**arose** 14:20, 16:1, 17:4, 18:12, 25:20
**aspect** 24:18
**assert** 27:18, 28:8, 29:17
**asserted** 13:5, 27:15, 28:5
**assertion** 26:9
**asset** 21:12, 21:24, 27:23
**assets** 18:22, 18:24, 19:21, 20:3, 21:15, 23:19, 31:11, 31:13, 31:15
**assigned** 9:11
**assignment** 9:13, 15:20, 15:21, 25:2, 25:6
**assume** 13:3
**Assuming** 8:23
**attach** 11:16, 11:17, 36:12
**attached** 7:20, 13:14, 24:12
**attaches** 25:1
**attempt** 24:21
**attendants** 5:13
**attended** 5:15
**attention** 21:18, 32:11
**audio** 23:2
**authority** 32:21
**avoidance** 21:5
**aware** 29:6
**away** 6:9, 9:11, 32:22

**< B >**
**Back** 9:8, 14:15, 22:10, 23:2, 24:1, 24:9, 32:17, 38:16, 39:7, 39:24, 40:5, 40:13
**bad** 37:21, 37:22

**Baltimore** 1:37
**Banco** 26:18, 26:22, 27:4
**bankruptcies** 14:25
**Bankruptcy** 1:1, 1:26, 12:9, 14:21, 14:23, 14:24, 15:3, 18:12, 18:21, 18:23, 19:18, 19:20, 23:15, 23:17, 24:25, 26:13, 27:17, 29:6, 30:14, 34:2
**bar** 11:7, 13:15
**barred** 28:3, 35:18
**based** 14:9, 14:10
**basically** 7:19, 9:15, 13:18, 18:11, 28:8
**basing** 20:6
**basis** 7:23, 13:18, 13:20, 14:3, 16:11
**beautifully** 8:8
**become** 8:9
**began** 10:25, 37:23, 38:12
**begin** 11:9, 22:15, 33:13
**Beginning** 16:19, 22:4, 38:2
**begins** 14:16
**behalf** 1:19, 13:1
**behavior** 37:21, 37:22
**believe** 9:15, 18:16, 20:5, 21:10, 29:2, 30:13
**belong** 10:11, 12:17
**belongs** 8:22, 8:23
**bench** 2:21
**benefit** 32:15
**benefitted** 9:16
**best** 5:12
**better** 40:19
**big** 20:7, 30:24, 37:6
**bigger** 6:5
**bit** 15:11, 15:12, 15:18
**borrower** 16:20, 35:2, 35:5
**bottom** 8:4
**bought** 14:12, 15:7
**bound** 39:1
**box** 22:22
**breach** 8:24, 8:25, 25:12
**break** 2:23, 36:21, 37:24
**briefed** 6:19, 7:15, 24:16
**briefly** 5:20
**briefs** 9:11
**bring** 15:14, 27:1, 32:10
**brings** 18:8, 27:11
**Brooklyn** 1:6, 1:12

**brought** 3:24
**building** 22:24
**bunch** 32:18
**burden** 27:21

**< C >**
**calendar** 2:3, 3:19, 39:25, 40:7, 40:8
**call** 41:1
**Calling** 2:2
**Cann** 1:12, 2:3
**cases** 19:7, 19:8, 21:8, 25:14, 26:7, 29:6, 29:9, 29:10, 29:13, 39:5
**caused** 19:7, 19:8, 23:6
**causes** 34:16
**certain** 32:25
**certificate** 4:19
**certify** 42:3
**challenge** 37:4
**chamber** 39:1
**change** 39:14
**Chapter** 3:20, 4:1, 37:16, 37:18
**charge** 12:16
**charted** 28:1
**check** 4:5
**checked** 31:15
**chief** 35:10
**Christie** 26:20
**chronologies** 24:4
**chronology** 24:6, 24:10
**Circle** 1:36
**cite** 24:24, 26:7, 26:19
**cited** 25:14, 25:16
**cites** 26:10
**City** 26:7
**civil** 24:23
**claimant** 33:24
**claimed** 14:14, 14:15, 34:11
**claiming** 15:25, 16:7, 24:14
**claims** 8:2, 9:1, 9:11, 9:12, 11:12, 17:4, 18:25, 25:17, 26:2, 26:13, 31:12, 34:10
**clarifies** 17:5
**clarify** 15:18, 16:9
**clear** 13:15, 28:13, 29:18
**clearly** 20:4, 20:8, 24:6, 29:12
**CLERK** 2:2, 2:9, 3:6, 38:13,

39:10
**client** 5:20, 30:18, 34:22
**close** 38:3
**coffee** 2:20
**cold** 2:16
**colleague** 37:25
**collect** 18:7, 23:22, 27:10
**collected** 16:21, 16:24, 17:2, 18:20
**collection** 7:9, 10:8
**collections** 16:21
**comes** 30:18, 37:8
**comfortable** 5:21
**coming** 39:5, 39:24
**commit** 26:14
**complain** 12:8
**complaining** 10:7
**Complaint** 1:21, 7:21, 8:2, 9:7, 13:14, 13:16, 13:20, 14:4, 14:7, 16:19, 17:6, 17:7, 17:8, 19:17, 24:11, 24:20, 25:3, 25:5
**complaints** 8:1
**complete** 4:25, 7:1
**complies** 25:1
**comply** 24:17
**concealing** 19:21
**concern** 22:25
**concerning** 37:10
**concluded** 20:7
**concluded]** 41:2
**concluding** 22:2
**conducted** 10:5
**confer** 5:19, 37:18
**Conference** 1:21, 3:21, 36:22
**confined** 12:11, 34:2
**confirm** 37:17
**confirming** 4:25
**confused** 7:21
**Connected** 2:5
**consideration** 35:23
**contact** 8:21
**contains** 13:16
**contention** 13:14, 25:17
**context** 6:5, 19:18, 19:19, 25:4
**continue** 23:24, 38:23, 39:2
**continued** 16:10
**continuing** 16:12
**contract** 8:25, 9:1, 9:2, 9:3, 9:6, 9:12, 11:14, 13:25,

25:12, 25:13, 25:21
**control** 27:3
**controversion** 24:20
**conversation** 13:23
**Conversion** 7:19, 7:24, 8:13,
    13:21, 16:12, 16:13, 17:9,
    18:14, 19:16, 19:17, 25:21,
    26:6, 26:11, 26:17, 26:18,
    26:21, 27:1, 34:11
**converted** 14:1, 14:3
**copy** 7:20, 11:16, 11:17
**Correct** 10:20, 16:15, 17:11,
    20:2, 22:8, 22:9, 22:10,
    22:17, 30:25, 31:1, 31:4,
    39:9
**corrected** 36:10
**coughing** 2:17
**Counsel** 4:2, 32:8, 33:24,
    36:24
**couple** 5:21, 10:15, 10:16,
    38:8
**course** 6:3, 11:25, 20:21,
    20:22, 21:18, 27:19, 37:20
**Courtroom** 23:1
**covered** 8:6, 32:12
**CPLR** 27:7, 38:25
**create** 11:22
**created** 9:1, 9:3
**creating** 9:19
**Creditor** 1:35, 24:17, 27:8,
    27:20, 30:23
**creditors** 21:14
**Crossway** 1:44, 42:10
**current** 27:24


**< D >**
**damage** 9:1
**damages** 16:7, 16:8
**Date** 6:21, 6:22, 11:10, 14:9,
    14:11, 14:19, 15:1, 17:4,
    17:12, 17:15, 34:17, 39:4,
    39:5, 39:8, 39:11, 42:12
**day** 37:8, 39:14, 40:6
**days** 18:17, 22:24
**deadly** 21:6
**dealing** 13:5
**dealt** 13:4
**Debt** 7:9, 9:1, 9:3, 18:20,
    26:25, 27:10

**debtors** 11:19, 25:23
**decade** 38:3
**deception** 19:7
**decided** 10:19, 29:8
**decision** 18:9, 27:13, 39:7
**deemed** 12:11, 27:19
**deeply** 32:19
**Deer** 1:45, 42:11
**default** 15:21, 15:23, 25:7
**defendant** 15:16, 19:10,
    19:14, 25:19
**defense** 12:2, 27:15, 27:18,
    28:5, 28:8, 28:17, 28:22,
    28:23, 28:24
**delay** 19:7
**demand** 8:15, 8:16, 8:17, 8:19,
    11:11, 11:13
**demanded** 26:23
**demands** 11:10
**denied** 8:16, 13:16
**denying** 37:21
**described** 29:7
**describes** 13:20
**describing** 13:21, 27:25
**despite** 7:25
**detail** 13:20, 13:21
**determine** 27:8
**developed** 19:22
**difference** 3:17, 28:16, 28:18
**different** 11:1, 12:16, 26:12,
    26:15, 39:13
**direct** 36:22
**directed** 3:20
**directing** 38:8
**directions** 37:7
**disagree** 18:10, 21:22, 33:5,
    33:19, 33:20, 33:21
**disappointed** 33:3
**discharge** 15:3, 19:20, 19:24,
    20:2, 20:20, 20:23, 21:1,
    21:20, 27:23, 33:9, 33:23,
    37:5
**discharged** 20:1, 21:9, 21:11,
    21:21, 22:8, 23:16, 23:19,
    31:3, 31:5, 31:11
**disconnect** 24:3
**discourtesy** 2:11
**discovered** 20:24
**discovery** 9:15, 9:17, 10:18,
    13:3, 14:5, 31:14, 34:17,

34:18
**discussing** 38:18
**dismiss** 39:22, 40:14
**dismissal** 34:10
**dismissed** 14:23, 18:15
**distribution** 21:14, 21:21,
    21:23, 30:24, 33:11
**District** 1:2, 30:15, 35:11
**diversion** 16:12
**diverted** 16:4, 23:12
**docket** 18:21, 31:15, 35:3,
    35:14
**doctrine** 19:9
**documents** 27:5
**doing** 39:23
**done** 8:8, 9:19, 10:19, 33:3,
    33:11
**double** 4:5, 38:6
**doubt** 21:5
**down** 37:8
**Drinking** 3:14
**Drive** 1:44, 42:10
**Duane** 25:14, 25:16


**< E >**
**e-mail** 4:2
**eager** 5:22, 33:12
**earlier** 26:2, 26:3, 35:3
**earliest** 14:11, 14:19, 14:24,
    14:25, 16:1, 17:3, 23:13
**easily** 8:24
**EASTERN** 1:2
**ECP** 1:18, 2:14, 13:1, 14:2,
    14:9, 14:11, 14:15, 15:4,
    16:8, 16:21, 19:17, 22:7,
    23:18, 24:25, 25:6, 25:11,
    25:22, 26:16, 26:17, 26:21,
    26:25, 27:1, 27:3, 27:4,
    27:5, 29:17, 34:19, 34:23
**electronic** 1:48
**elements** 13:17
**ELIZABETH** 1:25
**encompassed** 38:21
**encourage** 3:12
**end** 4:6, 33:13, 37:8
**ended** 17:12
**enforceability** 12:15
**entered** 26:15
**entirely** 26:12, 26:15

**entitled** 27:21
**entry** 25:18
**equitable** 19:4, 19:9
**ESS** 1:4, 1:10
**establish** 13:17, 36:13
**Established** 20:4, 20:10
**establishes** 25:6
**estate** 31:12, 32:24
**estopped** 19:6
**estoppel** 19:5, 19:9
**et** 1:12, 2:3
**events** 10:7
**everyone** 5:21, 5:23, 37:20
**everything** 4:3, 6:2, 12:23,
    24:15, 33:14
**exactly** 9:5
**example** 29:16
**exceed** 9:21
**excuse** 15:15
**excused** 40:22, 40:23
**exercise** 34:18
**exhibits** 25:5
**exist** 26:12
**expiration** 15:1, 17:25, 18:3,
    19:3, 22:12, 23:13, 27:10
**expire** 19:2, 23:17
**expired** 14:18, 18:7, 22:11,
    28:10
**expiring** 23:23
**Express** 32:4
**extended** 18:16
**extends** 10:8
**extensively** 6:19, 7:15
**extent** 8:12
**extinguished** 17:23, 18:3,
    25:18, 27:9, 28:11, 28:13,
    28:17, 28:25, 29:12, 29:14
**extinguishes** 17:25
**extinguishing** 29:11
**exuded** 27:2


**< F >**
**face** 13:4
**faces** 3:18
**facie** 27:19
**fact** 8:17, 12:17, 19:1, 22:11,
    34:8
**facts** 13:4, 24:20
**factual** 8:5

**fail** 25:10, 26:1, 26:17, 38:23
**failed** 16:20
**fairly** 24:15, 39:5
**familiar** 7:3
**family** 32:25, 36:17
**Father** 1:41, 5:15
**favor** 19:13
**Federal** 24:24, 33:18
**feel** 2:21, 40:19
**few** 38:7
**fifty** 30:6
**fighting** 2:16
**figure** 40:6
**file** 4:19, 4:25, 7:20, 27:16, 28:2, 34:3, 39:13
**Filed** 1:18, 7:12, 7:14, 7:18, 8:2, 8:18, 9:7, 9:14, 14:24, 17:14, 18:13, 19:17, 24:11, 27:14, 31:12, 31:19, 31:20
**files** 24:18
**filing** 19:12, 20:3, 23:15, 23:17
**filings** 8:1
**Finally** 7:14, 26:16
**find** 7:22, 18:2, 24:23, 29:10, 31:10, 36:20, 39:13
**finding** 7:22
**fine** 13:10, 23:6, 29:1
**First** 4:23, 6:5, 10:16, 14:20, 14:23, 17:13, 18:12, 19:18, 38:25
**fit** 12:3, 12:4
**fixed** 3:16
**follow** 40:4, 40:9, 40:13
**forcefully** 32:8
**foregoing** 42:3
**forgetting** 14:25
**forth** 9:9
**forty-one** 31:15
**forward** 14:10, 16:13, 16:14, 23:25, 38:5
**founded** 25:2
**framework** 36:25
**fraud** 19:7, 20:24, 21:7
**fraudulent** 20:3
**free** 2:21
**fresh** 38:2
**friends** 38:15
**front** 38:16
**full** 24:1
**Funding** 11:25, 18:9

**funds** 13:24, 15:22, 16:4, 23:12

**< G >**
**gets** 4:3
**give** 5:21, 29:16, 33:7
**Glad** 3:17, 4:24
**glass** 2:22
**global** 38:19, 38:22
**goal** 3:21
**gonna** 13:8, 37:17, 38:6, 39:4, 39:11, 39:19
**greatest** 22:12
**green** 22:22
**grounds** 7:2, 7:3, 7:8
**guess** 7:5, 11:23
**guidance** 29:13

**< H >**
**hand** 5:3, 5:5
**happen** 34:12
**happened** 22:19, 36:15
**happens** 22:6, 33:19, 34:1
**hard** 37:17, 40:9
**harmed** 16:8
**haystack** 7:22
**head** 20:18
**hear** 2:19, 3:11, 3:15, 3:17, 3:22, 5:4, 6:6, 7:4, 12:20, 12:21, 22:19, 23:4, 23:5, 23:9, 32:14, 33:12
**heard** 6:20
**hearing** 3:2, 3:5, 4:10, 10:17, 23:25
**hearings** 21:25
**held** 25:17, 26:14
**help** 2:22
**helpful** 2:12, 4:4, 5:1, 6:5, 7:1, 36:20, 39:15, 40:16
**high** 32:1
**highly** 35:21
**holder** 8:10
**holding** 26:10, 26:12, 34:21, 34:22, 34:24, 39:11
**HONORABLE** 1:25
**hope** 2:19, 2:22, 2:23, 6:2, 17:5, 40:20
**hospital** 5:8, 5:9, 5:11
**hundred** 28:6, 30:12

**hypothetically** 12:13, 34:24

**< I >**
**idea** 32:21
**identified** 39:3
**II** 13:1
**imagine** 8:17
**impediment** 4:10
**important** 4:24, 12:20, 14:9
**impression** 6:23
**Inc.** 1:43
**including** 6:6, 19:6
**incredible** 35:8, 36:15, 36:17
**infection** 2:17
**information** 21:13
**instructed** 4:14
**instrument** 25:2
**intend** 37:23
**intentional** 19:10
**intentionally** 19:21
**interest** 9:9, 9:20, 13:22, 15:23, 21:25, 22:1, 27:5
**interesting** 32:9, 32:15, 32:19, 32:20, 32:22, 34:13, 35:21, 37:11, 37:12, 39:16, 40:16
**interpretation** 29:23, 30:16
**interpreted** 27:7
**interrupting** 2:11
**intersection** 32:20
**investigation** 18:25
**invite** 39:13
**issue** 3:25, 7:17, 8:5, 8:9, 9:5, 9:10, 12:5, 12:15, 12:16, 13:22, 19:4, 19:16, 19:21, 29:11, 34:14, 35:9, 35:10, 38:4
**issues** 3:22, 6:23, 7:4, 13:6, 32:9, 39:2
**itself** 25:5, 27:14

**< J >**
**Jackson** 2:12, 3:5, 37:25, 39:8, 40:5, 41:1
**Jeremy** 1:38, 12:25
**job** 24:5, 30:20, 30:21
**jobs** 32:2
**join** 6:3
**Judge** 1:26, 3:9, 5:24, 35:10

**judgment** 8:6, 8:7, 8:8, 9:2, 9:3, 10:3, 11:18, 25:12, 25:18, 26:11, 26:15, 35:2, 35:4, 35:5
**judgments** 35:11
**judicata** 25:9, 25:25, 26:1
**juice** 2:22

**< K >**
**KARAMVIR** 1:19, 1:33
**keep** 3:12, 34:23, 36:1
**key** 7:6
**kind** 7:21
**knows** 37:25

**< L >**
**lack** 25:10
**Lane** 1:31
**language** 16:19, 17:21
**lapsed** 15:6, 15:13
**last** 4:15, 10:2, 34:15
**later** 18:15, 18:17
**latest** 17:15
**LAW** 1:30, 7:17, 17:22, 17:24, 17:25, 18:2, 18:3, 19:2, 19:5, 26:10, 26:13, 28:10, 28:13, 28:19, 28:25, 29:8, 29:11, 29:22, 29:25, 30:10, 30:14, 30:15, 30:17, 32:21, 33:17, 33:18, 34:20
**lawful** 8:14
**lawfully** 9:24
**lawyer** 5:16
**lease** 11:16, 11:17
**least** 24:5, 27:23, 37:1, 38:8
**left** 10:13, 40:14
**legal** 7:7, 13:6, 22:5, 32:19, 37:10, 37:11
**lender** 15:22
**less** 37:17
**letter** 39:14
**level** 32:1
**liability** 26:23
**liable** 26:14
**library** 39:2
**lie** 32:20
**light** 19:3
**lightly** 21:6

**limit** 21:7, 30:12
**Limitations** 7:8, 10:24, 10:25, 11:2, 11:7, 12:2, 14:18, 14:22, 15:1, 15:5, 15:7, 15:9, 15:13, 15:14, 17:17, 17:23, 18:1, 18:4, 18:16, 18:19, 19:2, 19:4, 19:6, 22:11, 22:12, 23:13, 23:17, 23:23, 27:10, 27:16, 28:4, 28:9, 28:10, 28:14, 28:19, 34:14, 34:15, 37:11
**line** 3:6, 8:4
**litigated** 26:6
**litigation** 26:2, 26:4
**litigator** 30:22
**little** 15:11, 15:12, 15:18, 32:1
**LLC** 1:30, 8:6, 13:1, 14:2
**loan** 14:10, 14:13, 14:15, 15:8, 16:6, 16:8, 26:19, 27:5
**logic** 18:11
**long** 29:19, 39:12, 40:6
**look** 17:22, 30:15, 31:24, 38:2, 38:24
**looked** 8:1
**looking** 16:18, 18:21, 23:24
**looks** 4:21, 37:2
**loose** 4:6
**lot** 35:11, 37:1
**low** 13:13, 13:15
**Lynn** 42:3

**< M >**
**Madeline** 8:11
**Maiden** 1:31
**main** 2:3, 13:15
**March** 17:9
**massive** 20:24, 21:7
**material** 19:10
**Matter** 1:4, 1:10, 6:22, 13:2, 22:5, 22:6, 28:18, 30:23, 41:1
**matters** 2:2, 38:4, 38:13, 38:19
**Mckinney** 38:25, 39:1
**MD** 1:37
**mean** 9:23, 28:18, 28:19, 31:25, 35:22, 40:3
**means** 12:7
**members** 36:17
**mention** 34:20

**mentioning** 35:10
**merged** 26:11
**merger** 25:15
**merges** 25:11
**merits** 6:11
**mid-bankruptcy** 22:13
**Midland** 11:25, 17:20, 17:21, 18:9, 27:12, 28:2, 28:7, 29:8, 36:2
**Mill** 1:36
**mind** 32:23, 39:17
**mine** 32:2
**minutes** 5:22, 38:7, 38:9
**misrepresentation** 19:7, 19:11, 19:14
**moment** 13:9, 18:17, 33:8, 40:12
**monthly** 36:16
**months** 18:15, 37:14
**mortgage** 11:14
**Motion** 1:18, 3:20, 3:23, 3:24, 6:4, 6:13, 6:14, 6:17, 6:24, 7:14, 7:15, 35:15, 39:22, 40:10, 40:13
**motions** 7:13
**move** 24:1, 33:1
**Ms** 2:12, 3:5, 5:14, 14:1, 14:16, 14:20, 18:23, 19:5, 20:16, 22:13, 37:25, 39:8, 40:5, 41:1
**mute** 23:1, 23:7, 38:6
**muted** 3:7
**myself** 23:1, 38:7

**< N >**
**name** 2:6
**nature** 9:22, 17:5, 37:12
**need** 2:23, 9:23, 12:14, 18:22, 23:7, 27:18, 30:3, 38:8, 39:5
**needed** 10:18
**needle** 7:22
**Nehemiah** 26:4
**neither** 37:21
**nevertheless** 18:8
**New** 1:2, 1:32, 1:45, 8:25, 18:3, 19:2, 19:5, 19:8, 26:8, 26:13, 27:7, 28:15, 28:19, 28:25, 29:7, 29:8, 29:9, 29:10, 29:25, 30:13, 32:21,

39:18, 42:11
**Next** 6:21, 10:23, 22:7, 39:8, 41:1
**No.** 3:6
**nor** 24:23, 37:21
**normal** 8:5
**Norton** 1:6, 1:12, 1:19, 1:40, 2:3, 2:5, 3:8, 3:9, 3:11, 3:13, 3:19, 5:2, 5:4, 5:5, 5:7, 5:10, 5:14, 5:15, 5:20, 6:2, 14:1, 14:16, 14:20, 18:23, 19:5, 20:16, 22:13, 26:5, 33:2, 38:13
**noted** 3:25
**Nothing** 6:8, 6:13, 8:5, 10:2, 10:12, 10:13, 16:2, 28:19, 36:14
**notice** 8:21, 13:18, 18:22, 31:14
**number** 2:4, 11:20, 31:15, 35:3
**numerous** 20:15
**NY** 1:6, 1:12, 1:32

**< O >**
**O'brien** 26:7
**O'reilly** 42:3
**objected** 33:10
**objection** 27:20, 35:9, 37:5
**obligation** 28:3, 30:7
**obstacle** 7:8, 11:7
**obtained** 11:18, 19:20, 20:2
**obviously** 14:21
**occurred** 26:18, 26:22, 26:24
**odd** 31:10
**OFFICES** 1:30
**offline** 5:20
**offset** 30:7
**often** 5:14
**Okay** 2:20, 4:18, 5:25, 6:2, 6:16, 31:2, 32:5, 36:19
**Once** 2:11, 24:13, 28:13
**One** 2:2, 7:11, 11:11, 18:11, 22:24, 24:24, 28:6, 32:3, 32:4
**opportunity** 32:13
**opposition** 7:5
**oral** 39:7
**orange** 2:22
**order** 13:10, 15:2

**original** 34:10
**originally** 6:20
**Otherwise** 31:2, 31:3, 32:9, 33:8, 33:25, 39:19
**ourselves** 31:10
**outside** 12:10
**overcome** 11:8, 36:4, 37:10
**overlap** 24:8
**overlook** 40:9
**overlooking** 40:8
**own** 25:4
**owned** 18:24, 26:19
**owner** 8:13, 8:14, 20:4
**ownership** 8:15, 8:22, 14:15, 15:23, 17:12, 25:6, 27:2

**< P >**
**p.m.** 38:3
**page** 21:18
**paid** 22:7, 33:22
**papers** 24:19
**paperwork** 8:18
**paragraph** 17:8
**paramount** 21:18
**Park** 1:45, 42:11
**part** 9:10, 22:7, 25:19, 30:21, 32:2, 33:13, 33:22, 34:13, 38:24
**participation** 5:13
**parties** 2:6, 5:13, 6:23, 10:16, 11:24, 24:4, 25:12, 26:12, 26:15
**party** 8:14, 25:13, 26:3
**passed** 17:23
**passes** 28:14
**past** 5:14
**path** 28:1
**Paul** 25:15
**pay** 15:22, 22:2
**paying** 35:5
**payment** 11:13, 11:14, 27:8, 27:21, 27:22, 28:17, 28:22, 28:24, 29:3, 36:14
**payments** 9:9, 9:12
**PC** 1:35
**pending** 39:22
**percent** 28:7
**Perhaps** 7:1, 21:21
**period** 27:10

**periods** 11:2
**perpetrated** 21:7
**personally** 14:1, 14:3
**phone** 25:24
**phrase** 22:5
**pick** 40:14
**picking** 34:22
**picture** 33:14
**piece** 34:15
**place** 8:13
**placed** 24:22, 27:4
**plaintiff** 19:11, 19:13, 19:15
**plan** 37:18
**pleading** 24:22, 35:9
**Please** 2:6, 2:20, 2:21, 2:25,
    3:1, 4:23, 6:12, 13:11,
    15:19, 23:10, 23:24, 38:1
**pleasure** 33:2
**point** 2:23, 3:25, 6:15, 7:17,
    10:18, 11:21, 13:2, 15:24,
    21:12, 22:14, 27:11, 29:1,
    32:7, 33:2
**pointed** 11:1
**points** 7:6, 39:6
**Popular** 26:18, 26:22, 27:4
**portion** 37:19
**position** 10:16, 10:18, 37:13
**positions** 24:6, 37:3
**possibility** 37:19
**possible** 15:1, 22:12, 23:13,
    39:6
**potentially** 37:1
**practical** 22:5, 22:6, 28:18,
    30:23, 31:8, 31:25, 32:17,
    32:23, 33:13
**practice** 29:25, 30:2
**pre** 16:4, 17:3
**Pre-trial** 1:21
**precludes** 25:25
**predecessor** 26:23
**predecessors** 16:7
**preferences** 5:23
**preliminary** 13:1
**prepared** 8:3
**PRESENT** 1:40, 16:20, 17:8
**presented** 24:4
**presumption** 35:25, 36:1,
    36:4, 36:11, 36:12, 37:9
**pretrial** 3:21
**pretty** 20:7

**prevented** 19:11, 19:14
**previous** 9:8
**previously** 16:24
**prima** 27:19
**prior** 6:21, 6:22, 10:17, 14:15,
    21:8, 23:17, 24:14, 26:24
**probably** 20:23, 21:2, 39:8
**problem** 17:16
**proceed** 5:2, 5:17, 5:22, 6:12,
    13:11
**proceeding** 2:4, 3:21, 6:6,
    14:16, 17:7, 24:12
**Proceedings** 1:48, 9:22, 42:4
**produced** 1:49
**progress** 3:23, 21:19, 38:16
**Proof** 1:18, 3:20, 3:23, 7:12,
    7:18, 9:14, 9:20, 11:15,
    12:1, 13:3, 13:5, 13:7,
    13:13, 18:22, 24:12, 24:17,
    24:18, 24:25, 27:16, 27:16,
    27:19, 28:2, 28:9, 31:20,
    31:21, 35:13, 35:14, 36:10,
    37:8, 38:20
**proofs** 31:12
**proper** 11:12, 12:13, 12:14
**properly** 24:22, 31:19
**Property** 2:14, 8:10, 8:13,
    10:4, 10:10, 13:1, 17:12,
    26:21, 27:3, 34:11, 34:21,
    34:22, 34:23
**prosecuted** 9:8
**prospective** 15:15
**prove** 24:18
**provided** 25:4
**purchase** 16:8
**purchased** 14:10
**pursue** 15:4
**pursued** 33:9
**put** 13:18, 23:1, 34:25, 37:24


**< Q >**
**question** 10:23, 11:3, 11:4,
    11:5, 11:8, 11:23, 12:1, 22:4,
    32:23, 37:16
**questions** 10:1, 10:12, 10:15,
    13:8, 39:17, 39:18
**quick** 23:7
**quickly** 23:1
**quirks** 22:24

**quite** 15:23, 38:25


**< R >**
**raised** 5:5, 11:24, 19:22, 26:2,
    39:17
**rather** 40:8
**Re** 1:4, 1:10, 1:21, 8:6
**read** 10:3
**Reade** 25:14, 25:16
**ready** 10:19
**Really** 29:1, 32:9, 32:18, 39:16
**reason** 5:1, 5:6, 22:25
**Recall** 21:8, 21:17, 21:25, 32:7,
    38:12, 40:10
**Recalling** 38:13
**receive** 30:24, 33:23
**receiver** 10:6, 10:9
**record** 2:12, 2:13, 2:25, 3:1,
    5:1, 7:2, 20:14, 20:17,
    27:24, 33:24, 38:11, 42:4
**recorded** 1:48
**recording** 1:48
**recover** 23:11
**refers** 17:8
**refiled** 18:17, 35:3
**refraining** 19:8
**refused** 16:20, 17:16
**register** 31:24, 33:6
**related** 25:25
**relating** 26:16
**release** 10:4
**relief** 7:3
**rely** 10:23
**relying** 24:19
**remains** 8:12
**remember** 4:17
**remembers** 18:21
**remind** 2:6
**reminder** 40:14
**remit** 16:20
**remitted** 17:2
**rent** 8:20, 8:21, 15:21, 25:6,
    34:22, 36:16
**rental** 9:9, 9:12
**rents** 8:9, 8:11, 14:14, 14:15,
    15:20, 15:23, 16:3, 16:13,
    16:21, 17:1, 17:16, 19:17,
    25:3, 25:6, 26:22, 27:3,
    34:24

**repeat** 22:23, 23:9
**reply** 34:15
**report** 18:24, 38:16
**repose** 15:15
**require** 35:23
**required** 13:17, 24:18
**requires** 15:21
**Res** 25:9, 25:25, 26:1
**resolution** 36:25
**respect** 3:23, 25:9, 25:19
**respective** 24:6, 37:3
**respectively** 5:16
**respects** 5:23
**respiratory** 2:16
**responded** 39:16
**response** 8:3, 23:25
**restate** 18:11
**rested** 7:22
**retains** 27:20
**return** 17:16
**revenue** 27:9
**revive** 15:14
**revived** 15:7
**revoke** 20:23, 20:25
**rightful** 26:21, 27:3
**rights** 32:22
**ringing** 25:24
**risk** 22:4
**River** 26:4
**Rock** 26:4
**room** 36:22, 37:25
**Rule** 13:13, 24:17, 37:19, 40:2
**ruled** 19:13, 29:7
**rules** 25:1
**ruling** 40:4
**Run** 1:36, 10:25, 11:2, 11:9,
    22:15, 34:16


**< S >**
**S.** 1:25
**safeguards** 12:9
**sale** 21:12, 21:24, 21:25
**sanctions** 12:7
**saw** 20:16
**saying** 28:2, 34:23, 36:1, 37:23
**says** 18:2, 19:3, 24:12, 28:25
**schedule** 20:3
**Second** 4:24, 14:24, 18:23,
    19:19

**Section** 27:7, 38:25
**seeing** 3:18, 37:22
**seek** 7:3
**seeking** 23:11, 23:22
**seem** 4:3, 15:10, 15:12, 17:16
**seems** 4:6, 21:24, 22:7, 23:2, 27:12
**sending** 36:24
**sense** 7:5, 31:8, 37:1, 38:5
**separate** 25:12, 31:3
**September** 18:12, 18:13, 18:17
**series** 25:20
**serious** 21:6
**serve** 4:7, 4:12, 4:15
**served** 4:2, 4:4, 31:18
**service** 1:49, 3:25, 4:1, 4:3, 4:5, 4:18, 4:19, 4:20, 4:24
**Services** 1:43, 42:9
**set** 29:17, 29:19
**setoff** 30:13
**settlement** 38:19, 38:22
**several** 6:18
**shall** 6:6, 12:21, 36:21, 37:24, 38:6
**short** 36:21, 37:24, 40:8
**shouldn't** 40:6
**show** 3:6, 27:21
**side** 32:18
**sides** 32:16
**Signature** 42:7
**simple** 10:2, 34:10
**simply** 12:5, 18:4, 29:14, 32:22
**sit** 21:9
**situation** 12:1, 31:11
**six** 18:15, 37:13
**slightly** 38:24
**small** 32:6, 32:24
**sneezing** 2:17
**sold** 21:15
**solely** 24:11
**somebody** 22:2
**somehow** 15:14
**someone** 40:4
**soon** 39:5
**sorry** 2:19, 5:9, 22:20, 40:23
**sort** 21:23, 24:4
**sound** 1:48
**sounds** 17:14, 27:25, 33:6, 38:22

**Southern** 35:11
**Southside** 8:6
**speaking** 2:7, 21:5
**speaks** 27:13
**speculating** 35:7
**speculation** 11:21
**St.** 25:15
**stand** 36:9
**standard** 13:7, 13:12, 14:22, 24:24, 29:25, 36:13
**standing** 25:10, 26:17, 27:1
**start** 2:17, 11:2
**started** 9:16, 11:11, 11:13
**State** 2:6, 8:11, 8:25, 9:16, 17:22, 18:3, 19:9, 27:24, 28:10, 28:11, 29:7, 29:11, 29:14, 30:15, 32:21, 33:9, 33:17
**statement** 20:7
**statements** 37:7
**STATES** 1:1, 1:26, 8:10
**status** 19:23, 39:13, 39:14, 40:7, 40:13
**statute** 7:8, 10:24, 10:25, 11:7, 11:8, 12:1, 14:18, 14:22, 15:1, 15:4, 15:7, 15:9, 15:13, 15:14, 17:17, 17:19, 17:22, 18:1, 18:4, 18:7, 18:16, 18:19, 19:1, 19:4, 19:6, 22:11, 22:12, 23:13, 23:16, 23:23, 27:16, 28:4, 28:9, 28:14, 28:18, 29:13, 34:14, 34:15, 37:10
**statutes** 39:1
**stayed** 15:2
**stays** 33:5
**stipulation** 33:6
**STONG** 1:25
**straight** 6:9
**stricken** 7:10, 21:20, 22:6
**strike** 3:24, 21:22, 35:15
**strong** 37:6
**subject** 23:23
**submitted** 36:18
**subsequent** 19:10, 19:14
**subsequently** 7:13
**substance** 7:7, 27:13
**subtract** 37:13
**successfully** 9:19
**sue** 18:4, 18:7, 29:2, 29:5,

29:14, 29:18
**sued** 14:2, 18:13, 29:17
**sufficient** 13:15
**suit** 27:9, 28:23, 28:24
**Suite** 1:31, 1:36
**summarize** 7:2
**summarized** 12:23
**support** 25:16, 26:8
**supported** 24:11
**supports** 29:22
**suppose** 31:25
**supposed** 11:17, 36:12
**Supreme** 11:25, 12:6, 18:8, 27:12, 28:1, 32:20
**suspect** 32:24
**sustain** 34:2
**Syracuse** 26:8

**< T >**
**T.** 1:6, 1:19, 2:3
**talks** 8:9, 12:6, 35:8
**Tech** 26:5
**technical** 35:22
**tenant** 16:21, 26:22, 27:3, 35:2, 35:6
**tenants** 35:4
**terms** 33:7
**terrible** 2:16
**Thankfully** 37:25
**that--** 16:22
**Thema** 1:6, 1:19, 2:3, 3:19, 38:13
**theory** 32:2
**therein** 34:20
**they'll** 33:9, 33:10
**they've** 9:19
**thinks** 5:10
**though** 18:20, 29:18
**thoughtful** 32:15
**three** 17:15, 17:19, 25:12
**timely** 12:12, 19:8, 19:11, 19:17
**title** 8:12, 10:4
**today** 3:19, 3:22, 4:11, 6:25, 7:15, 39:25, 40:2, 40:7
**tolled** 14:22
**tolling** 14:25
**tone** 22:21, 23:1, 23:7
**took** 10:10

**top** 20:18
**tort** 25:11, 26:10, 26:13, 34:17
**torts** 26:14
**touch** 5:7
**towards** 26:5
**transaction** 15:13, 25:19
**transactions** 25:20
**Transcriber** 1:43
**transcript** 1:49, 42:3
**Transcription** 1:43, 1:49, 42:9
**transfer** 26:24
**transferred** 27:4
**tried** 5:7
**triple** 4:5
**true** 13:5, 28:20, 36:3, 42:4
**truly** 32:19, 38:2
**Trustee** 4:1, 4:2, 4:3, 9:14, 9:20, 18:25, 19:22, 20:5, 20:10, 20:12, 20:15, 20:16, 20:22, 20:23, 20:25, 21:12, 21:15, 23:20
**trying** 31:6, 31:8, 37:2
**turn** 10:23
**turned** 16:25
**turns** 7:7, 27:22
**twenty** 18:17
**twenty-eight** 17:8
**two** 2:2, 13:17, 24:4

**< U >**
**ultimately** 22:1, 27:21
**unbounded** 30:6
**uncontroverted** 14:4
**understand** 7:23, 7:24, 9:23, 10:15, 10:24, 24:5, 30:22, 37:2
**unenforceable** 31:3, 33:25
**UNITED** 1:1, 1:26
**universal** 38:22
**unlawfully** 27:2
**Unless** 5:1, 10:1, 10:12, 23:1, 40:7
**unlike** 8:10
**until** 10:4
**updated** 4:19
**upper** 2:16
**using** 9:7
**utilized** 9:18

**< V >**
**v.** 1:12
**valid** 13:17, 19:3, 27:19, 35:17
**validity** 35:25, 36:1, 36:11, 37:9
**value** 37:13
**versus** 2:3, 25:15, 26:7, 26:19
**via** 28:3
**viable** 11:12, 11:22, 35:9
**voices** 3:18

**< W >**
**waived** 13:2
**wanna** 5:23, 10:15, 10:24, 23:25
**wanted** 24:16
**warranted** 9:17
**water** 2:21, 3:14
**Welcome** 6:3, 38:16
**Whatever** 11:20, 13:10, 22:2, 27:22
**whatsoever** 15:15
**whenever** 33:14, 37:14
**whether** 17:23, 22:1, 27:8, 37:9, 37:17, 38:4
**whole** 37:1
**whom** 20:11
**wife** 5:10
**will** 2:20, 4:7, 21:13, 21:21, 21:23, 22:25, 33:22, 33:23, 37:12, 39:2, 40:5, 40:9, 40:12
**willing** 22:2
**wish** 5:14
**without** 5:17, 34:11
**wondering** 39:23
**words** 37:6
**work** 3:22
**works** 13:10
**world** 37:2
**worth** 13:23
**Wow** 30:9
**wrongdoing** 19:16

**< Y >**
**year** 17:19, 21:1, 37:13
**years** 17:15, 30:7, 30:12

**yellowed** 38:24
**York** 1:2, 1:32, 1:45, 8:25, 18:3, 19:2, 19:5, 19:8, 26:8, 26:13, 27:7, 28:15, 28:19, 28:25, 29:7, 29:8, 29:9, 29:10, 30:1, 30:14, 32:21, 42:11

**< Z >**
**Zoom** 36:24, 37:25